**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| HUMAN RIGHTS DEFENSE CENTER,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF JUSTICE, et al.<br><br>Defendants. | Civil Action No. 2:20-cv-00674 |

**DECLARATION OF ANGELA D. HERTEL**

I, Angela D. Hertel, hereby make the following Declaration under penalty of perjury, pursuant to 28 U.S.C. § 1746.

1. I am currently the Unit Chief of the Legal and External Affairs Sub-Unit ("CCARL") of the Freedom of Information/Privacy Act Unit ("CCAR"), of the United States Department of Justice ("DOJ"), Drug Enforcement Administration ("DEA"), located at DEA's Headquarters in Arlington, Virginia. I have served in this capacity since November 21, 2021. Previously, beginning October 1, 2020, I served as the Unit Chief of the Freedom of Information/Privacy Act Legal and External Affairs Unit ("FSRF"), part of the Freedom of Information/Privacy Act Section ("FSR"), until FSR was reorganized as CCAR in November 2021. Before then I served as Acting Unit Chief of the Freedom of Information/Privacy Act Unit ("FSRF") from May 2019 until FSRF was reorganized as FSR in October 2020. I have been a DEA employee since October 2018. Prior to becoming a DEA employee, I was a supervisory contract Paralegal supporting FSRF since September 2009.

2. As Unit Chief, I, in part, oversee the processing of certain requests to DEA under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act ("PA") of 1974, 5

U.S.C. § 552a (cited together as "FOIA/PA"). Due to my experience in responding to requests for DEA records since 2009, and the nature of my official duties, I am familiar with the policies and practices of DEA related to searching for, processing, and the disclosure of DEA information requested pursuant to the FOIA/PA.

3. In preparing this declaration, I have read and am familiar with the Complaint in the above titled action, as well as the exhibits attached to the Complaint (ECF No. 1, "Complaint").

4. The statements set forth herein are true and correct to the best of my knowledge, information, and belief and are based on my personal knowledge as well as information acquired by me in the course of performing my official duties.

## LAW ENFORCEMENT MISSION OF DEA

5. The mission of the DEA is to enforce the controlled substance laws and regulations of the United States. DEA's investigative jurisdiction derives from the Controlled Substances Act, 21 U.S.C. § 801, *et seq*. ("the CSA" or "the Act"). The CSA authorizes DEA to enforce the Act through investigation of trafficking in controlled substances and the violators who operate at interstate and international levels. The mission involves conducting criminal investigations to assist prosecutions of organizations and principal members of organizations involved in the growing, manufacture, or distribution of controlled substances appearing in or destined for illicit traffic in the United States. DEA also provides support to non-law enforcement programs aimed at reducing the availability of illicit controlled substances on the domestic and international markets.

## CHRONOLOGY

6. In a letter dated May 20, 2019, the Human Rights Defense Center ("Plaintiff") submitted a FOIA request to the DEA, seeking the disclosure of records of "all litigation against the (DEA)

and/or its employees or agents where the agency and/or its insurers paid $1,000 or more to resolve claims. . . . [and] were disbursed from January 1, 2010 to the present." Namely, Plaintiff requested that "payments includ[ing] but . . . not limited to settlements, damages, attorney fee awards, and sanctions, irrespective of the identity of the plaintiff or claimant." *See* Exhibit A to this Declaration.

7. In a letter e-mailed on June 27, 2019, DEA notified Ms. Dillon, Public Records Manager, Human Rights Defense Center, who sent the FOIA request, that a DEA component may have responsive records to Ms. Dillon's request, but that DEA could not search its electronic tracking system by the size of a payment or whether a payment was made; further, that DEA's "electronic data is only available from mid-2012 to the present." *See* Exhibit B to this Declaration. Additionally, DEA estimated that an electronic and a manual search for records would take an estimated 295 hours, conservatively. *See id.*

8. On July 11, 2019, in response to DEA's June 27, 2019 correspondence, Ms. Dillon agreed to a "production of documents from 2012 or later . . . [and] we will also waive the $1,000 threshold from our original request and request documents for all relevant cases . . . [for us] to determine applicability for the level of payment. . . ." *See* Exhibit C to this Declaration.

9. In a letter dated October 21, 2019, DEA responded to Ms. Dillon's July 11, 2019 reformulated request. DEA informed Ms. Dillon that her request was overly broad, burdensome, and required more specificity in accordance with the FOIA. DEA noted that no further action would be initiated on the request until it received a reasonable description of the records sought. Ms. Dillon did not attempt to narrow the scope of her request. *See* Exhibit D to this Declaration.

10. On October 29, 2019, the HRDC administratively appealed the DEA's October 21, 2019 determination to the Office of Information Policy ("OIP"). *See* Exhibit E to this Declaration.

11. On January 31, 2020, the OIP affirmed DEA's decision on modified grounds and stated Ms. Dillon "did not reasonably describe the subject of [her] request . . . [and] did not characterize the records sought in such a way that they could be located with a reasonable amount of effort." *See* Exhibit F to this Declaration.

12. HRDC filed this FOIA action on May 5, 2020, seeking a judgment requiring DEA to produce the documents it requested.

13. On August 24, 2020, in the parties' First Joint Status Report ("JSR") (ECF No. 14), HRDC agreed to narrow the original and subsequent reformulated request to exclude: "tort claims arising from motor vehicle collisions," "claims that the DEA resolved with payments made before 2012," and "claims that the DEA resolved for less than $2,500." First JSR, ECF No. 14 at 2.

**SEARCH AND PROCESSING OF REQUEST**

14. In its search for records, DEA identified two financial databases that it reasonably believed contained information regarding all claims responsive to HRDC's reformulated FOIA request. DEA also determined that, to the extent it would be possible to locate the documents that HRDC requested, *e.g.*, claim forms, complaints, settlement agreements, and judgments, DEA would need to then search its own internal case management system for the Office of Chief Counsel, separate from the two financial databases mentioned above to determine if any further records responsive to the FOIA request existed that related to the names identified in the first two databases.

15. The first database was the Unified Financial Management System ("UFMS"). UFMS is DOJ's system of record for financial management. Each DOJ component, including DEA, is a tenant of UFMS. It houses the budgets, commitments, obligations, payments, billings and collections for DEA and DOJ. In the present case, DEA searched the database based on the years

in question for which HRDC sought responsive documents. All claims are paid from or at least recorded in UFMS.

16. The second database was the Judgment Fund Internet Claims System ("JFICS"). The Judgment Fund's website indicates that it pays court judgments and compromise settlements against the government. Federal agencies may ask the Bureau of the Fiscal Service to pay from the Judgment Fund for court judgments and DOJ settlements of litigation against the government; and administrative claim awards, etc., if funds are not legally available to pay from the agency's own appropriations. In the present case, DEA searched JFICS because it has a record of every payment that DEA has requested to be made from the Judgment Fund. DEA pays tort claims over $2,500 and cases that are in federal court out of the Judgment Fund. For most of the payments DEA makes in litigation or administrative claims that DEA settles or is ordered to pay, those payments come from the Judgment Fund.

17. Finally, DEA searched its own internal case management system for the Office of Chief Counsel, which is not searchable by payments or monetary amounts paid out in cases. However, in conjunction with the search of the two financial databases, this allowed DEA to focus on the cases it had derived information from the two databases that were indeed paid.

18. DEA made a good faith effort using the only methodology available to conduct a reasonable search of the locations most likely to contain responsive records. DEA determined that UFMS, JFICS, and the case management system for the Office of Chief Counsel are the only databases/systems likely to have responsive records.

19. DEA released responsive records to HRDC according to this production schedule:

a. November 23, 2020 – 76 pages released. *See* Exhibit G.

b. December 30, 2020 – 399 pages released. *See* Exhibit H.

c. January 29, 2021 – 92 pages released. *See* Exhibit I.

d. February 26, 2021 – 283 pages released (138 of those pages were reprocessed from the December 2020 and January 2021 productions in order to release additional information that was initially withheld). *See* Exhibit J.

e. March 31, 2021 – 154 pages released. *See* Exhibit K.

f. April 30, 2021 – 146 pages released. *See* Exhibit L.

g. May 28, 2021 – 484 pages released. *See* Exhibit M.

h. June 29, 2021 – 227 pages released (nine of those pages were reprocessed from the December 2020 production and released in full). *See* Exhibit N.

20. By the parties' Sixth JSR (August 25, 2021), DEA produced 1,714 pages to HRDC. Upon review of DEA's production, HRDC communicated a number of unresolved issues. In an attempt to address these issues, DEA agreed to review its productions in its entirety "to determine what further information it believe[d] it [could] disclose consistently with its obligations under the FOIA and privacy laws." Sixth JSR, ECF No. 19 at 2. The parties further agreed to begin its review with a select group of 200 pages, as chosen by the HRDC, and to produce additional responsive documents "for traffic-related claims with payments exceeding $200,000," and a "'claim letter' not previously produced that was referenced on an administrative claim form in the DEA's production." Eighth JSR, ECF No. 21 at 2.

21. The following three productions were made pursuant to the above agreement:

a. September 30, 2021 – 57 pages released. *See* Exhibit O.

b. November 15, 2021 – 54 pages released. *See* Exhibit P.

c. March 11, 2022 – 156 pages released. *See* Exhibit Q.

22. DEA processed a total of 1,768 pages of material. All pages in which DEA withheld information are found in the *Vaughn* index attached to this Declaration. The *Vaughn* index catalogues and identifies the FOIA exemptions pursuant to which responsive records were withheld, describes the content of the documents to the extent possible, and specifies the bases for the invoked exemptions. As the *Vaughn* index indicates, records were withheld in part pursuant to FOIA exemptions 5 U.S.C. §§ 552(b)(6) and (b)(7)(C).

## JUSTIFICATION FOR NON-DISCLOSURE UNDER THE FOIA FOR RECORDS PERTAINING TO PLAINTIFF'S REQUEST

### FOIA Exemption (b)(6) Threshold

23. The FOIA, 5 U.S.C. § 552 (b)(6), protects information about individuals in personnel, medical, and similar files when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." DEA applied Exemption (b)(6) to protect the identities of any tort claimants who filed administrative claims, DEA employees who filed claims for property damage, DEA employees who filed Equal Employment Opportunity ("EEO") or Merit System Protection Board ("MSPB") complaints and appeals, and DEA employees who filed whistleblower and other complaints with the U.S. Office of Special Counsel alleging prohibited personnel practices. Additionally, DEA redacted the identities of alleged tortfeasors/wrongdoers and witnesses. These redactions were not limited to the name of the person, but also included any other personal identifier such as EEOC Case Numbers, MSPB Docket Numbers, filing dates, settlement dates, contact information, some specific allegations of misconduct or negligence, etc. DEA redacted this information to protect the names and other personally identifying information that would constitute an unwarranted invasion of the personal privacy of all persons involved.

24. While DEA protected individual's privacy interests by redacting some specific allegations of misconduct or negligence, it disclosed the nature of the underlying employment discrimination claims, prohibited personnel action claims, and tort and employee property damage claims. For example, on employment discrimination claims, DEA did not redact check boxes identifying the type of discrimination alleged, e.g., race, religion, sex, age, disability, etc., including the claimant's relevant race, religion, etc. DEA also disclosed the nature of damages alleged on tort claim forms, e.g., allegations of false arrest, or description of damage to vehicle from a malfunctioning security barricade. Further, DEA did not redact the type of alleged prohibited personnel actions filed with the U.S. Office of Special Counsel, e.g., disclosing that the complaint alleged violation of Whistleblower Protection Act. Similarly, DEA disclosed the nature of employee claims for lost or damaged property, e.g., allegations that DEA was responsible for the loss or damage of an employee's household goods during a residential relocation.

25. The DEA employees identified in the records are directly involved in DEA law enforcement ("LE") investigations and related matters or they work to support those activities. The disclosure of the names or contact information of DEA employees, which includes DEA agents, would constitute an unwarranted invasion of personal privacy by subjecting the individuals to harassment, annoyance, and undue public attention in their private lives for conducting their official duties for an LE agency.

26. In addition to protecting the identities of DEA employees because of their official law enforcement duties for DEA, many of the DEA employees identified in the records are also the subject of underlying personnel matters being discussed in the record. Considering the sensitive and often contentious nature of the work LE personnel conduct, disclosure of their contact

information and identities would prejudice their effectiveness in conducting their official duties, including LE investigations, and subject them to unwarranted harassment.

27. DEA also applied Exemption (b)(6) to protect the names, identities, and personal health information of third-party individuals because disclosure would constitute a clearly unwarranted invasion of personal privacy interest in: (1) not being associated with an LE agency or LE matter; (2) being free from harassment, criticism, intimidation, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and (3) controlling how communications about the individual is shared with the public.

28. Further, the DEA EEO claim system provides a source of relief to aggrieved and vulnerable employees. Complainants' information is carefully protected and held in confidence in order to protect the claimants from retaliation and embarrassment. By exposing the identities of EEO claimants and details about their claims, former and potential claimants would be given the impression that their information is not safe. Accordingly, publishing the identities of EEO complainants would have a chilling effect on the willingness of potential complainants to file future EEO complaints because of the precedent being established that their information would not be protected.

29. DEA weighed the substantial privacy interests of the individuals about whom the redacted information pertained against the public interest in release and determined that disclosure of the name or identifying information would not shed light on its mission to enforce Federal criminal statutes and the Act, or how DEA conducts its internal operations and investigations. Importantly, DEA has disclosed the nature of the claimants' allegations, e.g. race discrimination or false arrest, and the amount DEA paid to resolve the claims. Thus, the disclosure of further details would not fulfill FOIA's core purpose—to assist the public in understanding how the agency is carrying out

its statutory responsibilities—and serves no public benefit. Lastly, the third parties identified throughout the contents of these records have not consented to the disclosure of the redacted information. Therefore, the privacy interest in their identities outweighs any minimal public interest that could possibly exist in the disclosure of this information and disclosure of the identities would be an unwarranted invasion of their personal privacy.

**FOIA Exemption (b)(7)(C) Threshold**

30. The FOIA, 5 U.S.C. § 552 (b)(6) protects information about individuals in personnel and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. DEA applied Exemption (b)(6) in conjunction with Exemption (b)(7)(C) to information in the processed records. Exemptions (b)(6) and (b)(7)(C) both call for balancing individuals' privacy interests against the public interest in disclosure of information that would shed light on how the agency operates. Exemption (b)(7)(C) is more protective of privacy interests than (b)(6), however, because it does not require a finding that disclosure "would constitute a clearly unwarranted invasion of personal privacy." Rather, the (b)(7)(C) exemption applies if disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."

31. The FOIA, 5 U.S.C. § 552 (b)(7)(C), sets forth an exemption for records or information compiled for law enforcement purposes the disclosure of which could reasonably be expected to constitute an unwarranted invasion of personal privacy. The investigative records that DEA processed in response to Plaintiff's FOIA request contain names and other identifying information that would reveal the identity of, and disclose personal information about, individuals who were involved or associated with a law enforcement investigation, and could subject them to possible harassment, or focus derogatory inferences and suspicion upon them. The employment, unlawful employment practices, and tort claims records are all compiled for law enforcement purposes

because they contain allegations of unlawful conduct and the resolutions thereof. These records are also subject to exemption (b)(7)(C) because they pertain to the actions of DEA employees executing DEA's law enforcement mission. The individuals are protected from the disclosure of their identities and information about them. These individuals include third parties, such as law enforcement personnel, witnesses, and suspects.

32. In asserting exemption (b)(7)(C), each piece of information was examined to determine the degree and nature of the privacy interest of any individual whose name or identifying data appeared in the documents at issue.

33. The public interest in disclosure of the information was determined by whether the information in question would inform Plaintiff or the general public about DEA's performance of its mission to enforce Federal criminal statutes and the Act, or how DEA conducts its internal operations and investigations. Because DEA disclosed the nature of the allegations and the amounts it paid to resolve them, DEA determined that there was no legitimate public interest in the additional, personally identifiable information withheld under exemption (b)(7)(C), and release of any information about a third party could reasonably constitute an unwarranted invasion of that third party's personal privacy.

34. Accordingly, DEA withheld many pieces of information so as to protect such privacy interests as described throughout this Declaration and *Vaughn* index. While this list is not exhaustive, they include third party names, telephone numbers, email addresses, specific allegations of misconduct or negligence, and other information that could be used to identify third parties and other information that could reasonably constitute an unwarranted invasion of that third party's personal privacy.

35. Under a recognized mosaic approach, possession of the withheld bits of information added together, or combined with other pieces of information learned or gleaned from other sources could reasonably be expected to lead to the disclosure of the identities of third-party individuals involved in the records at issue in this matter. In sum, the privacy interests of all third parties, alleged wrongdoer and potential victim alike, overcome the public interest and exempt the redacted information from disclosure pursuant to exemptions (b)(6) and (b)(7)(C) of the FOIA.

## SEGREGABILITY

36. All responsive information was examined to determine whether any reasonably segregable information could be released. DEA withheld portions of pages where, based upon the review, the release of any additional information would: provide no useful information, or incomprehensible words or phrases that would not shed any light on how the Government conducts business and constitute an unwarranted invasion of personal privacy when balanced against the public interest in the release of information.

37. Each page was examined to determine whether there was any reasonably segregable information.

## FORESEEABLE HARM

38. As described in the previous paragraphs, DEA believes that release of any of the withheld information would trigger foreseeable harm to the interests protected by the cited FOIA exemptions. Specifically, release of the information would constitute a clearly unwarranted invasion of personal privacy, or could reasonably be expected to constitute an unwarranted invasion of personal privacy. DEA performed a balancing test and concluded that the privacy interests of those individuals whose names and identifying information were redacted outweighed the public interest in release of the information.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

July 8, 2022

DATE

ANGELA HERTEL

Digitally signed by ANGELA HERTEL
Date: 2022.07.08 05:49:54 -04'00'

ANGELA D. HERTEL
Chief, Legal and External Affairs Sub-Unit
Freedom of Information/Privacy Act Unit
Drug Enforcement Administration