Honorable Judge John H. Chun

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HUMAN RIGHTS DEFENSE CENTER, a Washington nonprofit corporation,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE; and its component, DRUG ENFORCEMENT ADMINISTRATION,<br><br>Defendants. | No. 2:20-cv-00674-JHC<br><br>DECLARATION OF CAESAR KALINOWSKI IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT |

Caesar D. Kalinowski declares as follows:

1. I am an attorney at Davis Wright Tremaine LLP ("DWT") and am one of the attorneys representing Plaintiff Human Rights Defense Center ("HRDC") in this case. I make this declaration in support of HRDC's concurrently filed Opposition to Defendants' Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment. This declaration is based on personal knowledge. If called, I could testify competently as follows.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

2. HRDC filed this Freedom of Information Act ("FOIA") action on May 5, 2020. On July 2, 2020, Kyle Forsyth, counsel for Defendant Drug Enforcement Administration ("DEA") informed me in an email that in the preceding week, DEA had started "investigating ways that the DEA could feasibly search for, process, and produce documents responsive to Human Rights Defense Center's FOIA request," including by searching two financial databases containing information about the DEA settlements and judgments that were the subject of HRDC's FOIA request. A true and correct copy of Mr. Forsyth's July 2, 2020, email is attached as **Exhibit G**.

3. In November 2020, DEA began rolling productions of records responsive to HRDC's May 2019 FOIA request. Notwithstanding that HRDC's FOIA request for records related to DEA's settlement of tort claims unambiguously sought specific settlement details – including names of all parties involved, case or claim numbers, and the amount paid (*see* Exhibit A to concurrently filed declaration of Paul Wright) – DEA's initial productions redacted (1) the names of every claimant and tortfeasor, (2) the amount that was paid under each settlement, (3) the dates and details of official misconduct alleged by the claimant, (4) publicly filed documents, and even (5) pronouns. HRDC objected to these overbroad redactions, and on January 11, 2021, I emailed DEA to request to meet and confer about them. A true and correct copy of that email is attached as **Exhibit H**.

4. Following the parties' conference regarding the issues identified in the January 11, 2021 email, DEA agreed in writing, on January 29, 2021 and February 22, 2021, to re-produce the records with the pronouns and settlement amounts unredacted, and to "consider on a case-by-case basis whether to release unredacted court orders/opinions." DEA did not



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

address HRDC's request for names and details of misconduct. A true and correct copy of those correspondences is attached as **Exhibit I**.

5. On April 14, 2021, I emailed DEA to express HRDC's objections to the agency's failure to fully re-produce the documents, to its failure to produce certain claim letters and public documents, and to its continuing redaction of names, dates, and details of alleged misconduct. A true and correct copy of that email is attached as **Exhibit J**.

6. Following the parties' conference regarding the issues identified in my April 14, 2021 email, DEA agreed in a May 25, 2021 email to produce publicly filed documents and certain claim letters, but still refused to unredact names or details of alleged misconduct. A true and correct copy of that email is attached as **Exhibit K**.

7. After DEA persisted in redacting this information in its subsequent productions, HRDC on July 28, 2021 again objected, and requested another "meet and confer" over DEA's continued (1) withholding of claim letters, (2) redactions of dates, names of tortfeasors, public and quasi-public filings, and most details of misconduct, and (3) lack of meaningful segregation between non-exempt and allegedly exempt information. A true and correct copy of HRDC's July 28, 2021 email is attached as **Exhibit L**.

8. Following an August 2021 conference, HRDC agreed to DEA's request for more time to completely re-review and reprocess its entire earlier productions. In an August 23, 2021 email, DEA indicated that it had unilaterally decided to produce only claim letters that "contain the substance of a claim or are specifically referenced in a claim form or complaint." A true and correct copy of this email is attached as **Exhibit M**.

9. Even after the multiple rounds of reprocessing and re-producing records, DEA's productions still failed to respond fully to HRDC's FOIA request. The following deficiencies



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

appear from a review of the records provided by DEA. (The records are identified by production File number (e.g., "F1") and file page number, as designated by DEA.)

a. Two responsive files, F18 and F19, appear on DEA's Vaughn Index, but DEA withheld them completely and without explanation. *See* ECF No. 25-1 (attachment to Declaration of Angela D. Hertel) ("Vaughn Index"), pp. 14-15. DEA failed to notify HRDC of the withholding, and has provided no reason and asserted no exemption for the withholding.

b. DEA has redacted and withheld information from settlement agreements that contain provisions expressly permitting public disclosure of the agreements. *See, e.g.*, **F102** at 20-23 ¶ 10; **F112** at 7-10 ¶ 9. A true and correct copy of these documents or excerpts of documents is attached as **Exhibit N**.

c. DEA has redacted from settlement agreements publicly available court docket information, such as case numbers and litigant names. *See, e.g.*, **F99** at 13-16 (redacting district court case number, litigant and attorneys' names); **F119** at 8-13 (same); **F35** at 1 (redacting case number, judge and plaintiff's name from Court of Federal Claims case); **F106** at 1-2 (same). A true and correct copy of these documents or excerpts of documents is attached as **Exhibit O**.

d. In many of the records it produced, DEA redacted all or virtually all of the substantive information related to the alleged tort or misconduct – effectively withholding pages of materials – purportedly relying on FOIA Exemption 6 but without any segregation of "private" information contained therein. *See, e.g.*, **F1** at 7-13; **F3** at 1-2, 11-19; **F5** at 3-8, 24; **F14** at 1-6;



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**F15** at 1-18; **F16** 3-16; **F21** at 5-49; **F24** at 1-5; **F33** at 2-9; **F36** at 1-16; **F47** at 1-6; **F50** at 1-9; **F51** at 1-8; **F53** at 5-10; **F54** at 2-6; **F63** at 4-17; **F103** at 1-4; **F138** at 1-42; and **F141** at 8. A true and correct copy of these documents or excerpts of documents is attached as **Exhibit P**.

e. Even for records in which DEA did not redact all of the narrative descriptions of the alleged tort or misconduct, DEA redacted claimant names, tortfeasor names, judge and attorney names, tracking numbers, case numbers, and dates. *See, e.g.*, **F34** at 1-4; **F123** at 1-2. A true and correct copy of these documents or excerpts of documents is attached as **Exhibit Q**. These redactions permeate DEA's production, as reflected in Exhibit O and DEA's Vaughn Index.

f. For a number of files, DEA failed to produce "complaint[s] or claim form[s] and any amended versions," as requested by HRDC (and as DEA agreed to provide, *see* Ex. M), even where the complaint or claim was expressly referenced in other records DEA did produce. *See, e.g.*, **F2** at 33-34 (Merit System Protection Board ("MSPB") decision, referring to petitions and appeals filed by claimant, which DEA has not produced); **F10** at 1-2 (MSPB settlement, referring to motion for attorneys' fees, which DEA has not produced); **F11** at 2 (EEOC appeal, referring to complaint and other decisions related to claim, which DEA has not produced); **F17** at 11-12 (MSPB appeal, referring to complaint and decision, which DEA has not produced); **F20** at 1 (EEOC settlement, referring to complaint that DEA has not produced); **F41** at 1-4 (same); **F35** at 1-3 (settlement of complaint filed



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

with Court of Claims; refers to litigation dating back 15 years, but DEA has not produced referenced complaint, or any information about allegations); **F93** at 1 (settlement agreement referencing complaint of prohibited personnel practice against DEA; DEA has not provided the complaint); **F44** at 1 (discrimination complaint referring to attachments that were not produced); **F51** at 1-2 (same); **F94** at 1 (settlement agreement referencing discrimination complaint against DEA; DEA has not provided the complaint); **F124** at 1-2 (property damage claim against DEA, stating basis for claim was "provided previously under separate cover"; DEA has not produced the separate document); **F136** at 1 (DEA response to claim; referenced claim letter not provided); **F147** at 5 (same); **F137** at 15-16 (pages missing from settlement voucher). A true and correct copy of these documents or excerpts of documents is attached as **Exhibit R**.

10. DEA did produce details of the alleged tort or misconduct for some settled claims, where the allegations were benign and did not involve personal injury. *See, e.g.*, **F78** at 1 (vehicle damaged during search); **F91** at 1-3 (hotel door damaged during search); **F122** at 7 (damage to truckload of vegetables). A true and correct copy of these documents or excerpts of documents is attached as **Exhibit S**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 26th day of August, 2022, at Copenhagen, Denmark.

DocuSigned by:

0938F236CBE8410...

Caesar D. Kalinowski



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# EXHIBIT G

**Kalinowski, Caesar**

**From:** Forsyth, Kyle (USAWAW) <Kyle.Forsyth@usdoj.gov>
**Sent:** Thursday, July 2, 2020 2:10 PM
**To:** Kalinowski, Caesar; Stahl, Eric; Dan Marshall
**Subject:** RE: Draft JSR for HRDC 26(f)
**Attachments:** 9- Stip Mot and Order Granting Relief from Sched Order_DWT v. USCBP.pdf

**Follow Up Flag:** Follow up
**Flag Status:** Flagged

**[EXTERNAL]**

---

Caesar, Eric, and Dan,

This e-mail follows up on our Rule 26(f) telephone conference last Wednesday, June 24. I aim to (1) apprise you of recent developments in the DEA's investigation of its search capabilities, and (2) propose an alternative path forward in this case that (a) gives the DEA additional time to determine whether its search capabilities will allow it to produce responsive documents without an unreasonable burden and (b) affords the parties more time to negotiate a cooperative resolution that (I hope) will avoid the time and expense of dispositive motion briefing.

(1) In the past week, DEA counsel and I have been investigating ways that the DEA could feasibly search for, process, and produce documents responsive to Human Rights Defense Center's FOIA request. The DEA has identified two financial databases that, based on some preliminary searches, look like promising sources of information about claims and cases in which the DEA paid settlements or judgments during the relevant period. As you might expect, no database includes all the information HRDC seeks. To the extent that the DEA has records containing the rest of the information HRDC requests, supplying that information would, at a minimum, require cross-referencing results from the financial databases with the legal database used by the DEA's Office of Chief Counsel.

The DEA is actively assessing what steps would be required to cull responsive documents from these databases, process them for compliance with FOIA exemptions and other privileges, and produce them to HRDC. When the DEA completes this assessment, it expects to be able to estimate the burden of searching/processing/producing responsive documents, and to determine whether such a burden is reasonable under the FOIA.

While the DEA cannot presently commit to producing responsive documents, the recently identified financial databases look promising, and the DEA commits to exploring in good faith ways it can feasibly produce the documents that HRDC genuinely seeks. For example, HRDC's clarification during our June 24 call that it does not seek documents related to motor vehicle collisions narrows the scope of responsive documents and potentially could reduce the DEA's burden in a meaningful way. My hope is that through further discussions, the parties might identify additional categories or dollar thresholds of claims that lie outside the scope of what genuinely interests HRDC.

(2) As I mentioned during our 26(f) conference, the DEA believes that in FOIA cases generally (including this one) discovery and the standard case scheduling order contemplated by the court's 26(f) order are not appropriate. The FOIA claim is essentially one for review of an administrative record and, as such, should be exempt from the requirements of Rule 26(a)(1) and (f). Fed. R. Civ. P. 26(a)(1)(B)(i).

I've attached a sample document that DWT and the U.S. Attorney's Office used recently in another FOIA case. I propose that we file something similar here, with a similar 45-day time limit to file a Joint Status Report. I

anticipate that within those 45 days, the DEA could reasonably estimate its burden and the parties could discuss search parameters sufficiently to determine whether the DEA should proceed to search and produce, or whether the parties should proceed directly to summary judgment briefing. And, as the attached document provides, HRDC could propose a briefing schedule to the court before the 45 days were up, if it came to believe that a cooperative resolution was not feasible. I think this approach will better serve the parties than trying to fit this case into the mold of the standard 26(f) JSR.

I appreciate your thoughtful consideration of this proposal. I'm out of the office tomorrow for the holiday observance, but am available to speak with you anytime next Monday, July 6.

Kyle

Kyle A. Forsyth
Assistant United States Attorney
Financial Litigation Coordinator
U.S. Department of Justice
United States Attorney's Office
Western District of Washington
700 Stewart Street, Suite 5220
Seattle, WA 98101-1271
Phone: 206-553-4751 | Fax: 206-553-4073

This e-mail (including any attachments) is intended for the use of the individual or entity to which it is addressed. It may contain information that is privileged, confidential, or otherwise protected by applicable law. If the reader of this e-mail is not the intended recipient or the employee or agent responsible for delivering the e-mail to the intended recipient, the reader is hereby notified that any dissemination, distribution, copying or use of this e-mail or its contents is strictly prohibited. If you have received this e-mail in error, please notify the sender immediately by replying to this message, and please destroy all copies of this e-mail.

---

**From:** Forsyth, Kyle (USAWAW)
**Sent:** Tuesday, June 30, 2020 5:01 PM
**To:** Kalinowski, Caesar <CaesarKalinowski@dwt.com>
**Cc:** Stahl, Eric <ericstahl@dwt.com>; Dan Marshall <dmarshall@humanrightsdefensecenter.org>
**Subject:** RE: Draft JSR for HRDC 26(f)

Caesar,

Consistent with our discussion during the 26(f) conference last Wednesday, Defendants do not plan to serve initial disclosures tomorrow. I'll address initial disclosures and other matters contained in Plaintiff's draft JSR when I respond to it later this week. I've been in close contact with the DEA in recent days and we are working to determine whether we can move this case forward in a cooperative fashion.

Kyle

Kyle A. Forsyth
Assistant United States Attorney
Financial Litigation Coordinator
U.S. Department of Justice
United States Attorney's Office

# EXHIBIT H

## Kalinowski, Caesar

| | |
|---|---|
| **From:** | Kalinowski, Caesar |
| **Sent:** | Monday, January 11, 2021 7:30 AM |
| **To:** | Forsyth, Kyle (USAWAW) |
| **Cc:** | Stahl, Eric; DMarshall@humanrightsdefensecenter.org |
| **Subject:** | RE: Human Rights Defense Center v. U.S. Department of Justice CA No. 20-cv-00674 (1 of 3) |

Kyle,

Happy new year and hope you had a great holiday season. I'm writing about the most recent productions we received in the above matter on December 30. Our client views the redactions as excessive, and not in line with the agency's FOIA's obligations. As we expressly confirmed in my August 6 email and our conference call the same day, HRDC is seeking (1) the name of each claimant, (2) the amount that was paid under the settlement, and (3) the details of official misconduct alleged by the claimant. All of these are redacted in the latest production, in addition to non-private information like the claimant's pronoun. We believe none of this information is exempt. Please let me know by January 22 whether the agency is willing to revisit these overbroad redactions, or whether motion practice will be necessary.

Sincerely,

**Caesar Kalinowski IV** | Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300 | Seattle, WA 98104
Tel: (206) 757-8232 | Fax: (206) 757-7084
Email: caesarkalinowski@dwt.com | Website: www.dwt.com

Anchorage | Bellevue | Los Angeles | New York | Portland | San Francisco | Seattle | Washington, D.C.

---

**From:** Hertel, Angela D. <Angela.D.Hertel@usdoj.gov>
**Sent:** Wednesday, December 30, 2020 11:32 AM
**To:** Kalinowski, Caesar <CaesarKalinowski@dwt.com>; Stahl, Eric <ericstahl@dwt.com>; DMarshall@humanrightsdefensecenter.org
**Cc:** Forsyth, Kyle (USAWAW) <Kyle.Forsyth@usdoj.gov>
**Subject:** Human Rights Defense Center v. U.S. Department of Justice CA No. 20-cv-00674 (1 of 3)

**[EXTERNAL]**

---

Good afternoon,

Attached please find DEA's December production pursuant to the above-captioned civil action. Due to email size limitations, I will be sending our response in three separate emails.

Thank you,

Angela Hertel
Unit Chief
Legal and External Affairs Unit
Freedom of Information/Privacy Act Section
Drug Enforcement Administration
angela.d.hertel@usdoj.gov

# EXHIBIT I

## Kalinowski, Caesar

| | |
|---|---|
| **From:** | Forsyth, Kyle (USAWAW) <Kyle.Forsyth@usdoj.gov> |
| **Sent:** | Monday, February 22, 2021 9:06 AM |
| **To:** | Kalinowski, Caesar |
| **Cc:** | Stahl, Eric; DMarshall@humanrightsdefensecenter.org |
| **Subject:** | RE: Human Rights Defense Center v. U.S. Department of Justice CA No. 20-cv-00674 |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

**[EXTERNAL]**

---

Hello Caesar,

DEA plans to produce the Dec. 2020, and Jan. 2021 documents with dollar figures and pronouns unredacted when it provides its new February 2021 production at the end of this week.

Kyle

Kyle A. Forsyth
Assistant United States Attorney
Financial Litigation Coordinator
U.S. Department of Justice
Western District of Washington
700 Stewart Street, Suite 5220
Seattle, WA 98101
Office: (206) 553-4751
Mobile: (206) 518-4394
Fax: (206) 553-4067

This e-mail (including any attachments) is intended for the use of the individual or entity to which it is addressed. It may contain information that is privileged, confidential, or otherwise protected by applicable law. If the reader of this e-mail is not the intended recipient or the employee or agent responsible for delivering the e-mail to the intended recipient, the reader is hereby notified that any dissemination, distribution, copying or use of this e-mail or its contents is strictly prohibited. If you have received this e-mail in error, please notify the sender immediately by replying to this message, and please destroy all copies of this e-mail.

---

**From:** Kalinowski, Caesar <CaesarKalinowski@dwt.com>
**Sent:** Tuesday, February 16, 2021 5:10 PM
**To:** Forsyth, Kyle (USAWAW) <KForsyth@usa.doj.gov>
**Cc:** Stahl, Eric <ericstahl@dwt.com>; DMarshall@humanrightsdefensecenter.org
**Subject:** RE: Human Rights Defense Center v. U.S. Department of Justice CA No. 20-cv-00674

Kyle,

Following up on our January 21 meet and confer and your email below, in which you indicated that DEA would be reproducing its earlier productions without certain redactions. Any indication as to when we can expect those revised productions from months' past?

Thanks,

**Caesar Kalinowski IV** | Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300 | Seattle, WA 98104
Tel: (206) 757-8232 | Fax: (206) 757-7084
Email: caesarkalinowski@dwt.com | Website: www.dwt.com

Anchorage | Bellevue | Los Angeles | New York | Portland | San Francisco | Seattle | Washington, D.C.

---

**From:** Forsyth, Kyle (USAWAW) <Kyle.Forsyth@usdoj.gov>
**Sent:** Friday, January 29, 2021 4:31 PM
**To:** Kalinowski, Caesar <CaesarKalinowski@dwt.com>; Stahl, Eric <ericstahl@dwt.com>; DMarshall@humanrightsdefensecenter.org
**Subject:** RE: Human Rights Defense Center v. U.S. Department of Justice CA No. 20-cv-00674

**[EXTERNAL]**

---

Caesar, Eric, and Dan,

When I spoke with Caesar and Dan last week, you raised a few questions and I said I would discuss with DEA. Here are DEA's responses to the questions:

- DEA considers Special Counsel claims the same as EEOC or MSPB claims for purposes of redactions and privacy protections under 5 U.S.C. 552(b)(6) because they constitute "personnel" and "similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."

- DEA will release the pronouns in its productions starting next month and will undo the redactions of pronouns in its productions released up to now.

- DEA will consider on a case-by-case basis whether to release unredacted court orders/opinions. You raised this regarding a Federal Circuit opinion included in DEA's December 30, 2020, production. DEA's determination will consider what other documents from the file accompany the court order/opinion in the production, and whether release of the personally identifying information in the unredacted court order/opinion, in combination with those other documents, would violate the privacy interests protected by 552(b)(6).

I'm happy to discuss any of this if you have further questions.

Have a good weekend,
Kyle

Kyle A. Forsyth
Assistant United States Attorney
Financial Litigation Coordinator
U.S. Department of Justice
Western District of Washington
700 Stewart Street, Suite 5220
Seattle, WA 98101

# EXHIBIT J

**Kalinowski, Caesar**

| | |
|---|---|
| **From:** | Kalinowski, Caesar |
| **Sent:** | Wednesday, April 14, 2021 11:45 AM |
| **To:** | Forsyth, Kyle (USAWAW) |
| **Cc:** | Stahl, Eric; DMarshall@humanrightsdefensecenter.org |
| **Subject:** | RE: HRDC v. DEA - 4th Joint Status Report |

Kyle,

Can we set up a time to talk in the next week? We need to discuss a number of DEA production issues, and a briefing schedule for a possible HRDC motion if we can't resolve them in advance of the next status update.

First, DEA's February production and reprocessed documents for December 2020 and January 2021 (sent on February 26) was not the full re-production of previously over-redacted material, which is what we had been led to expect. Instead, we received only 123 reprocessed documents (out of 399 previously produced) for the December production and only 15 reprocessed documents (out of 92) for January's production. Does DEA intend to provide the full reprocessed productions for these months, and if so, when can we expect to receive it?

Furthermore, the DEA has excluded from its productions several responsive documents that are referenced within produced documents. For example, File 103 from Part 4 of March's production references a claim letter that was also served on DEA; however, that letter is not attached to the production. DEA should provide this letter, and any other documents identified or referenced in its earlier productions, which have not been produced.

Finally, HRDC continues to object to DEA's overly broad redaction of all names, dates, and details of alleged misconduct in the records produced to date. We intend to seek summary judgment that DEA has violated the FOIA by overly broad assertion of privacy exemptions and by failing to provide all responsive non-exempt information. Unless DEA is prepared to reconsider its position on these exemptions, we should discuss a briefing schedule ahead of our next status report to the court.

Thank you,

**Caesar Kalinowski IV** | Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300 | Seattle, WA 98104
Tel: (206) 757-8232 | Fax: (206) 757-7084
Email: caesarkalinowski@dwt.com | Website: www.dwt.com

Anchorage | Bellevue | Los Angeles | New York | Portland | San Francisco | Seattle | Washington, D.C.

---

**From:** Forsyth, Kyle (USAWAW) <Kyle.Forsyth@usdoj.gov>
**Sent:** Friday, March 19, 2021 1:56 PM
**To:** Kalinowski, Caesar <CaesarKalinowski@dwt.com>
**Cc:** Stahl, Eric <ericstahl@dwt.com>; DMarshall@humanrightsdefensecenter.org
**Subject:** RE: HRDC v. DEA - 4th Joint Status Report

**[EXTERNAL]**

---

Thanks, Caesar. I'll get it filed.

Kyle

# EXHIBIT K

## Kalinowski, Caesar

| | |
|---|---|
| **From:** | Forsyth, Kyle (USAWAW) <Kyle.Forsyth@usdoj.gov> |
| **Sent:** | Tuesday, May 25, 2021 3:06 PM |
| **To:** | Kalinowski, Caesar |
| **Cc:** | Stahl, Eric; DMarshall@humanrightsdefensecenter.org |
| **Subject:** | HRDC v. DEA - follow-up to our 4/22/21 call |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

**[EXTERNAL]**

Hello Caesar,

I received your voicemail message yesterday and thought I'd send you these updates on the DEA's production and responses to the issues HRDC raised during our April 22 call.

1. **Publicly filed documents.**
The DEA will produce publicly filed documents (such as those filed on public court dockets) without redactions. These include a Federal Circuit opinion from the DEA's Dec. 30, 2020, production and additional documents that you will see in the May 2021 production.

2. **Documents referenced but not produced.**
HRDC identified one such document during our April 22 call, a "claim letter" that a claimant sent to the DEA before submitting the SF-95 claim form. The DEA produced the claim form as part of file number 103 in part 4 of its March 2021 production. The DEA maintains that the "claim letter" is not a "complaint or claim form" nor an amendment thereto, and is thus not responsive to the FOIA request.

   That said, the DEA is willing to consider producing the claim letter (with redactions). Recognizing that the DEA's decision regarding this document has implications for any similarly situated documents, it would be helpful to know if there are additional documents that HRDC thinks fall within this "referenced but not produced" category. If there are, could you please send me a list of them? If there are not, could you please confirm that?

3. **Redactions of names and other claim details.**
The DEA believes that its redactions of names and other claim details are consistent with its privacy obligations under the FOIA, specifically section 522(b)(6). To the extent that the DEA's responsive documents include settlement agreements like the one discussed by Judge Zilly's April 5, 2021, opinion in *HRDC v. DHS/ICE*, i.e., settlements that the parties thereto expressly agree may be made public in their entirety, the DEA will not redact the settlements, except as necessary to protect the privacy interests of individuals who are not parties to the agreements.

   As I understand the *HRDC v. DHS/ICE* case, defendants redacted names and other personal information from many of the 8,000-plus pages of documents they produced. HRDC challenged the redactions only as to one document, a settlement agreement. HRDC appears to be taking a more aggressive approach to the DEA's redactions. If HRDC sees a distinction between DHS/ICE's redactions and the DEA's redactions, or if there is some other reason for HRDC's (apparently) different stance, I think it could be fruitful for HRDC to share its perspective with the DEA.

Your voicemail also mentioned "inconsistent redactions." I wasn't clear what that meant, so I'll await clarification before responding. The DEA will provide an additional production by the end of May. Feel free to follow up with a call: 206-553-4751.

Kyle

Kyle A. Forsyth
Assistant United States Attorney
Financial Litigation Coordinator
U.S. Department of Justice
Western District of Washington
700 Stewart Street, Suite 5220
Seattle, WA 98101
Office: (206) 553-4751
Mobile: (206) 518-4394
Fax: (206) 553-4067

____________________________________________________________________

This e-mail (including any attachments) is intended for the use of the individual or entity to which it is addressed. It may contain information that is privileged, confidential, or otherwise protected by applicable law. If the reader of this e-mail is not the intended recipient or the employee or agent responsible for delivering the e-mail to the intended recipient, the reader is hereby notified that any dissemination, distribution, copying or use of this e-mail or its contents is strictly prohibited. If you have received this e-mail in error, please notify the sender immediately by replying to this message, and please destroy all copies of this e-mail.

# EXHIBIT L

**Kalinowski, Caesar**

| | |
|---|---|
| **From:** | Kalinowski, Caesar |
| **Sent:** | Wednesday, July 28, 2021 12:24 PM |
| **To:** | Forsyth, Kyle (USAWAW) |
| **Cc:** | Stahl, Eric; DMarshall@humanrightsdefensecenter.org |
| **Subject:** | RE: HRDC v. DEA - June 21 JSR |

Kyle,

Below is our list of outstanding issues and associated documents, which includes a number of items previously addressed in our conferences and correspondence. We look forward to discussing these issues and the briefing schedule for summary judgment this week.

***First***, HRDC objects to DEA's redactions—under its purported invocation of Exemption 6—to the following categories of documents and information:

1. **Dates of filings, misconduct, or government actions**: HRDC has repeatedly asserted—and DEA has not denied—that there is no independent privacy interest involved with the release of dates included in letters, complaints, decisions, or agreements. *See, e.g.*, **Dec. 2020, Jan. 2021, Feb. 2021, & Mar. 2021** productions. As such, we object to those four months' worth of productions that included redactions of dates.

2. **Names of the government tortfeasors identified in demands and complaints**: HRDC asserts that DEA should unredact the names of all identified government agents and employees responsible for wrongdoing, as those individuals' privacy interests are diminished by virtue of their own intentional misconduct or actions that resulted in payment of taxpayer funds. In light of information regarding DEA's and its supervisors' policy of retaining employees with records of continuing misconduct, the public interest in holding DEA accountable for its employment practices is also implicated. Furthermore, HRDC objects to the redaction of government employee information, such as an employee's position, supervisors, or any included history of misconduct by either party. *See, e.g.*, **Dec. 20-Part 1,** BATES 77-96; **Dec. 20-Part 2,** BATES 114-123, 164-170; **Dec. 20-Part 3,** BATES 9-64; **Feb. 21-Part 1,** BATES 1-77.

3. **Names of victims of government misconduct and claimants**: As noted in our first call and my August 6, 2020 email, HRDC still seeks the name of any claimant on the basis that (1) the person affirmatively filed a demand or suit under their own name, (2) the person themselves or repeated wrongdoing against them could be independently newsworthy, and (3) taxpayer funds went directly to that person as a result of government misconduct. Accordingly, we object to the redaction of the claimants names in documents in each DEA production.

4. **Public and quasi-public filings**: Although your May 25th email asserted that DEA would "produce all publicly filed documents (such as [but not limited to] those filed on public court dockets) without redactions," we note that it still has failed to produce fully unredacted versions of a number of documents. *See* **Jan. 21-Part 1,** BATES 21-67; **May 21-Part 1**, BATES 1-3, 58-62, 83-87, 100-103; **May 21-Part 2**, BATES 54-57, 111-126; **May 21-Part 3**, BATES 64-69, 122-137, 138-140; **Jun. 21-Part 1**, BATES 17-23. Notwithstanding any assertion that certain documents we identify "do not appear to have been publicly filed," those documents should be released as they are documents associated with a public suit, resolution through a public government tribunal, and/or the parties have expressly anticipated or allowed for their release.

   Relatedly, HRDC asserts that DEA should produce all administrative decisions by government tribunals, *see* **Dec. 20-Part 1,** BATES 15-52, 77-96; **Dec. 20-Part 3,** BATES 31-38; **Feb. 21-Part 1,** BATES 30-61; **Feb. 21-Part 2,** BATES

1-68; **Mar. 21-Part 1,** BATES 63-71, as well as those associated settlement agreements and DOJ letters or decisions that do not contain specific prohibitions on public disclosure, *see* **Dec. 20-Part 1,** BATES 1-14, 53-76, 97-121; **Dec. 20-Part 2,** BATES 1-133, 144-170; **Dec. 20-Part 3,** BATES 1-30, 39-64, 80-108; **Jan. 21-Part 1,** BATES 1-20, 72-77; **Mar. 21-Part 1,** BATES 47-56, 59-62, 72-74; **Mar. 21-Part 2,** BATES 1-3, 8-16; **Mar. 21-Part 3,** BATES 5-9; **Mar. 21-Part 4,** BATES 11-26; **Apr. 21-Part 1,** BATES 49; **Apr. 21-Part 2,** BATES 47-62, 71-75.

5. **Details concerning allegations of government misconduct**: As identified in multiple conferences and correspondence from August 2020 through now, HRDC objects to the redaction of the details of misconduct—whether alleged in a complaint letter or included in the settlement agreement. In addition its partial release of this type of information for certain benign claims only, which simply furthers the appearance that DEA is trying to hide egregious conduct from public scrutiny, the Administration should strongly consider releasing the remaining details alleged in the claims and settlements.

   Especially concerning those (1) whistleblower and retaliation cases that implicate DEA's internal processes for dealing with misconduct, *see* **Dec. 20-Part 2,** BATES 1-113; **Dec. 20-Part 3,** BATES 31-38, 86-105, **Mar. 21-Part 1,** BATES 63-71, **Mar. 21-Part 4,** BATES 11-17, 22-26, **Apr. 21-Part 2,** BATES 1-55, (2) class actions involving systematic, large scale issues and significant settlements, *see* **Jan. 21-Part 1,** BATES 21-67; **May 21-Part 2,** BATES 111-126; **May 21-Part 3,** BATES 122-137, and (3) those cases involving noteworthy demands and government payments, *see, e.g.*, **Mar. 21-Part 4,** BATES 29-31 ($20m); **Apr. 21-Part 1,** BATES 24 ($5m); **Feb. 21-Part 1,** BATES 1-29, the public interest served by release of those details outweighs any privacy interest in the details of misconduct resulting in payment of taxpayer funds.

***Second***, although HRDC agreed to temporarily narrow its claims to exclude traffic accident and lower level (i.e. <$2,500) claims in August 2020, HRDC objects to DEA's wholesale withholding of numerous pages and documents without sufficient explanation.

As previously noted in my May 25th email, HRDC's request included a demand for all documents related to "**all claims or lawsuits** brought against DEA and/or any of its agents or employees," without any modifier or limitations related to "claim" forms. However, DEA has chosen to only file those claim forms that *it* feels led to the settlement. HRDC objects to this unilateral withholding of claim letters, amended claims, and any other type of demand- or satisfaction-related documents associated with a DEA settlement payment. For example, HRDC requests that DEA produce all complaints and/or demands related to class action suit settlements, regardless of the form the original demand took. *See, e.g.*, **May 21-Part 2,** BATES 111-126; **May 21-Part 3,** BATES 122-137. But in addition to those unknown claims and demands that DEA has not produced, HRDC renews its contention that DEA should produce claim documents referenced, associated with, or relied upon in the documents it has already produced. *See, e.g.*, **Mar. 21-Part 1,** BATES 29-31, **Apr. 21-Part 1,** BATES 25-26.

In compiling the amounts identified in DEA's production as paid for settlements, we noted a discrepancy between the information and documents it has produced and DEA's ~$45m worth of payments identified in Treasury's judgment fund. *See* https://www.fiscal.treasury.gov/judgment-fund/. Notwithstanding the DEA's possession of documents connected to $12m in traffic-related payments—which HRDC reserved the right to request at a later date—DEA's current productions still do not account for ~$18m in DEA payments made from 2010-19. As such, we request that DEA describe the number of documents that it is further withholding but would fall within HRDC's requests. *See Hamdan v. U.S. Dep't of Just.*, 797 F.3d 759, 780 (9th Cir. 2015) ("An agency must describe the document or information being withheld in sufficient detail to allow the plaintiffs and the court to determine whether the facts alleged establish the corresponding exemption."). In anticipation of DEA's confirmation that it is withholding additional relevant documents and pages, HRDC objects to such a withholding. Further, HRDC requests that DEA produce those traffic related claim and settlement documents related to demands or payments for over $200,000.

***Last***, DEA has routinely redacted entire pages without any explanation or attempt to segregate the purportedly private information. *See* **Dec. 20-Part 1,** BATES 1-52, 68-117; **Dec. 20-Part 2,** BATES 1-113, 134-161; **Dec. 20-Part 3,** BATES 1-8, 16-64, 86-105; **Jan. 21-Part 1,** BATES 13-67; **Feb. 21-Part 1,** BATES 1-29, **Apr. 21-Part 2,** BATES 1-55. "The

focus of the FOIA is information, not documents, and an agency cannot justify withholding an entire document simply by showing that it contains some exempt material." *A.C.L.U. of N. Cal. v. United States Dep't of Just.*, 880 F.3d 473, 489 (9th Cir. 2018) (quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977)). Indeed, 5 U.S.C. § 552(b) specifically provides that "**[a]ny** reasonably segregable portion of a record shall be provided," not just whole paragraphs or pages with purportedly exempt content. As such, HRDC objects to DEA's failure to segregate information contained in the requested documents and requests that DEA reproduce all documents with such overbroad redactions.

Please let us know when this week you would like to discuss these issues, many of which you have already responded to in other communications.

Sincerely,

**Caesar Kalinowski IV** | Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300 | Seattle, WA 98104
Tel: (206) 757-8232 | Fax: (206) 757-7084
Email: caesarkalinowski@dwt.com | Website: www.dwt.com

Anchorage | Bellevue | Los Angeles | New York | Portland | San Francisco | Seattle | Washington, D.C.

---

**From:** Forsyth, Kyle (USAWAW) <Kyle.Forsyth@usdoj.gov>
**Sent:** Monday, July 26, 2021 10:13 AM
**To:** Kalinowski, Caesar <CaesarKalinowski@dwt.com>
**Cc:** Stahl, Eric <ericstahl@dwt.com>; DMarshall@humanrightsdefensecenter.org
**Subject:** RE: HRDC v. DEA - June 21 JSR

**[EXTERNAL]**

---

Hello Caesar,

I don't believe DEA has received HRDC's list of outstanding documents and issues that it plans to contest. DEA's understanding is that we will schedule the meet-and-confer after we've been able to consider and discuss HRDC's list. When do you think HRDC will provide the list of documents/issues that is contemplated by the 5th JSR?

Thanks,

Kyle

Kyle A. Forsyth
Assistant United States Attorney
Financial Litigation Coordinator
U.S. Department of Justice
Western District of Washington
700 Stewart Street, Suite 5220
Seattle, WA 98101
Office: (206) 553-4751
Mobile: (206) 518-4394
Fax: (206) 553-4067

This e-mail (including any attachments) is intended for the use of the individual or entity to which it is addressed. It may contain information that is privileged, confidential, or otherwise protected by applicable law. If the reader of this e-mail is not the intended recipient or the employee or agent responsible for delivering the e-mail to the intended recipient, the reader is hereby notified that any dissemination, distribution, copying or use of this e-mail or its contents is strictly

# EXHIBIT M

**Kalinowski, Caesar**

| | |
|---|---|
| **From:** | Forsyth, Kyle (USAWAW) <Kyle.Forsyth@usdoj.gov> |
| **Sent:** | Monday, August 23, 2021 12:39 PM |
| **To:** | Kalinowski, Caesar; Stahl, Eric; DMarshall@humanrightsdefensecenter.org |
| **Subject:** | HRDC v. DEA - schedule for reproduction |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

**[EXTERNAL]**

---

Caesar,

I'm back from vacation and spoke with DEA today. One point of clarification: DEA will produce "claim letters," to the extent it possesses them, when such letters contain the substance of a claim or are specifically referenced in a claim form or complaint, e.g., "see attached letter." Also, thank you for the Judgment Fund spreadsheet. In looking at it briefly, it seems clear that many (most) of the payments are for traffic-related claims, which HRDC agreed DEA could exclude (except now for payments exceeding $200,000). Those traffic-related payments likely account for much of the discrepancy you previously identified.

Although not its preferred method, DEA is willing to prioritize reviewing and reproducing the 200 pages HRDC identified in the attachment to your August 17 email. While DEA cannot realistically process those 200 pages by September 7 (which is two weeks from tomorrow), DEA will commit to reproducing the 200 pages by September 30, 2021. DEA's lead attorney will be out for two weeks in September, so an earlier deadline is not feasible.

Upon completion of those 200 pages, DEA will continue to review the remaining 1,661 pages of its production. This review will involve detailed evaluation of redactions by DEA attorneys. DEA currently has two attorneys who can work on this project (along with other matters that comprise their caseloads). They will work through the documents as expeditiously as possible but DEA cannot commit to completion by HRDC's requested November 19, 2021, deadline. I propose that at present we refrain from imposing an end date. In any event, HRDC will receive the 200 pages it has prioritized by September 30, and can evaluate then the benefit of letting DEA continue this process. In light of these adjustments to HRDC's proposal, if you want to set the next JSR for 60 days, DEA is amenable to that.

Thanks,
Kyle

Kyle A. Forsyth
Assistant United States Attorney
Financial Litigation Coordinator
U.S. Department of Justice
Western District of Washington
700 Stewart Street, Suite 5220
Seattle, WA 98101
Office: (206) 553-4751
Mobile: (206) 518-4394
Fax: (206) 553-4067

---

This e-mail (including any attachments) is intended for the use of the individual or entity to which it is addressed. It may contain information that is privileged, confidential, or otherwise protected by applicable law. If the reader of this e-mail is not the intended recipient or the employee or agent responsible for delivering the e-mail to the intended recipient,

the reader is hereby notified that any dissemination, distribution, copying or use of this e-mail or its contents is strictly prohibited. If you have received this e-mail in error, please notify the sender immediately by replying to this message, and please destroy all copies of this e-mail.

---

**From:** Kalinowski, Caesar <CaesarKalinowski@dwt.com>
**Sent:** Tuesday, August 17, 2021 1:42 PM
**To:** Forsyth, Kyle (USAWAW) <KForsyth@usa.doj.gov>
**Cc:** Stahl, Eric <ericstahl@dwt.com>; DMarshall@humanrightsdefensecenter.org
**Subject:** RE: Today's call

Kyle,

To follow up on our promise below, I write with a response to DEA's offer, identification of documents, and a proposed timeline to include with our August 25th JSR.

First, HRDC accepts DEA's offer to postpone summary judgment briefing so that it may (1) re-review all produced documents, and (2) produce or (3) reproduce documents and information based on those issues identified in emails below.

Second, attached is HRDC's list of 200 pages of documents that it contends DEA should review first to assist with narrowing the parties' disputes. In light of the timeline previously suggested by DEA for completing its re-review, we believe **September 7, 2021** is a reasonable deadline for DEA's reproduction of these limited pages. We do also assume, however, that DEA will continue re-reviewing its remaining productions even after it has produced those first 200 pages.

Third, HRDC asks that DEA produce the remaining reprocessed documents and any new claim or settlement documents no later than **November 19, 2021**. Given the repeated revisions, agreements, and re-productions already made in this matter, we are confident that DEA's team should be familiar with the documents and can un-redact large swaths of non-exempt information.

If your client is amenable to these terms, we can inform the Court in our upcoming JSR and request an additional 90 days' stay as we resolve these issues. We look forward to your response when you're back from vacation.

Sincerely,

**Caesar Kalinowski IV** | Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300 | Seattle, WA 98104
Tel: (206) 757-8232 | Fax: (206) 757-7084
Email: caesarkalinowski@dwt.com | Website: www.dwt.com

Anchorage | Bellevue | Los Angeles | New York | Portland | San Francisco | Seattle | Washington, D.C.

---

**From:** Kalinowski, Caesar
**Sent:** Monday, August 16, 2021 12:18 PM
**To:** 'Forsyth, Kyle (USAWAW)' <Kyle.Forsyth@usdoj.gov>
**Cc:** Stahl, Eric <ericstahl@dwt.com>; 'DMarshall@humanrightsdefensecenter.org' <DMarshall@humanrightsdefensecenter.org>
**Subject:** RE: Today's call

Kyle,

Following up on our call, we write to confirm that our understanding that DEA has offered to affirmatively review all documents it previously produced, and redactions it previously applied to those productions, based on HRDC's objections on July 28, 2021. Those included objections to the lack of segregation and total withholding of information related to dates, names of tortfeasors and victims, and details of misconduct, contained in both public and administrative tribunal filings. Furthermore, we understand that DEA has agreed to produce (1) all traffic-related settlements (along with associated demand letters for those settlements) for amounts paid over $200,000 and (2) any referenced claim letter or associated document that is identified or relied upon in the earlier productions. DEA also intends to undertake an examination of the discrepancy between its production and the DEA judgment fund, which contains information provided by the Administration itself. To assist in the latter inquiry, HRDC attaches the downloaded 2012-2019 judgment fund spreadsheet, which represents the total payouts made by the agency during that time.

Additionally, we understand that DEA asserts that (A) administrative filings like EEOC decisions are not subject to disclosure like public filings and (B) HRDC's original request did not encompass any and all claim letters but only those that led directly to a settlement.

We will review this information and respond shortly with our thoughts and a suggested time line, as well as any particular documents that we believe should be reviewed and released first.

Please let me know if you have any corrections or questions. Otherwise, have a great vacation and we will be in touch.

Sincerely,

**Caesar Kalinowski IV** | Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300 | Seattle, WA 98104
Tel: (206) 757-8232 | Fax: (206) 757-7084
Email: caesarkalinowski@dwt.com | Website: www.dwt.com

Anchorage | Bellevue | Los Angeles | New York | Portland | San Francisco | Seattle | Washington, D.C.

# EXHIBIT N

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

NEDA SHOJAEI,

Plaintiff,

v. CASE NO. 5:11-CV-247-Oc-10TBS

UNITED STATES OF AMERICA,

Defendant.
_______________________________/

STIPULATION FOR COMPROMISE SETTLEMENT AND RELEASE OF FEDERAL TORT CLAIMS ACT CLAIMS PURSUANT TO 28 U.S.C. § 2677

It is hereby stipulated by and between the undersigned Plaintiff (meaning any person, other than the Defendant, signing this agreement, whether or not a party to this civil action), and the United States of America, by and through their respective attorneys, as follows:

1. The parties do hereby agree to settle subject to court approval and compromise each and every claim of any kind, whether known or unknown, arising directly or indirectly from the acts or omissions that gave rise to the above-captioned action under the terms and conditions set forth in this Settlement Agreement.

2. The United States of America agrees to pay the sum of $80,000.00 which sum shall be in full settlement and satisfaction of any and all claims, demands, rights, and causes of action of whatsoever kind and nature, arising from, and by reason of any and all known and unknown, foreseen and unforeseen bodily and personal injuries, damage to property and the consequences thereof, resulting, and to result, from the subject matter of this settlement, that Plaintiff now has or may hereafter

acquire against the United States of America, its agents, servants, and employees including, but not limited to, (b)(6); (b)(7)(C) and (b)(6); (b)(7)(C)

3. Plaintiff hereby agrees to accept the sums set forth in this Stipulation of Compromise Settlement in full settlement and satisfaction of any and all claims, demands, rights, and causes of action of whatsoever kind and nature, including claims for wrongful death, arising from, and by reason of any and all known and unknown, foreseen and unforeseen bodily and personal injuries, damage to property and the consequences thereof which they may have or hereafter acquire against the United States of America, its agents, servants and employees on account of the same subject matter that gave rise to the above-captioned action, including any future claim or lawsuit of any kind or type whatsoever, whether known or unknown, and whether for compensatory or exemplary damages. Plaintiff further agrees to reimburse, indemnify and hold harmless the United States of America, its agents, servants, and employees from and against any and all such causes of action, claims, liens, rights, or subrogated or contribution interests incident to or resulting from further litigation or the prosecution of claims by plaintiff , executors, administrators or assigns against any third party or against the United States, including claims for wrongful death only to the extent that a valid lien is asserted and only to the extent of the valid lien. The Plaintiff agrees to satisfy or otherwise resolve any lien or subrogated interest for workers compensation and health care benefits paid or payable to the undersigned as a consequence of the occurrence settled pursuant to this agreement.

4. The United States agrees to waive its right to appeal the Court's Judgment in favor of Plaintiff and will withdraw its Notice of Appeal.

5. This stipulation for compromise settlement is not, is in no way intended to be, and should not be construed as, an admission of liability or fault on the part of the United States, its agents, servants, or employees, and it is specifically denied that they are liable to the Plaintiff. This settlement is entered into by all parties for the purpose of compromising disputed claims under the Federal Tort Claims Act and avoiding the expenses and risks of further litigation.

6. It is also agreed, by and among the parties, that the respective parties will each bear their own costs, fees, and expenses and that any attorney's fees owed by the plaintiff will be paid out of the settlement amount and not in addition thereto.

7. It is also understood by and among the parties that pursuant to Title 28, United States Code, Section 2678, attorney's fees for services rendered in connection with this action shall not exceed 25 per centum of the amount of the compromise settlement.

8. The persons signing this Settlement Agreement warrant and represent that they possess full authority to bind the persons on whose behalf they are signing to the terms of the settlement.

9. Payment of the settlement amount will be made by Electronic Funds Transfer drawn on the Treasury of the United States for Eighty Thousand Dollars (80,000.00) and made payable to Neda Shojaei, c/o John W. Dill, Esquire. Plaintiff's attorney agrees to obtain a dismissal of the above - captioned action with prejudice, with each party bearing its own fees, costs, and expenses.

10. The parties agree that this Stipulation for Compromise Settlement and Release, including all the terms and conditions of this compromise settlement and any additional agreements relating thereto, may be made public in their entirety, and the plaintiffs expressly consent to such release and disclosure pursuant to 5 U.S.C. § 552a(b).

11. It is contemplated that this Stipulation may be executed in several counterparts, with a separate signature page for each party. All such counterparts and signature pages, together, shall be deemed to be one document.

John W. Dill, Esq.
Florida Bar No. 0981680
Morgan & Morgan
P.O. Box 4979
Orlando, Florida 32801
Telephone: (407) 420-1414
Facsimile (407) 425-8171

4-18-13
Date

Neda Shojaei, Plaintiff

ROBERT E. O'NEILL
United States Attorney

By:

Ralph E. Hopkins
Assistant United States Attorney
Florida Bar No. 0972436
400 W. Washington St., Ste. 3100
Orlando, Florida 32801
Telephone: (407) 648-7500
Facsimile: (407) 648-7588

4-19-13
Date

4-12-13
Date

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Danny Brown,** | : | |
| | : | |
| **Plaintiff,** | : | **No. 1:10-cv-752** |
| | : | **Judge Solomon Oliver** |
| **v.** | : | |
| | : | |
| **United States of America,** | : | |
| | : | |
| **Defendant.** | : | |

**STIPULATION FOR COMPROMISE SETTLEMENT**
**<u>AND RELEASE OF CLAIMS</u>**

It is hereby stipulated by and between the UNITED STATES OF AMERICA (HEREINAFTER "United States") and DANNY LEE BROWN, (HEREINAFTER "PLAINTIFF") (collectively, the "parties"), by and through their respective attorneys, as follows:

1. The parties do hereby agree to settle and compromise each and every claim of any kind, whether known or unknown, arising directly or indirectly from the acts or omissions that gave rise to the above-captioned action under the terms and conditions set forth in this Stipulation for Compromise Settlement and Release of Claims (hereinafter "Stipulation"). It is agreed by and among the parties that (b)(6); (b)(7)(C) as official members of the DEA Task Force at issue, are deemed federal employees for the purposes of this Stipulation. Plaintiff, however, expressly reserves his right to proceed against all other persons and entities, other than the United States of America, or its offices, agencies, officers and employees. This express reservation of rights includes but is not limited to, Plaintiff's right to proceed against the estate of

Jerrell Bray, Richland County Ohio, the Richland County Sheriff's Office, or other employees and agents of Richland County Ohio.

2. The United States agrees to pay the cash sum of $130,000 (ONE HUNDRED THIRTY THOUSAND DOLLARS) (hereinafter "Settlement Amount"), which sum shall be in full settlement, satisfaction, AND RELEASE of any and all claims, demands, rights, and causes of action of whatsoever kind and nature, REGARDLESS OF LEGAL THEORY, arising from, and by reason of any and all known and unknown, foreseen and unforeseen bodily and personal injuries, violation of rights, damage to property and the consequences thereof, resulting, and to result, from the subject matter of this settlement, including any claims for COSTS, EXPENSES, FEES, AND wrongful death, for which plaintiff or his guardians, heirs, executors, administrators, or assigns, and each of them, now have or may hereafter acquire against the United States of America, its agents, servants, and employees.

3. Plaintiff and his guardians, heirs, executors, administrators or assigns hereby agrees to accept the settlement amount set forth in this Stipulation in full settlement, satisfaction, and release of any and all claims, demands, rights, and causes of action of whatsoever kind and nature, including claims for wrongful death, arising from, and by reason of any and all known and unknown, foreseen and unforeseen, bodily and personal injuries, damage to property and the consequences thereof which they may have or hereafter acquire against the United States of America, its agents, servants and employees on account of the same subject matter that gave rise to the above-captioned actions, including any future claim or lawsuit of any kind or type whatsoever, regardless of legal theory, whether known or unknown, and whether for compensatory or exemplary damages. Plaintiff, his guardians, heirs, executors, administrators or assigns further

agree to reimburse, indemnify and hold harmless the United States of America, its agents, servants, and employees from and against any and all such causes of action, claims, liens, rights, or subrogated or contribution interests incident to or resulting from further litigation or the prosecution of claims by Plaintiff, his guardians, heirs, executors, administrators or assigns against any third party or against the United States, including claims for wrongful death.

4. This Stipulation is not, is in no way intended to be, and should not be construed as, an admission of liability or fault on the part of the United States, its agents, servants, or employees, and it is specifically denied that they are liable to the plaintiff. This settlement is entered into by all parties for the purpose of compromising disputed claims and avoiding the expenses and risks of further litigation.

5. It is also agreed, by and among the parties, that the respective parties will each bear their own costs, fees, and expenses and that any attorney's fees owed by the plaintiff will be paid out of the Settlement Amount and not in addition thereto. Plaintiff stipulates and agrees that any fees he owes his attorneys for legal services rendered in connection with their claims shall not exceed twenty-five percent (25%) of the settlement amounts. 28 U.S.C.§ 2678.

6. The persons signing this Stipulation warrant and represent that they possess full authority to bind the persons on whose behalf they are signing to the terms of the settlement.

7. Payment of the settlement amount will be transmitted to Plaintiff's attorney, who agrees to distribute the settlement amount to the plaintiff, after paying or resolving any known lien or claim for payment or reimbursement arising out of the subject matter of this action. Plaintiff agrees to dismissal of the above-captioned action with prejudice, with each party bearing its own fees, costs, and expenses.

8. The undersigned each acknowledge and represent that this Stipulation contains all the terms and conditions of this compromise settlement, that no promise or representation not contained in this Stipulation has been made to them, and that this Stipulation contains the entire understanding between the parties and contains all terms and conditions pertaining to the within compromise and settlement of the disputes referenced herein.

9. The parties agree that this Stipulation and any additional documents relating to this settlement, may be made public in their entirety, and Plaintiff expressly consents to such release and disclosure pursuant to 5 U.S.C. § 552a(b).

10. It is contemplated that this Stipulation may be executed in several counterparts, with a separate signature page for each party. All such counterparts and signature pages, together, shall be deemed to be one document.

///

///

# EXHIBIT O

IN THE DISTRICT COURT OF (b)(6)
(b)(6)

| | | |
|---|---|---|
| (b)(6)<br>PLAINTIFF,<br><br>V.<br><br>ERIC HOLDER, JR. IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE UNITED STATES.<br>DEFENDANT. | ) | CIVIL NO. (b)(6) |

## SETTLEMENT AGREEMENT AND RELEASE

1. The parties have agreed to compromise the claims and defenses remaining at issue in this action. The Attorney General agrees to pay a settlement sum in the total amount of $200,000, payable to (b)(6) Law Offices Trust Account. The Attorney General also agrees to give to the plaintiff 20 days of annual leave to be credited to her account on or shortly after (b)(6) 2013 and used no later than (b)(6) 2013.

2. For and in exchange for the payments and other relief set out in ¶1 above, the plaintiff agrees to withdraw and quit for all time any and all claims, demands, actions, causes of action, complaints, appeals or suits that were filed in this case or could have been filed in this case against the Attorney General, his agencies, officers, or employees, whether in their official or individual capacities, and further agrees to waive, withdraw, and/or quit any and all claims, demands, actions, causes of action, complaints, appeals, or suits against the Attorney General, his agencies, officers or employees, whether of an administrative or judicial nature, arising out of

transactions, occurrences or events which were, or could have been, alleged or litigated in this case.

3. It is understood and agreed that the Attorney General expressly denies any and all liability to the plaintiff, and that this Settlement Agreement and Release, together with the payments and other relief set forth in ¶1, shall not be construed as, or represented to be, an admission of any liability whatsoever. Rather it is a compromise of disputed claims entered into by the parties in consideration of the time, expense and uncertainty of further litigation.

4. Plaintiff agrees to accept this consideration in full settlement of all claims which she or her heirs, executors, or assigns may have or acquire against the Attorney General, his agencies, employees, agents, or servants, arising from the events that gave rise to the above-captioned lawsuit, including any claim to attorneys' fees and costs arising from the same. Plaintiff warrants that she has not heretofore assigned, transferred, or purported to assign or transfer to any person or entity any claim, demand, action, or cause of action herein released or discharged by her.

5. The parties acknowledge, understand, and agree that this Agreement sets forth the entire Agreement between them and fully supersedes any and all prior agreements or understandings between them. No other promises or agreements will be binding unless signed by any and all of the parties. This Agreement may not be altered, amended, or changed except by a writing signed by an authorized representative of each of the parties.

6. This agreement may be executed in counterparts. A facsimile signature shall be the equivalent of an original for purposes of this Agreement.

7. Plaintiff agrees and represents that she has considered thoroughly all aspects of this Agreement; that she has discussed this Agreement with her attorney, and that in entering into this Agreement, she does so knowingly and voluntarily. The plaintiff further stipulates that she has been represented by and has relied upon independent counsel in the negotiations for the preparation of this Agreement, that she has had the contents of the Agreement fully explained to her by such counsel, and is fully aware of and understands all of the terms of the Agreement and the legal consequences thereof.

8. It is acknowledged that the parties hereto have, through their respective counsel, mutually participated in the preparation of this Agreement, and it is agreed that no provision hereof shall be construed against any party hereto by virtue of the activities of that party or its attorney.

9. If any provision of this Agreement shall be invalid, illegal, or unenforceable, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

10. In consideration of this agreement, the parties shall stipulate to a dismissal of this action with prejudice.

11. The effective date of this Agreement shall be the date that this Agreement has been signed by counsel for the Attorney General and by Plaintiff and her counsel.

Stipulated and Agreed:

Dated: (b)(6) 2012

(b)(6)

Plaintiff

Dated: (b)(6)

Attorney for Plaintiff

Dated: (b)(6)

ASSISTANT UNITED STATES ATTORNEYS
OFFICE OF THE UNITED STATES ATTORNEY

(b)(6)

ATTORNEY FOR DEFENDANT

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE [redacted]**
**[redacted]**

| | | |
|---|---|---|
| [redacted] | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | [redacted] |
| | § | |
| **ERIC H. HOLDER, JR., Attorney General, U.S. Department of Justice,** | § | |
| | § | |
| | § | |
| **Defendant.** | § | |

**STIPULATION FOR COMPROMISE AGREEMENT**

It is hereby stipulated and agreed by and between the Parties, Plaintiff, [redacted] (hereinafter "Plaintiff [redacted]), and the Defendant, ERIC H. HOLDER, JR., Attorney, U.S. Department of Justice (hereinafter the "Defendant"), by and through their respective attorneys of record, as follows:

1. In order to avoid the cost of continuing the litigation of these matters and in order to reach a resolution of all of Plaintiff [redacted] complaint and claims made the basis of the above-captioned and numbered case, the Parties have reached an agreement for the full and final settlement and compromise of any and all claims set out in the above-captioned and numbered case, styled, [redacted] *v. Eric H. Holder, Jr., Attorney General, U.S. Department of Justice*, [redacted] and all claims filed or set out in other judicial, agency or administrative forums, including, but not limited to, Title VII of the Civil Rights Act of 1964, and the Rehabilitation Act of 1973, 29 U.S.C. § 791, *et seq.*, as more fully described in Plaintiff's Complaint filed against the Defendant, his officers, employees or agents, administrative or otherwise, and any other cause of action, including claims of attorney's fees, back pay, front pay, compensation for absences, liquidated damages, breach of contract, medical expenses,

compensatory damages, or any other claim for damages, either administrative or judicial, arising out of or related to the allegations in this lawsuit, through the date of the executed Stipulation of Compromise Agreement or to the incidents made the basis of this lawsuit, which are more fully described in the pleadings and papers already on file herein.

2. This Settlement Agreement releases any and all claims of employment discrimination and/or retaliation based upon any act which has occurred prior to the date of this document's execution. Any and all other claims of any nature whatsoever which are not recognized as exceptions in this paragraph are completely released and discharged.

3. In consideration to the mutual acts, covenants and promises stated herein, the Parties agree as follows:

i. Defendant agrees to pay to Plaintiff (b)(6) the sum of NINE THOUSAND AND NO/100 DOLLARS ($9,000.00), which sum shall be in full settlement and satisfaction of any and all claims, demands, rights, and causes of action of whatsoever kind and nature, arising from, and by reason of, any and all known and unknown, foreseen and unforeseen bodily and personal injuries, damages and the consequences thereof, resulting, and to result, from the same subject matter that gave rise to the above-captioned lawsuit, for alleged violation of Title VII of the Civil Rights Act of 1964, and the Rehabilitation Act of 1973, 29 U.S.C. § 791, *et seq*., up to and including the date on which Plaintiff (b)(6) executes this Settlement Agreement, and any claims for wrongful death, for which Plaintiff (b)(6) or his heirs, executors, administrators, or assigns, and each of them, now have or may hereafter acquire against Defendant, Department of Justice, and the United States of America and their officers, agents, servants, and employees;

ii. Each party will bear their own incurred costs, fees, expenses, and any attorney's fees related to any aspect of this case, whether administratively, or otherwise related to the litigation of this cause of action and the assertions therein. Any such costs, fees, expenses, and attorney's fees owed by Plaintiff (b)(6) will be paid by Plaintiff (b)(6) out of the settlement amount and not in addition thereto;

iii. No aspect of this Settlement Agreement, either in part or in whole, will be considered as an admission, inference, acceptance of liability, or fault on the part of Defendant, or his agency, the Department of Justice, and Defendant expressly denies any and/or all allegations of fault, wrongdoing, or improper action for any and all allegations as contained in Plaintiff (b)(6) Complaint. Nor may any aspect of this Settlement Agreement form any precedential basis for any purpose.

4. The terms indicated above shall be in full settlement and satisfaction of any and all claims which Plaintiff (b)(6) now has or may herein after acquire against Defendant, the Department of Justice, and/or his respective officers, agents, servants, employees, and representatives, on account of the incidents made the basis of this lawsuit, to-wit: alleged employment discrimination under Title VII of the Civil Rights Act of 1964, and the Rehabilitation Act of 1973, 29 U.S.C. § 791, *et seq*. as more fully described in Plaintiff (b)(6) Complaint on file herein.

5. Plaintiff (b)(6) accepts the terms set forth herein as compensation and full settlement and satisfaction of any and all claims and demands, including costs and attorney fees, which he or his relatives or heirs, executors, administrators or assigns, now have, or may hereinafter acquire against Defendant, the Department of Justice, and/or their respective officers, agents, servants, representatives, and employees, on account of the incidents, or circumstances made the basis of this lawsuit. In connection with such waiver and relinquishment, Plaintiff (b)(6) acknowledges that he is aware that he may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which he now knows, with respect to the matters released herein. Nevertheless, it is the intention of Plaintiff (b)(6) through this release, and with the advice of counsel, to settle and release all such matters, and all claims relative thereto, which heretofore have existed, now exist, or hereafter may exist between Plaintiff (b)(6) and Defendant, or his components, agents, employees and former employees,

individually, and/or in their official capacities, arising out of the circumstances encompassed by this release.

6. This lump sum of NINE THOUSAND AND NO/100 DOLLARS ($9,000.00) is inclusive of all attorney fees, costs, expenses and damages associated with this action and the specific provisions of this agreement. The lump sum payment is made without any deductions, in full compromise of any and all claims for compensatory damages, as defined by the Civil Rights Act of 1991, 42 U.S.C. § 1981a. Compliance with all applicable federal, state, and local tax requirements shall be the sole responsibility of Plaintiff. Plaintiff agrees that this Stipulation is executed without reliance upon any representation by Defendant as to tax consequences, and that Plaintiff is responsible for the payment of all taxes that may be associated with the payment set forth above in Paragraph 3. Any attorney fees owed are a matter between Plaintiff (b)(6) and his attorney. Defendant is not liable for any attorney fees in connection with any claims, complaints, or actions settled by this Agreement. The determination of Plaintiff's tax liability, if any, is a matter solely between Plaintiff (b)(6) his attorney, and the IRS and/or state and local tax authorities.

7. In consideration for the terms set forth herein, Plaintiff (b)(6) agrees that he will indemnify and hold harmless Defendant and the Department of Justice from any and all claims, actions, or proceedings, which are now or may hereafter be asserted or brought by or on behalf of any person or entity to recover from Defendant, the Department of Justice, and/or their officers, agents, servants, representatives, or employees for losses, damages, or recovery of any kind arising out of, or related to the incidents made the basis of this lawsuit.

8. Should a dispute arise regarding the implementation of this Settlement Agreement, Plaintiff (b)(6) expressly agrees that he is restricted to seek judicial enforcement of

the terms of this Agreement and that he cannot seek to rescind this Settlement. Plaintiff (b)(6) will not seek enforcement of this Agreement by the Court until he first makes a good faith effort through counsel for Defendant, and/or the United States Attorney's Office to resolve any difference of interpretation of the terms of the settlement, and/or to have Defendant cure an asserted failure of performance of the terms of the settlement. Should new disputes arise between the Parties involving matters other than the fulfillment of the terms of this Agreement, those disputes are independent matters which Plaintiff (b)(6) must present to the appropriate administrative or judicial forum; and, he cannot seek to rescind this Agreement on account of those disputes.

9. Payment of the settlement amount will be made by government wire transfer as per the following:

A. Name of Bank: (b)(6)
B. Street Address of Bank: (b)(6)
C. City, State and Zip Code of Bank: (b)(6)
D. Routing Number: (b)(6)
E. Name of Account: IOLTA Trust of the (b)(6)
F. Account Number: (b)(6)

Plaintiff's attorney agrees to distribute the settlement proceeds to the Plaintiff (b)(6) and to obtain a dismissal of the above-captioned action with prejudice, with each party bearing its own fees, costs, and expenses.

10. In exchange for the terms set forth herein, Plaintiff (b)(6) will execute a Release in favor of Defendant and the Department of Justice, and will further authorize his attorney at the time of the execution of the Settlement Agreement, to execute a dismissal of the above action, with prejudice and without costs.

11. Plaintiff (b)(6) declares that he has read and reviewed this Settlement Agreement with his attorney and that he fully understands the terms of such Settlement

Agreement. Plaintiff (b)(6) further declares that he voluntarily accepts this Agreement for the purpose of making full and final compromise of all claims, which were made, or could have been made in connection with the cause of action and underlying facts now pending in the above-styled and numbered case and any outstanding claims by Plaintiff (b)(6) including, but not limited to, attorney's fees, back pay, front pay, compensation for absences, liquidated damages, breach of contract, medical expenses, compensatory damages, or any other claim for damages and that all agreements and understandings of the Parties have been included and expressed herein.

Date: (b)(6) /15 (b)(6)

Social Security No. (b)(6)

Date: (b)(6) 2015 (b)(6)

*Attorney for Plaintiff*

AND

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| (b)(6); (b)(7)(C) | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. (b)(6); (b)(7)(C) |
| | ) | (Judge (b)(6); (b)(7)(C) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

SETTLEMENT AGREEMENT

For the purpose of disposing of the claims brought in plaintiff's Motion For Sanctions, filed on (b)(6); (b)(7)(C) 2012, without any further judicial proceedings and without there being any adjudication of any issue of law or fact, and without constituting an admission of liability on the part of either party, and for no other purpose, the parties stipulate and agree as follows:

1. In 1997, plaintiff, (b)(6); (b)(7)(C), filed this lawsuit at the United States Court of Federal Claims.

2. Since that time, the parties have engaged in discovery and the Court has conducted the trial of this case.

3. Throughout the pendency of the case, there have been a number of discovery disputes between the parties. The disputes culminated with (b)(6); (b)(7)(C) filing a Motion For Sanctions on (b)(6); (b)(7)(C) 2012. The Government responded to the Motion For Sanctions, (b)(6); (b)(7)(C) (b)(6); (b)(7)(C) filed a reply brief, and the Court heard argument upon the motion on (b)(6); (b)(7)(C) 2012.

4. The parties subsequently entered into negotiations designed to resolve amicably (b)(6); (b)(7)(C) claims with respect to the Motion For Sanctions. (b)(6); (b)(7)(C) has offered to settle the matters raised by the Motion For Sanctions in exchange for payment by the United States (through the Drug Enforcement Administration) in the amount of $20,000.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| (b)(6) et al., <br> Plaintiffs, <br> v. <br> UNITED STATES OF AMERICA, <br> Defendant. | Case No. (b)(6) <br> and consolidated cases <br> (Judge (b)(6) |

**SETTLEMENT AGREEMENT**

Solely for the purpose of settling the claims covered by this Partial Settlement Agreement ("Agreement"), and to avoid further judicial proceedings and the adjudication of certain issues of law and/or fact, and for no other purpose, the parties hereby stipulate and agree as follows:

1. For the purposes of this Agreement the term "plaintiff" or "plaintiffs" shall mean the plaintiffs identified in Exhibit A attached to and made a part of this Agreement.

2. The term "defendant" as used herein shall refer to the United States of America.

3. Plaintiffs filed these consolidated actions against defendant to assert claims, inter alia, for overtime pay, retroactive wages, liquidated damages and interest under the Fair Labor Standards Act ("FLSA") and other federal laws, that plaintiffs asserted they were entitled to receive in connection with defendant having treated them as employees exempt from the overtime provisions of FLSA, or having otherwise deprived them of compensation. The claims of some plaintiffs have been settled pursuant to partial settlement agreements previously entered into in these consolidated actions.

4. The parties herein agree to settle all of their claims that remain pending in these consolidated actions.

5. The plaintiffs have offered to settle the above-referenced claims upon the terms set forth herein, and these terms have been accepted on behalf of the Attorney General.

A. Defendant shall pay to each plaintiff back pay, liquidated damages and/or interest, in the amounts set forth for each such plaintiff in Exhibit A under the columns titled "back pay," "liquidated damages," and "interest," subject to withholding of Federal income tax, social security, and Medicare, in the amounts set forth for each plaintiff in Exhibit A under the columns referencing such withholding.

B. Plaintiffs (b)(6) [redacted] (b)(6) [redacted] (b)(6) [redacted] shall receive interest on the DCIS AUO portion of their recoveries pursuant to section 6621(a)(1) of the Internal Revenue Code of 1986, compounded daily from October 29, 1994 up to 30 days before payment of their claims to plaintiffs' counsel by the Judgment Fund. This provision does not preclude any party from claiming error in such withholding and seeking correction thereof under applicable law to the same extent and in the same manner as if the payment and withholding were not a result of this litigation and this Agreement. However, payment and withholding in accordance with this paragraph constitutes compliance with this Agreement notwithstanding any such error or correction.

C. Defendant shall pay the appropriate employer share of social security and Medicare taxes as may be due under applicable law as a result of the above-described payments.

D. The amounts to be paid to plaintiffs minus any amounts withheld for Federal income taxes, social security and Medicare, shall be paid by the defendant in lump

# EXHIBIT P

# MERIT SYSTEMS PROTECTION BOARD FORM 185-2

## Appeal of Agency Personnel Action or Decision (Non-retirement)

Complete this form and attach it to MSPB Form 185-1 if you are appealing an agency personnel action or decision (other than a decision or action affecting your retirement rights or benefits) that is appealable to the Board under a law, rule, or regulation. If the personnel See 5 CFR 1201.3(a) for a list of appealable personnel actions and action or decision is appealable to the Board, you should have received a final decision letter from the agency that informs you of your right to file an appeal with the Board.

*Please type or print legibly.* OMB No. 3124-0009

Please submit only the attachments requested in this form at this time. You will be afforded the opportunity to submit detailed evidence in support of your appeal later in the proceeding.

**Name** *(last, first, middle initial)* (b)(6)

Check the box that best describes the personnel action or decision taken by the agency you named in MSPB Form 185-1 that you are appealing. (If you are appealing more than one action or decision, check each box applies.) Attach a copy of the decision letter (if any). If an SF-50 or its equivalent was issued and is available, attach it now; however, DO NOT delay filing your appeal because you do not have an SF-50. You may submit the SF-50 when it becomes available.

**Termination of Employment** (You may select only one of the following four personnel actions.)

- ☐ Removal (Termination after probationary or initial service period)
- ☐ Involuntary Resignation
- ☐ Termination during probationary or initial service period
- ☐ Involuntary Retirement

- ☐ Reduction in grade or pay
- ☑ Suspension for more than 14 days
- ☐ Separation, demotion, or furlough for more than 30 days by reduction in force (RIF)
- ☐ Furlough of 30 days or less
- ☐ Denial of within-grade increase
- ☐ Failure to restore/reemploy/reinstate or improper restoration/reemployment/reinstatement
- ☐ Negative suitability determination
- ☐ Other action

| 2. Date you received the agency's proposal letter (if any) (month, day, year) | 3. Date you received the agency's final decision letter (if any) (month, day, year) (Attach a copy) | 4. Effective date (if any) of the agency action or decision (month, day, year) |
|---|---|---|
| (b)(6) 2009 | (b)(6) 2009 | (b)(6) 2009 |

5. Prior to filing this appeal, did you and the agency mutually agree in writing to try to resolve the matter through an alternative dispute resolution (ADR) process?

☐ Yes ☑ No

6. Explain briefly why you think the agency was wrong in taking this action or making this decision.

See Continuation Sheet for Response.

7. What action would you like the Board to take in this case (i.e., what remedy are you asking for)?

Reinstatement of appellant to full pay and duty status as a (b)(6) with the Agency, with full back pay and all entitlements, counsel fees and litigation costs and interest on all of the above.

Appeal Number: (b)(6)
Submission Date: (b)(6) 2010 (b)(6) AM
Confirmation Number: (b)(6)

MSPB Form 185-2, Page 1 (6/1/2002)
5 CFR Parts 1201, 1208, and 1209

Tab (b)(6)
Page

# MERIT SYSTEMS PROTECTION BOARD FORM 185-2

## Appeal of Agency Personnel Action or Decision (Nonretirement)

*Please type or print legibly.*

8. With respect to the agency personnel action or decision you are appealing, have you, or has anyone on your behalf, filed a grievance under a negotiated grievance procedure provided by a collective bargaining agreement?

☐ Yes ☑ No

9. If your answer to question 8 is "Yes," on what date was the grievance filed (month, day, year)?

NOT APPLICABLE

10. If your answer to question 8 was "Yes," has a decision on the grievance been issued?

NOT APPLICABLE

11. Select a' the additional claims you would like to file with this appeal.

☐ No Additional Claims

☑ File a claim for harmful procedural error

☑ File a claim for not in accordance with law

☐ File a claim of prohibited discrimination

☐ File a claim of prohibited personnel practices

☐ File a Whistleblower claim

☐ Request a whistleblower stay

☐ File a USERRA claim

☐ File a veteran's preference claim

Appeal Number (b)(6)
Submission Date (b)(6) 2010 (b)(6) AM
Confirmation Number: (b)(6)

MSPB Form 185-2, Page 2 (6/1/2002)
5 CFR Parts 1201, 1208, and 1209

Tab (b)(6)
Page

# Merit Systems Protection Board Form 185-2

## Appeal of Agency Personnel Action or Decision (Non-retirement)

### Continuation Sheet

6. Explain briefly why you think the agency was wrong in taking this action or making this decision.

The Agency has failed to move forward with the administrative action in an expeditious manner (b)(6) (b)(6) The Agency has kept appellant on indefinite suspension without pay for an unreasonable period of time (b)(6) and has failed to move forward in an expeditious manner with its administrative investigation and charges (b)(6)

Appeal Number: (b)(6)
Submission Date: (b)(6) 2010 (b)(6) AM
Confirmation Number: (b)(6)



Tab (b)(6)
Page

# MERIT SYSTEMS PROTECTION BOARD FORM 185-4A

## Claims of Mistakes in Procedures or Violations of Law

*Please type or print legibly.* OMB No. 3124-0009

**Name** *(last, first, middle initial)* (b)(6)

Harmful error is defined in the Board's regulations as: "Error by the agency in the application of its procedures that is likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error." See 5 C.F.R.

If you believe that the agency made a error(or error) in applying required procedures in connection with the action or decision you

See Continuation Sheet for Response.

2. Explain how the error you in response to question 1 above caused the agency to reach a conclusion different from the one it would have

See Continuation Sheet for Response.

An appealable action will be reversed as being "not in accordance with the law" if the agency's action is unlawful in its entirety, i.e., if there is no legal authority for action.

3. If you believe that the agency action or decision you are appealing, was "not in accordance with law," please explain.

The Agency has violated the independence of the deciding official and those Board laws requiring the Agency to proceed within a reasonable period of time to proceed administratively against appellant while he is on

4. If you believe a specific law was violated, please identify the law and describe how the law you identified was violated.

See Continuation Sheet for Response

Appeal Number: (b)(6)

Submission Date (b)(6) 2010 (b)(6) AM

Confirmation Number: (b)(6)

MSPB Form 185-4A (6/1/2002)
5 CFR Parts 1201

Tab (b)(6)
Page

# Merit Systems Protection Board Form 185-4A

## Claims of Mistakes in Procedures or Violations of Law

### Continuation Sheet

1. If you believe that the agency made a error(or error) in applying required procedures in connection with the action or decision you described in MSPB Form 185-2 or MSPB Form 185-3, identify the procedure(s) and describe the error(s).

Appellant believes that it was the deciding official's determination to place appellant back in a full duty and pay status (b)(6) (b)(6) However, others within the Agency interfered with the independence of the deciding official and overruled his determination in that regard.

Appeal Number: (b)(6)
Submission Date (b)(6) 2010 (b)(6) AM
Confirmation Number: (b)(6)



Tab (b)(6)
Page

# Merit Systems Protection Board Form 185-4A

## Claims of Mistakes in Procedures or Violations of Law

### Continuation Sheet

2. Explain how the error you in response to question 1 above caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error.

If the deciding official had not be interfered with and had been allowed to make his determination independently, then appellant would have been restored to a full duty and pay status (b)(6) Today, he remains in a non-pay status, where he has been for (b)(6)

Appeal Number: (b)(6)

Submission Date: (b)(6 2010 (b)(6) AM

Confirmation Number: (b)(6)



Tab (b)(6)
Page

# Merit Systems Protection Board Form 185-4A
## Claims of Mistakes in Procedures or Violations of Law

### Continuation Sheet

4. If you believe a specific law was violated, please identify the law and describe how the law you identified was violated.

(b)(6) the Agency can only keep appellant on indefinite suspension for a reasonable period of time pending an administrative investigation and charges. The appellant has already exceeded the bounds of reasonableness because appellant remains on indefinite suspension for (b)(6) (b)(6) The independence of the deciding official has also been compromised because he personally determined to put appellant back on the payroll (b)(6)

Appeal Number: (b)(6)
Submission Date: (b)(6) 2010 (b)(6) AM
Confirmation Number: (b)(6)



Tab (b)(6)
Page

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Office of Federal Operations**
**P.O. Box 77960**
**Washington, DC 20013**

(b)(6)
Complainant,

v.

Eric H. Holder, Jr.,
Attorney General,
Department of Justice
(Drug Enforcement Administration),
Agency.

Appeal No. (b)(6)

Hearing No. (b)(6)

Agency No. (b)(6)

## DECISION

On (b)(6) 2012, Complainant filed an appeal from the Agency's (b)(6) 2012, final order concerning her equal employment opportunity (EEO) complaint alleging employment discrimination in violation of Section 501 of the Rehabilitation Act of 1973 (Rehabilitation Act), as amended, 29 U.S.C. § 791 et seq. and Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. §2000e et seq. For the following reasons, the Commission AFFIRMS the Agency's final order.

## BACKGROUND

(b)(6)

(b)(6)

(b)(6)

## CONCLUSION

The Agency's finding that Complainant was unlawfully subjected to disability discrimination and retaliated against regarding claims (1) (failure to accommodate the marginal (b)(6) duties), (2), and (5) (within grade increase) is AFFIRMED. The Agency's finding of no discrimination with regard to claims (1) (other failure to accommodate claims), (3), (4), and (5) (promotion) is AFFIRMED. The decision on pecuniary damages is MODIFIED. The matter is REMANDED for compliance with the Order herein.

## ORDER

To the extent it has not already done so, the Agency shall take the following actions:

1. Within 60 days of the date this decision becomes final, the Agency shall pay Complainant $50,000.00 in nonpecuniary, compensatory damages. ] previously paid

2. Within 60 days of the date this decision becomes final, the Agency shall pay Complainant $1,944.48 for past pecuniary, compensatory damages.

3. Within 180 days of the date this decision becomes final, the Agency shall provide training to all its managers and supervisors and human resource or personnel liaison staff in its (b)(6) Division regarding the Agency's obligations to maintain confidentiality of medical information in accordance with the Rehabilitation Act.

4. Within 180 days of the date this decision becomes final, the Agency shall provide training on its compliance obligations with the reasonable accommodation requirements and prohibitions against reprisal of the Rehabilitation Act and regulations of the Commission to all of its managers and supervisors and human resource or personnel liaison staff in its (b)(6) Division and human resource or personnel liaison staff who provide advice and guidance to its (b)(6) Division management but are located in headquarters or another Agency office.

5. Within 60 days of the date this decision becomes final, the Agency shall calculate whether the initial denial of the within-grade increase and for which Complainant later received a collection letter ever resulted in the Agency's collection of sums attributable to the initial within-grade increase denial and reimburse Complainant for any such collected sums.

COMPLAINT OF POSSIBLE PROHIBITED PERSONNEL PRACTICES OR OTHER PROHIBITED ACTIVITY

DOJ Employee

While serving as an Accounting Technician, GS-7, at the New Orleans Field Division Office I, (b)(6) have been the subject of ongoing harassment; disparate treatment; denied benefits, accommodations, promotion, training and performance evaluations; a hostile work environment; unequal terms and conditions of employment, monitoring, and assignment of duties; and privacy violations with regard to disclosure of my medical condition. In addition, I believe that many actions taken were possibly prohibited.

(b)(6)

I was hired 3/14/10 hired as Accounting Technician GS-7, Administrative Support Unit/Fiscal Operations (b)(6) Effective date 3/14/10

(b)(6)

[redacted]

Name : (b)(6)

Agency Name : Drug Enforcement Administration – New Orleans Field Division Office

Agency Address: 3838 North Causeway Blvd., Suite 1800, Metairie, LA 70002

Home or mailing address: (b)(6)

Contact Info: Cell (b)(6) or email (b)(6)

Last four digits of SSN: (b)(6) Year of Birth: (b)(6)



(b)(6)

**COMPLAINT OF POSSIBLE PROHIBITED PERSONNEL PRACTICES OR OTHER PROHIBITED ACTIVITY**

**DOJ Employee**

While serving as an Accounting Technician, GS-7, at the New Orleans Field Division Office I, (b)(6) have been the subject of ongoing harassment; disparate treatment; denied benefits, accommodations, promotion, training and performance evaluations; a hostile work environment; unequal terms and conditions of employment, monitoring, and assignment of duties; and privacy violations with regard to disclosure of my medical condition. In addition, I believe that many actions taken were possibly prohibited.

(b)(6)

I was hired 3/14/10 hired as Accounting Technician GS-7, Administrative Support Unit/Fiscal Operations. (b)(6) Effective date 3/14/10)

(b)(6)

[redacted]

**Name :** (b)(6)

**Agency Name :** Drug Enforcement Administration – New Orleans Field Division Office

**Agency Address:** 3838 North Causeway Blvd., Suite 1800, Metairie, LA 70002

**Home or mailing address:** (b)(6)

**Contact Info: Cell** (b)(6) **or email** (b)(6)

**Last four digits of SSN** (b)(6) **Year of Birth:** (b)(6)



(b)(6)

**Names and Information about the People I am complaining about:**

1. (b)(6)
2.
3.
4.
5.
6.

All are employees located at the DEA- New Orleans Field Division Office, 3838 North Causeway Blvd., Suite 1800, Metairie LA 70002. Phone: 504-840-xxxx

**Description:** I have attached the notes *(with a few additions)* from my EEO Complaint that describes the facts and circumstances. If needed, I can also provide an extensive list of potential witness to what I have described here.

[redacted]

(b)(6)

[redacted]

(b)(6)

CORRECTIVE ACTION SOUGHT

I will be seeking all available remedies, procedures, and rights set forth in title VII of the Civil Rights Act of 1964, amended by Civil Rights Act of 1991; the Americans with Disabilities Act (ADA) of 1990; section 501 of the Rehabilitation Act of 1973; the Equal Pay Act (EPA;, and the Family and Medical Leave Act (FMLA) to include equitable relief, actual compensatory damages, non-pecuniary compensatory damages.



(b)(6)

**Additional Dates & Incidents Relating to Discriminatory Conduct**

(b)(6)



(b)(6)

(b)(6)

Page 4 of 4

(b)(6)

(b)(6)



(b)(6)

(b)(6)



(b)(6)

(b)(6)



(b)(6)

(b)(6)

**Certification:**

I, (b)(6) certify that the information contained herein is true and correct to the best of my knowledge.

(b)(6) *Employee, DEA NOFD*



(b)(6)

UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD
(b)(6) OFFICE

| | | |
|---|---|---|
| (b)(6) Appellant, v. DEPARTMENT OF JUSTICE, Agency. | : | DOCKET NO. (b)(6) (AJ (b)(6)) |

**APPELLANT'S MEMORANDUM OF LAW IN SUPPORT**
**OF HIS PETITION FOR COUNSEL FEES AND EXPENSES**

**Preliminary Statement**

Appellant (b)(6) respectfully submits this Memorandum of Law in support of his application for attorney fees and costs, pursuant to 5 U.S.C. §§7701(g), 5596(b) and 5 C.F.R. §1201.37 (1989), and for such further relief that the Board deems just and proper. In support of this application, appellant relies upon the factual statements set forth in the accompanying Declaration of (b)(6) Esq., his counsel and personal representative, the exhibits appended thereto, the Initial and Final Decisions of the Board and the full and complete factual and legal record in this matter.

**Statement of Relevant Facts**

The relevant facts and circumstances surrounding appellant's removal are set forth in the Board's Initial and Final Decisions and will only be briefly summarized here.

(b)(6)

(b)(6)

On or about (b)(6) 2010, appellant was served with a letter from (b)(6) Chairman of DEA's Board of Professional Conduct, proposing his removal based upon allegations of Conduct Unbecoming a DEA (b)(6) (Charge 1, 2 specifications), False Statements

(Charge 2) and Failure to Follow Written Instructions (Charge 3), all arising out of the events of (b)(6) 2008 and its aftermath. After appellant submitted a written response and appeared before the deciding official to respond orally to the charges, in a letter dated (b)(6) 2010, the deciding official sustained all charges and specifications, as well as the penalty of removal.

Because appellant never really contested the majority of the facts underlying these charges, or even that he committed the proposed charges, the sole issue on this appeal has been the appropriate penalty to be imposed. Within days of the event, appellant candidly admitted his (b)(6)

(b)(6)

Appellant's position for the outset has been that a fair assessment of the <u>Douglas</u> factors, particularly those relating to his contrition, outstanding work performance both before and after these events, his potential for rehabilitation, his demonstrated ability to continue to perform his duties as a (b)(6) and the fact that his supervisors within DEA and the (b)(6) (b)(6) with whom he has worked still have full faith and trust in him, taken together, compels a penalty of less than removal. After evaluating two days of evidence adduced at the Board hearing, as well as the entire record, the AJ agreed with appellant's

position, mitigating the removal penalty to a [redacted] suspension. The full Board affirmed both the AJ's determination and reasoning in a Final Decision.

**The Initial and Final Decisions**

In her Initial Decision, the AJ properly found that the deciding official did not effectively consider the Douglas factors in his removal decision. In particular, the AJ found that

> the deciding official, who did not testify on direct examination regarding rehabilitation, disregarded that alternative sanctions were available based upon appellant's work with [redacted] and disregarded the compelling evidence … submitted by the appellant's manager, his front line supervisor, and the [redacted] that the penalty of removal under these circumstances was excessive. (ID, at pp. 8-9).

The AJ further identified and analyzed, in substantial detail, the "compelling evidence" adduced by appellant at the hearing clearly demonstrating that the penalty of removal was excessive under the circumstances of this case. This evidence included the testimony of [redacted]

In her Initial Decision, the AJ not only identified the serious flaws in the removal decision of the deciding official, she

also properly and adequately supported her decision to mitigate the penalty to a [redacted] suspension, which included an assessment of all of the relevant Douglas factors:

> In determining the maximum reasonable penalty, I am cognizant that a DEA [redacted] is held to a higher standard of honesty and integrity and that the charges against the appellant are very serious. However, in viewing the totality of the circumstances based on: the appellant's [redacted] years of service, the absence of any previous disciplinary record; his [redacted] performance ratings and awards, his subsequent voluntary admission of dishonesty in connection with a [redacted] the agency's permitting him to continue in his position after he admitted the dishonesty to [redacted] where he [redacted] and his enhanced potential for rehabilitation made clear by the testimony of his [redacted] I conclude and therefore find the maximum penalty within the tolerable bounds of reasonableness under these circumstances is a [redacted] suspension. (ID, at pp. [redacted] (citations omitted).

In its Final decision, a majority of the Board affirmed the AJ's mitigation of penalty, agreeing that a [redacted] suspension is the maximum reasonable penalty permissible under the circumstances. In so holding, the Board concurred with the AJ's penalty analysis, which "credited the testimony of several of the appellant's former supervisors and considered the appellant's admitted misconduct in the context of his otherwise exemplary career." (FD, at p. [redacted].

$

Thus, appellant's total fees and expenses, which are factually supported by the attached (b)(6) Declaration, are:

| | |
|---|---|
| **FEES** | **$90,270.00** |
| **COSTS** | **2,186.44** |
| **TOTAL** | **$92,456.44** |

**Conclusion**

For the reasons state herein, appellant (b)(6) application for counsel fees and costs, as well as any further relief as this Court may deem just and proper, should be granted in all respects.

Dated: (b)(6)
(b)(6) 2012

Respectfully submitted,

(b)(6)
Attorney and Personal Representative
for Appellant (b)(6)
(b)(6)

By: (b)(6)

**U.S. Department of Justice**

# Complaint of Discrimination

*(See instructions on reverse)* (b)(6)

PRIVACY ACT STATEMENT: 1. AUTHORITY- The authority to collect this information is derived from 42 U.S.C. Section 2000e-16; 29 CFR Sections 1614.106 and 1614.108. 2. PURPOSE AND USE-This information will be used to document the issues and allegations of a complaint of discrimination based on race, color, sex (including sexual harassment), religion, national origin, age, disability (physical or mental), sexual orientation or reprisal. The signed statement will serve as the record necessary to initiate an investigation and will become part of the complaint file during the investigation; hearing, if any; adjudication; and appeal, if one, to the Equal Employment Opportunity Commission. 3. EFFECTS OF NON-DISCLOSURE-Submission of this information is MANDATORY. Failure to furnish this information will result in the complaint being returned without action.

1. Complainant's Full Name
(b)(6)

Street Address, RD Number, or Post Office Box Number
(b)(6)

City, State and Zip Code
(b)(6)

2. Your Telephone Number *(including area code)*
Home (b)(6)
Work

3. Which Department of Justice Office Do You Believe Discriminated Against You?
Drug Enforcement Administration/(b)(6)

B. Street Address of Office
(b)(6)

C. City, State and Zip Code
(b)(6)

4. Current Work Address
(b)(6)

A. Name of Agency Where You Work
DEA (b)(6)

B. Street Address of Your Agency
(b)(6)

C. City, State and Zip Code
(b)(6)

D. Title and Grade of Your Job
(b)(6)

5. Date on Which Most Recent Alleged Discrimination Took Place

| Month | Day | Year |
|---|---|---|
| (b)(6) | | 2013 |

6. Check Below Why You Believe You Were Discriminated Against?

- ☒ Race or Color *(Give Race or Color)* Black
- ☐ Religion *(Give Religion)*
- ☐ Sex *(Give Sex)* ☐ Male ☐ Female
  - ☐ Sexual Harassment
- ☐ Age *(Give age)*
- ☐ National Origin *(Give National Origin)*
- ☐ Disability ☐ Physical ☐ Mental
- ☐ Genetic Information
- ☐ Sexual Orientation
- ☐ Gender Identity
- ☒ Reprisal
- ☐ Parental Status
- ☐ Class Complaint

7. Explain How You Believe You Were Discriminated Against *(treated differently from other employees or applicants)* Because of Your Race, Color, Sex (including sexual harassment), Religion, National Origin, Age, Disability (physical or mental), Genetic Information, Sexual Orientation, Gender Identity, Parental Status, or Reprisal. Do not include specific issues or incidents that you have not discussed with your EEO Counselor. *(You may continue your answer on another sheet of paper if you need more space.)*

See attachment. (5 pages)
In this matter, my representatives will be:
(b)(6)

8. What Corrective Action Do You Want Taken on Your Complaint?

Harassment to cease and decease.
Quality Step Increase
Diversity Training at (b)(6) from outside source
$300,000.00 with agency paying taxes

9. A) I have discussed my complaint with an Equal Employment Opportunity Counselor and/or other EEO Official.

DATE OF FIRST CONTACT WITH EEO OFFICE:
(b)(6) 2013

DATE OF RECEIPT OF NOTICE OF FINAL INTERVIEW WITH EEO COUNSELOR:
(b)(6)

B) Name of Counselor
(b)(6)

☐ I Have Not Contacted an EEO Counselor

10. Date of This Complaint:

| Month | Day | Year |
|---|---|---|
| (b)(6) | | 2013 |

FORM DOJ-201A
APR. 2011

**Formal Complaint**

(b)(6) I have been working for the Department of Justice, Drug Enforcement Agency since (b)(6) (b)(6) and my Immediate Supervisor is Ms. (b)(6) ASAC is (b)(6) and the SAC is (b)(6)

(b)(6) I believe (b)(6) has treated Blacks (specifically me) less favorably than other White supervisor employees when handling office complaints, disputes, concerns or issues. Also, they have subjected me to a hostile working environment in Retaliation for my previous filings. (b)(6)

(b)(6)

(b)(6)

(b)(6)

(b)(6)

(b)(6)

(b)(6) I believe they discriminated against me because I am black, when SAC, ASAC and my immediate supervisor failed to (b)(6)
(b)(6)

No Further Entry this Page

(b)(6)

## ATTACHMENT A - FORMAL EEO ALLEGATIONS:

## RACIAL DISCRIMINATION and REPRISAL/RETALIATION

(b)(6)

## CLAIM(S) OF DISCRIMINATION – FACTUAL BASIS

(b)(6)

(b)(6)

(b)(6)

(b)(6)

(b)(6)

(b)(6) [redacted]

(b)(6)

(b)(6)

(b)(6)

(b)(6)

(b)(6)

(b)(6)

(b)(6)

(b)(6) [redacted]

(b)(6)

(b)(6)

**SUMMARY**

(b)(6)

(b)(6)

(b)(6)

**BASIS OF DISCRIMINATION**

(b)(6) has been discriminated against by the DEA (b)(6) Management personnel because of his race (Title VII of the Civil Rights Act of 1964 – Title 42, USC 2000e-2 (a)), and retaliation for exercising his protected, statutory rights.

**REMEDY(IES) SOUGHT**

(b)(6) would like to be transferred at DEA expense, to his chosen Office of Preference. He also wants disciplinary action to be imposed against (b)(6) (b)(6) He is also seeking and requesting compensatory damages of $200,000 for the pain and suffering that he has personally suffered as a result of this discrimination, disparate treatment, and retaliation, as well as reasonable attorney fees.

(b)(6) would like to point out in an effort to this put behind him, he is open to an informal resolution to settle this matter as quickly as an informally as possible.

/s/ (b)(6)
(b)(6)

(b)(6) 2014
Date

ORIGINAL

(b)(6)
Formal EEO Complaint
(b)(6) 2014
Page 1 of 15

**FORMAL EEO COMPLAINT**

I. **Introduction**

I, (b)(6) have been subjected to retaliation based on my protected activity (b)(6)

Since (b)(6) I have worked as a (b)(6) for the United States Drug Enforcement Agency ("DEA") at the (b)(6) Country Office located in the American Embassy in (b)(6)

(b)(6)

I was also concerned that (b)(6) was treating me differently because of my sex (female). I noticed that (b)(6) interacts with women differently than (b)(6) does with men and that (b)(6) criticizes women in ways that (b)(6) does not criticize men. (b)(6)

(b)(6)

After I engaged in the protected conduct of initiating an EEO complaint, the DEA retaliated against me by curtailing my tour.

As such, the DEA violated Title VII of the Civil Rights Act of 1964. As a result of the DEA's unlawful actions under Title VII, I have suffered economic and mental anguish damages.

II. **Statement of the Issues**

1. Whether the Agency discriminated against me on the basis of my sex (female) and retaliated against me for initiating EEO contact when it curtailed my detail on (b)(6) 2014.

ORIGINAL



III. <u>Declaration of (b)(6)</u>

My name is (b)(6) I am over eighteen (18) years of age, am competent to testify, and the following paragraphs summarize, to the best of my knowledge, the facts underlying my complaint. I make this complaint of discrimination and retaliation under Title VII of the Civil Rights Act of 1964.

(b)(6)

ORIGINAL

(b)(6)
Formal EEO Complaint
(b)(6) 2014
Page 3 of 15

(b)(6)

ORIGINAL

(b)(6)
Formal EEO Complaint
(b)(6) 2014
Page 4 of 15

(b)(6)

ORIGINAL

(b)(6)
Formal EEO Complaint
(b)(6) 2014
Page 5 of 15

(b)(6)

ORIGINAL

(b)(6)
Formal EEO Complaint
(b)(6) 2014
Page 6 of 15

(b)(6)

**ORIGINAL**

(b)(6) [redacted]
Formal EEO Complaint
(b)(6) [redacted] 2014
Page 7 of 15

(b)(6) [redacted]

**ORIGINAL**

(b)(6)
Formal EEO Complaint
(b)(6) 2014
Page 8 of 15

(b)(6)

**ORIGINAL**

(b)(6)
Formal EEO Complaint
(b)(6) 2014
Page 9 of 15

(b)(6)

**ORIGINAL**

(b)(6)
Formal EEO Complaint
(b)(6) 2014
Page 10 of 15

(b)(6)

**ORIGINAL**

(b)(6)
Formal EEO Complaint
(b)(6) 2014
Page 11 of 15

(b)(6)

ORIGINAL

(b)(6)
Formal ITO Complaint
(b)(6) 2014
Page 12 of 15

(b)(6)

**ORIGINAL**

(b)(6)
Formal EEO Complaint
(b)(6) 2014
Page 13 of 15

(b)(6)

I solemnly declare and affirm, under penalty of perjury under the laws of the United States, that the contents of the foregoing paper are true and correct to the best of my knowledge, information, and belief.

(b)(6) 2014
Date

(b)(6)

ORIGINAL



## IV. Witnesses

(b)(6)

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**(b)(6) Office**

(b)(6)
Appellant,

vs.

U.S. DEPARTMENT OF JUSTICE,
DRUG ENFORCEMENT ADMINISTRATION,
Agency.

Date: (b)(6) 2014

## INDIVIDUAL RIGHT OF ACTION APPEAL

Appellant, (b)(6), brings this complaint of whistleblower reprisal before the U.S. Merit Systems Protection Board ("MSPB"), against the U.S. Department of Justice, U.S. Drug Enforcement Administration ("the agency" or "DEA"), alleging as follows:

## JURISDICTION AND EXHAUSTION

1. Appellant brings this action under the Whistleblower Protection Act of 1989, as amended. 5 U.S.C. §§ 1221(a), 2302(b)(8) and (9).

2. Appellant first sought corrective action from the Office of Special Counsel pursuant to 5 U.S.C. § 1214(a)(3). OSC Complaint, attached as Exhibit 1. Later, Appellant raised an additional claim of retaliation to the OSC. OSC Amendment, Exhibit 2.

3. On (b)(6) 2014, the OSC issued Appellant a closeout letter. Exhibit 3 This appeal is filed within 65 days of Appellant's receipt of the closeout letter.

4. Accordingly, the MSPB has jurisdiction over (b)(6) complaint. 5 U.S.C. § 1214(a)(3) (A).

## PARTIES

5. (b)(6) is a citizen of the United States domiciled in the state of (b)(6) At times relevant to this complaint, (b)(6) was the agency's employee, as defined by the WPA.

6. The DEA is a component of the U.S. Department of Justice, a federal agency. Accordingly, the DEA is subject to the WPA. The DEA has its headquarters in Washington, DC. The agency has operations and offices throughout the nation.

## FACTUAL BACKGROUND

(b)(6) **Employment Background**

7. (b)(6) has worked for the agency since (b)(6) has been a (b)(6) (b)(6) general schedule series (b)(6) for the duration of his employment with the agency.

(b)(6)

(b)(6)

(b)(6) **Discloses Violations of Laws, Rules, and Regulations**

(b)(6)

(b)(6)

(b)(6)

(b)(6)

(b)(6)

(b)(6)

(b)(6)

(b)(6)

(b)(6)

(b)(6)

(b)(6)

(b)(6)

(b)(6)

<u>**STATEMENT OF THE CHARGES**</u>

67. The agency violated the Whistleblower Protection Act of 1989, as amended, when: 1) on (b)(6) 2014, the agency reassigned (b)(6) to the (b)(6) group; 2) on (b)(6) 2014, the agency reassigned (b)(6) to a non-supervisory position; 3) on (b)(6) 2014, the agency demoted (b)(6) and 4) the agency subjected (b)(6) to a hostile work environment.

68. (b)(6) is an employee of the agency.

69. The DEA is an agency of the federal government subject to the WPA.

70. (b)(6) made disclosures protected by the WPA in or about (b)(6) disclosed to the agency OIG what he reasonably believed was a violation of law, rule, or regulation and/or abuse of authority. The OIG investigated and took remedial actions based on (b)(6) complaint.

71. (b)(6) engaged in protected activity by exercising his rights under the WPA by filing a complaint with the OSC.

72. Relevant management officials were aware of (b)(6) protected disclosures and activity.

73. The WPA enumerates reassignments and demotions as cognizable personnel practices. The WPA will remedy a threat, as well as an actual employment action.

74. (b)(6) protected disclosures and activity were a contributing factor in the agency's decision to reassign and demote (b)(6) and subject him to a hostile work environment. The agency subjected (b)(6) to disparate treatment and heightened scrutiny. The agency expressed retaliatory animus toward (b)(6) The agency's stated reasons for reassigning and demoting (b)(6) are pretextual. The agency took the most serious actions soon after (b)(6) engaged in protected activity.

75. If (b)(6) had not engaged in protected activity, the agency would not have reassigned or demoted (b)(6)

## PRAYER FOR RELIEF

WHEREFORE, Appellant prays for corrective action as follows:

76. Reinstatement;

77. Compensatory damages to make Appellant whole in an amount to be determined at hearing;

78. Costs, including reasonable attorney's fees;

79. Injunctive relief to prevent future unlawful acts; and

80. Such other relief the this Board finds to be just and proper.

Dated: (b)(6) 2014

Respectfully submitted,

/s/ (b)(6)

(b)(6)

Attorney for Appellant

**UNITED STATES OF AMERICA**
**OFFICE OF SPECIAL COUNSEL**

| | |
|---|---|
| (b)(6)<br>Appellant,<br><br>vs.<br><br>U.S. DEPARTMENT OF JUSTICE,<br>DRUG ENFORCEMENT ADMINISTRATION,<br>Agency. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Date: (b)(6), 2014 |

## COMPLAINT

Appellant, (b)(6), brings this complaint of whistleblower reprisal before the U.S. Office of Special Counsel (OSC), against the U.S. Department of Justice, U.S. Drug Enforcement Administration ("the Agency" or "DEA"), alleging as follows:

## NATURE OF THE CASE

(b)(6)

(b)(6)

(b)(6)

[redacted]

**JURISDICTION**

13. Plaintiff brings this action under the Whistleblower Protection Act of 1989, as amended, 5 U.S.C. §§ 1221(a), 2302(b)(8).

14. This Office of Special Counsel has jurisdiction over this complaint because employees must first seek correction action from the OSC. 5 U.S.C. § 1214(a)(3).

**PARTIES**

15. Mr. (b)(6) is a citizen of the United States domiciled in the state of (b)(6) At times relevant to this complaint, Mr. (b)(6) was the Agency's employee, as defined by the WPA.

16. The DEA is a component of the U.S. Department of Justice, a federal agency. Accordingly, the DEA is subject to the WPA. The DEA has its headquarters in Washington, DC. The Agency has operations and offices throughout the nation.

**FACTUAL ALLEGATIONS RELATED TO ALL CLAIMS**

**Mr. (b)(6) Employment Background**

17. Mr. (b)(6) has worked for the Agency since (b)(6) Mr. (b)(6) has been a (b)(6) (b)(6) general schedule series (b)(6) for the duration of his employment with the Agency.

(b)(6)

(b)(6)

**Mr.** (b)(6) **Discloses Violations of Laws, Rules, and Regulations**

(b)(6)

(b)(6)

(b)(6)

(b)(6)

(b)(6)

(b)(6)

(b)(6)

(b)(6)

(b)(6)

(b)(6)

(b)(6)

(b)(6)

(b)(6)

(b)(6)

(b)(6)

(b)(6)

**COUNT I – WHISTLEBLOWER REPRISAL**
**THREATENED DEMOTION PURSUANT TO 5 U.S.C. § 2302(b)(8)**

92. (b)(6) incorporates the foregoing factual allegations by reference, as if fully alleged herein.

93. The Agency violated the Whistleblower Protection Act of 1989, as amended, when it

threatened to demote (b)(6) in (b)(6) 2013.

94. (b)(6) is an employee of the Agency.

95. The DEA is an agency of the federal government subject to the WPA.

96. (b)(6) made disclosures protected by the WPA in or about (b)(6) disclosed to the Agency OIG what he reasonably believed was a violation of law, rule, or regulation and/or abuse of authority. The OIG investigated and took remedial actions based on (b)(6) complaint.

97. Relevant management officials were aware of (b)(6) protected disclosures.

98. (b)(6) suffered personnel actions cognizable under the WPA. The WPA specifies that a demotion is a cognizable personnel practice. Threatening a demotion is also cognizable under the WPA. On (b)(6) 2013, the Agency threatened to demote (b)(6) from his (b)(6) (b)(6) position. The Agency has taken steps toward executing this threat as documented by the (b)(6) 2014, performance counseling memorandum.

99. (b)(6) protected disclosures were a contributing factor in the Agency's decision to threaten to demote (b)(6) The Agency subjected (b)(6) to disparate treatment and heightened scrutiny. The Agency expressed retaliatory animus toward (b)(6) The Agency's stated reasons for threatening to demote (b)(6) are pretext.

100. If (b)(6) had not engaged in protected activity, the Agency would not have threatened to demote (b)(6)

**COUNT II – WHISTLEBLOWER REPRISAL**
**<u>REASSIGNMENT PURSUANT TO 5 U.S.C. § 2302(b)(8)</u>**

101. (b)(6) incorporates the foregoing factual allegations by reference, as if fully alleged herein.

102. The Agency violated the Whistleblower Protection Act of 1989, as amended, when it

reassigned Mr. (b)(6) to the (b)(6) group on or about (b)(6) 2014.

103. Mr. (b)(6) is an employee of the Agency.

104. The DEA is an agency of the federal government subject to the WPA.

105. Mr. (b)(6) made disclosures protected by the WPA in or about (b)(6) disclosed to the Agency OIG what he reasonably believed was a violation of law, rule, or regulation and/or abuse of authority. The OIG investigated and took remedial actions based on Mr. (b)(6) complaint.

106. Relevant management officials were aware of Mr. (b)(6) protected disclosures.

107. Mr. (b)(6) suffered personnel actions cognizable under the WPA. The WPA specifies that a reassignment is a cognizable personnel practice. On (b)(6) 2014, the Agency reassigned Mr. (b)(6) to the (b)(6) group.

108. Mr (b)(6) protected disclosures were a contributing factor in the Agency's decision to reassign Mr (b)(6) The Agency subjected Mr (b)(6) to disparate treatment and heightened scrutiny. The Agency expressed retaliatory animus toward Mr. (b)(6) The Agency's stated reasons for reassigning Mr. (b)(6) are pretext.

109. If Mr. (b)(6) had not engaged in protected activity, the Agency would not have demoted or threatened to demote Mr. (b)(6)

**PRAYER FOR RELIEF**

WHEREFORE, Appellant prays for corrective action as follows:

110. Reinstatement;

111. Compensatory damages to make Appellant whole in an amount to be determined at trial;

112. Costs, including reasonable attorney's fees;

113. Injunctive relief to prevent future unlawful acts; and

114. Such other relief the OSC finds to be just and proper.

Dated: (b)(6) , 2014

Respectfully submitted,

(b)(6)

Counsel for Complainant

UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD
(b)(6) Office

| | | |
|---|---|---|
| (b)(6) | ) | DOCKET NUMBER |
| Appellant, | ) | (b)(6) |
| | ) | |
| UNITED STATES DEPARTMENT OF JUSTICE (Drug Enforcement Administration), | ) | ADMINISTRATIVE JUDGE |
| | ) | (b)(6) |
| Agency. | ) | |
| | ) | |

SETTLEMENT AGREEMENT

WHEREAS (b)(6) ("Appellant") and his employer, the United States Department of Justice, Drug Enforcement Administration ("DEA" or "the Agency"), are engaged in an appeal to the Board arising under the Whistleblower Protection Enhancement Act of 2012 (WPEA), P.L. 112-199, and wish to amicably resolve this matter without further litigation;

NOW, THEREFORE, in consideration of the promises set forth herein, the parties hereby agree to settle and compromise the above-captioned appeal on the terms and conditions specified below.

1. The Agency, in return for the promises of the Appellant set forth below, hereby agrees:

a. DEA will rescind and expunge from its personnel files, including but not limited to the Official Personnel Folder (OPF) maintained by the DEA Human Resources Division and from the personnel records of the DEA (b)(6) Field Division concerning Appellant, the following:

i. Standards Form 50 and 52 memorializing Appellant's demotion for unsatisfactory performance from (b)(6) effective (b)(6) 2014, during the (b)(6) period. (DEA will substitute SFs-

50 and -52 memorializing a voluntary downgrade from (b)(6), effective (b)(6) 2014).

ii. (b)(6)

iii.

iv. Performance Counseling Memo (b)(6) 14

v. (b)(6)

vi.

vii.

viii.

ix.

x.

xi.

xii.

xiii.

xiv.

(b)(6)

b. DEA will restore 120 hours of sick leave to Appellant.

c. DEA will restore 120 hours of annual leave to Appellant. Of this amount, 40 hours will be restored effective with the first pay period of (b)(6)

d. Within 45 days of (b)(6) signature on this agreement, DEA will pay Appellant the sum of $107,500.00 in full and final settlement of all claims for monetary damages.

e. DEA will pay to Appellant and the law firm of (b)(6) P.C. (the "law firm"), the sum of $87,500.00. No taxes or other withholdings shall be deducted from this amount. The Appellant and the law firm will be solely responsible for any tax implications regarding this payment, and Appellant is advised to seek appropriate counsel or advice from appropriate professionals. This payment will be made by direct deposit (electronic funds transfer) to an account identified by the law firm within forty-five (45) calendar days of the effective date of this Agreement.

f. The Agency agrees and represents that it it has no claims against Appellant, and it waives and releases any known claims it might have against Appellant. The Agency will not initiate any disciplinary or other adverse actions (as defined by 5 USC 2302(a)(2)(A)) against Appellant for any conduct presently known by the Agency.

g. The Agency agrees that it shall not involuntarily transfer or reassign Appellant or otherwise require him to move his work location, for a period of (b)(6) years after this agreement..

2. Appellant (b)(6) in exchange for the promises of the Agency set forth herein, hereby agrees:

a. Appellant hereby withdraws the above captioned appeal and any other claim, cause of action, appeal, grievance, and/or complaint now pending against the Agency in the Merit Systems Protection Board (MSPB), Office of Special Counsel (OSC), and in any other forum, and seeks their dismissal with prejudice.

b. Appellant will not institute in the MSPB, OSC, or any other forum any claim, cause of action, appeal, grievance or complaint arising out of his employment through the date of this Agreement.

c. Appellant shall and hereby does release the United States, the U.S. Department of Justice, DEA, and their employees, in both their official and individual capacities, from any and all liability, claims, causes of action, grievances, and complaints now pending in any forum or which could have been brought in any forum arising out of Appellant's DEA employment through the date of this Agreement. This waiver does not affect Appellant's rights to his wages, benefits and expense reimbursements, even if they are pending at the time of the settlement.

d. Except to the extent DEA has agreed in paragraph 1.f. above to reimburse Appellant for attorney fees and costs, Appellant shall remain solely responsible for his own attorney fees and costs.

3. The parties mutually agree to the following:

a. By entering into this Agreement, the Agency does not admit liability and the Appellant does not concede that this appeal lacked merit.

b. The parties agree to cooperate and act in good faith in carrying out the terms and provisions of this Agreement;

c. This Agreement will be filed with the MSPB, which shall retain jurisdiction of this appeal only for the purpose of enforcing this Settlement.

d. This Agreement represents the full and complete understanding and agreement between Appellant and the Agency. No other promises or agreements or revisions or amendments to this Agreement will be binding unless reduced to writing and signed by both parties.

4. This Agreement will be deemed fully executed on the date that the last of the parties and/or parties' representatives affixes his or her signature to this Agreement.

---

(b)(6)

Appellant

Date: (b)(6) 2016

(b)(6)

Appellant's Representative

(b)(6)

Date: 2016 (b)(6)

*Karen Richardson*

KAREN K. RICHARDSON, ESQ.
Assistant Deputy Chief Counsel
Office of Chief Counsel
Drug Enforcement Administration

Date: (b)(6) 2016

**Approval of Payment**

"This is to verify that all of the **administrative determinations have been made, that the payment is legal, proper and correct for payment.**"

| | |
|---|---|
| Amount | $107,500.00 |
| **Obligation Doc No** | (b)(6) |
| **Signature** | *[signature]* |
| **Print Name** | Bettie E. Gold[illegible] |
| **Title** | Deputy Chief Counsel |
| **Date Approved** | (b)(6) 16 |

Office of Chief Counsel
REC'D (b)(6) REC'D
CD (b)(6) 2016

EEOC Case No. (b)(6)

**The following is a detailed account of amended points D and E:**

**D. Discrimination against** (b)(6) **when, on** (b)(6) **2012,** (b)(6) (b)(6) **was terminated from the positon of** (b)(6) **at the** (b)(6)

(b)(6)

EEOC Case No. (b)(6)

(b)(6)

**E. Retaliation as a result from contacting an EEO counselor while at the (b)(6) and filing an EEOC case**

Below are events of retaliation done by DEA as a result of contacting an EEO counselor and filing an EEOC case:

(b)(6)

EEOC Case No. (b)(6)

(b)(6)

EEOC Case No. (b)(6)

(b)(6)

EEOC Case No. (b)(6)

(b)(6)

U.S. Department of Justice

Complaint Adjudication Office

Agency Complaint No. DEA-(b)(6)
EEOC Number (b)(6)

*601 D Street, NW*
*Patrick Henry Building, Room A4810*
*Washington, DC 20530*

(b)(6) 2012

DEPARTMENT OF JUSTICE FINAL DECISION

Relief in the matter of

(b)(6) v. Drug Enforcement Administration

On (b)(6) 2008, an Equal Employment Opportunity Commission Administrative Judge issued a decision finding that the Drug Enforcement Administration did not discriminate against complainant (b)(6) then a (b)(6) with the DEA, based on his (b)(6) when it did not select complainant for promotion in (b)(6) to either of two (b)(6) (b)(6) positions. On (b)(6) 2008, the Department of Justice Complaint Adjudication Office (CAO) issued a final order accepting the EEOC Administrative Judge's decision. However, the CAO noted in the memorandum explaining the final order that while the DEA had proffered legitimate, nondiscriminatory reasons for the selection decisions at issue, the DEA had not offered specific reasons why it had not selected complainant. The CAO wrote in the Department of Justice Memorandum Explaining the Final Order that if complainant appealed the DOJ's Final Order to the EEOC's Office of Federal Operations, it would "be appropriate [for the OFO] to remand the case back to the Administrative Judge for fuller development of the record" (Memorandum Explaining the Final Order). Complainant retired from the DEA effective (b)(6)

Complainant appealed the Final Order to the EEOC's Office of Federal Operations. On (b)(6) 2010, the OFO issued a decision finding that the record failed to support the Administrative Judge's decision because the DEA did not provide information indicating how complainant's qualifications compared to those of the selectees. The OFO determined further that the DEA's failure to do so effectively prevented complainant from demonstrating that the DEA's proffered reasons for its selection decisions were pretext for illegal discrimination. The OFO concluded that the DEA had not articulated legitimate, nondiscriminatory reasons for the selection decisions, and

therefore had not rebutted complainant's prima facie claim. The OFO deemed complainant the prevailing party and ordered the DEA to take remedial action.

The DEA subsequently requested that the OFO reconsider its decision, asking specifically that the OFO vacate its decision and remand the case to the Administrative Judge for a hearing. On (b)(6) 2011, the OFO denied the DEA's request and ordered the DEA to provide the relief specified in its earlier decision.

Since that time, the DEA and complainant have agreed on all aspects of the ordered relief with the exception of compensatory damages. On (b)(6) 2011, the DEA submitted a letter to the Complaint Adjudication Office detailing its position on complainant's compensatory damages claim. On (b)(6) 2011, complainant's counsel submitted to the CAO complainant's Petition to Adjudicate Compensatory Damages. This decision addresses complainant's claim for compensatory damages.

1. <u>Complainant's claim for compensatory damages</u>

Complainant requested the maximum amount of compensatory damages allowed under Title VII, which is $300,000. <u>See</u> 42 U.S.C. § 1981a(b)(3). Complainant claimed that the DEA's "failure to promote him in (b)(6) was emblematic of how he had been treated [by the DEA] since (b)(6) when he initially attempted to obtain promotional opportunities within the [DEA]"

(b)(6)

(b)(6)

2. DEA's position on complainant's compensatory damages claim

In its letter to the CAO, the DEA maintained that because complainant submitted no documentation supporting his claim of financial loss by remaining posted to the (b)(6) Field Division, he was not entitled to any award of past pecuniary damages. Concerning complainant's claim for non-pecuniary damages, the DEA notes that the OFO never determined that complainant was subjected to discrimination over a (b)(6) period, as he suggested in his petition for compensatory damages. The DEA pointed to a previous EEO complaint complainant filed against the DEA regarding a position for which he was not selected where the EEOC found that the DEA had not discriminated against him. See (b)(6) v. Ashcroft, EEOC. Doc. (b)(6) 2002).

The DEA maintained that complainant's sworn statement and submissions failed to demonstrate that complainant's non-pecuniary damages were caused by the DEA not selecting him for the positions at issue, as opposed to being caused by "prior events" (DEA Letter at 2). The DEA stated that while

(b)(6) [redacted]

The DEA conceded that the DEA's actions "caused complainant emotional distress" (ibid). The DEA maintained that complainant's compensatory damages request is excessive and significantly out of line with the EEOC's damages awards in similar cases. The DEA proposed that $15,000 is sufficient to compensate complainant for the emotional distress he suffered after the DEA did not select him for either of the positions for which he applied.

## Analysis

Title VII allows compensatory damages for proven losses and suffering due to the discriminatory acts or conduct of the agency and includes pecuniary losses and non-pecuniary losses that are directly or proximately caused by the agency's discriminatory conduct or action. Johnson v. Nat'l Aeronautics and Space Admin., 2007 WL 1108654, EEOC No. 120053146 (April 5, 2007); Nevarez v. Department of Veterans Affairs, 2000 WL 1368160, EEOC Appeal No. 01992199 (September 15, 2000); EEOC Enforcement Guidance: Compensatory and Punitive Damages, July 14, 1992 (EEOC Guidance), Chapter II-A-1.

In requesting relief for emotional and physical suffering, a complainant must demonstrate that any compensable injuries were caused by the agency's discriminatory action. Rivera v. Dept. Of the Navy, 1994 WL 652171, EEOC No. 01934157 (July 22, 1994). It is complainant's obligation to demonstrate, through appropriate and probative evidence and documentation, the harm suffered as a result of the agency's discriminatory action; the extent, nature, and severity of the harm suffered; and the duration or expected duration of the harm. Ibid. The EEOC has held that relevant evidence for establishing emotional distress compensatory damages includes "any other information on the intensity of the distress, the duration of the distress, and examples of how the distress affected the [complainant], both on and off the job." Adesanya v. USPS, 1994 WL 652855, EEOC No. 01933395 (July 21, 1994).

1. Non-pecuniary Damages

"Non-pecuniary losses are losses that are not subject to precise quantification, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to professional standing, injury to character and reputation, injury to credit standing, and loss of health." Conner v. Dep't of the Navy, EEOC Appeal No. 01996212 (February 14, 2002). "There is no precise formula for determining the amount of damages for non-pecuniary losses, except that the award should reflect the nature and seventy of the harm and the duration or expected duration of the harm." Duncan v. Social Security Administration, EEOC Appeal No. 0120064557 (April 4, 2008) citing Loving v. Department of the Treasury, EEOC Appeal No. 01955789 (August 29, 1997). The proper amount for the award of non-pecuniary damages should not be "monstrously" excessive and should be consistent with amounts awarded in similar cases. See Ward-Jenkins v. Department of the Interior, EEOC Appeal No. 01961483 (March 4, 1999).

When a complainant has a pre-existing condition, "the agency is liable only for the additional harm or aggravation caused by the discrimination." Duncan v. SSA. In this case, [redacted] (b)(6) "[I]f the complainant's pre-existing condition inevitably would have

worsened, the agency is entitled to a reduction in damages reflecting the extent to which the condition would have worsened even absent the discrimination; the burden of proof being on the agency to establish the extent of this entitlement." Duncan, citing Wallis v. United States Postal Service, EEOC Appeal No. 01950510 (November 13, 1995) (additional citations omitted). "[C]omplainant is entitled to recover damages only for injury, or additional injury, caused by the discrimination." Duncan, citing Terrell v. Department of Housing and Urban Development, EEOC Appeal No. 01961030 (October 25, 1996); EEOC Notice No. N 915.002 at 12.

While complainant claimed that not being selected for either of the positions for which he had applied was emblematic of how the DEA had treated him over several years of his employment, the record did not contain any evidence that the DEA had discriminated against complainant prior to the incidents that gave rise to the present complaint. Therefore, only these incidents will be considered.

The record evidence showed that the selections at issue took place in (b)(6) and that complainant contacted an EEO Counselor to complain of suspected discrimination in (b)(6)

(b)(6)

(b)(6)

In determining the proper amount of non-pecuniary losses, it is helpful to look to similar cases. In Fullman v. United States Postal Service, EEOC Appeal N. 01A45271 (January 21, 2005), the EEOC awarded $10,000 in non-pecuniary damages to a complainant who experienced emotional distress after being discriminated against when he was not selected for a position with the service. In Frazier v. Department of Agriculture, EEOC Doc. 0120100064 (March 31, 2011), the EEOC awarded a complainant who was not selected for a position $25,000, where the complainant experienced "emotional distress, familial strain, stress, difficulties in preparing his church sermons, and, ultimately, an apparent heart attack." In Flowers v. United States Postal Service, EEOC Appeal No. 01A43114 (October 7, 2004), the EEOC awarded complainant, who was discriminated against when the service did not hire him, $20,000 for complainant's "sleeplessness, depression, emotional distress, anxiety, loss of enjoyment of life, and strained family relationships." In Farrell v. Department of the Treasury, EEOC Appeal No. 07A20043 (May 5, 2003), the EEOC awarded $20,000 where complainant was discriminated against when not selected for a position and subsequently suffered "emotional distress, depression, marital strain, humiliation, mental anguish, and loss of enjoyment of life." In Moresi v. Department of Homeland Security, EEOC Appeal No. 0720090049 (March 29, 2010), the EEOC awarded $25,000 where the agency's discrimination in not selecting complainant caused complainant "emotional distress, sleeplessness, distrust, and changed world view."

The DEA conceded that complainant had suffered emotional harm in this case. However, complainant did not submit evidence other than his own sworn statement that he said showed that the emotional and physical harm he experienced was the result of the DEA's discriminatory actions. (b)(6)

(b)(6)

(b)(6) While the record evidence supports that complainant suffered from some injuries, including some

emotional injuries, as a result of the DEA's actions, complainant did not suffer injuries that would warrant an award of $300,000 as he seeks. Taking into account the awards in cases decided by the EEOC that are comparable to this case in terms of the nature of the discrimination, the severity and duration of the harm, and the evidence offered in support of the claim, and for all the other related reasons set forth above, a non-pecuniary damages award of $20,000 is appropriate in this case.

2. Pecuniary Damages

Pecuniary damages may be awarded for losses directly or proximately caused by the agency's discriminatory conduct. See EEOC's Enforcement Guidance: Compensatory and Punitive Damages Available Under Section 102 of the Civil Rights Act of 1991, EEOC Notice No. 915.002 at 8 (July 14, 1992). Pecuniary losses are out-of-pocket expenses incurred as a result of the agency's unlawful action, including job-hunting expenses, moving expenses, psychiatric expenses, physical therapy expenses, and other such quantifiable out-of-pocket expenses (ibid). To recover pecuniary damages, a complainant should present objective evidence which includes "documentation showing all actual out-of-pocket expenses with an explanation of the expenditure." Williams v. Small Business Administration, EEOC Appeal No. 01A42056 (January 13, 2005).

With respect to pecuniary damages, complainant contended that the DEA's actions had been a [redacted] (b)(6) Complainant did not present any documentation or other evidence quantifying these expenses or showing that the DEA's actions were responsible for these expenses. Therefore, complainant is not entitled to any pecuniary damages.

U.S. Department of Justice

Complaint Adjudication Office

Agency Complaint Number DEA-(b)(6)
DJ Number (b)(6)

(b)(6) 2012

*950 Pennsylvania Ave, NW*
*Patrick Henry Building, Room A4810*
*Washington, DC 20530*

DEPARTMENT OF JUSTICE FINAL AGENCY DECISION

in the matter of

(b)(6) v. Drug Enforcement Administration

On (b)(6) 2011, complainant (b)(6) an applicant for the (b)(6) position, filed an employment discrimination complaint against the Drug Enforcement Administration, pursuant to Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. §791. Complainant claimed that she was discriminated against based on a disability (b)(6) when she was not selected for the position of (b)(6) because she was unable to complete a pre-employment polygraph examination.

I. Background facts

(b)(6)

A. Complainant's allegations

In the spring of 2008, complainant applied for the (b)(6) position originally located in the (b)(6) Field Division and later at DEA (b)(6) Complainant

(b)(6)

(b)(6)

(b)(6)

[redacted]

B. Management statements

(b)(6)

[redacted]

(b)(6)

[redacted]

C. Documentary evidence

(b)(6)

[redacted]

4

(b)(6)

(b)(6)

(b)(6)

II. Analysis

Complainant claimed that DEA officials discriminated against her based on her (b)(6) condition when they failed to hire her because she could not complete a pre-employment polygraph examination. (b)(6)

(b)(6) [redacted]

(b)(6) [redacted] The Rehabilitation Act makes it unlawful for a federal employer to discriminate against an employee on the basis of a disability. 29 U.S.C. § 791. In analyzing federal employees' disability discrimination claims, the requirements of the Americans with Disabilities Act are applied. Mahon v. Crowell, 295 F.3d 585, 589 (6th Cir. 2002). The Americans with Disabilities Act Amendments Act of 2008 (ADAAA), effective January 1, 2009, broadened the definition of a disability under the Rehabilitation Act. The ADAAA emphasizes that the definition of a disability should be "construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this Act." 42 U.S.C. §12102(4)(a). Under the ADAAA, the question of whether an individual's impairment is a disability "should not demand extensive analysis." 42 U.S.C. § 12102(2)(b). Because the adverse actions complainant raised in this complaint occurred after January 1, 2009, the date the ADAAA became effective, complainant's claim that she has a statutorily protected disability must be assessed under the broad coverage of the ADAAA.

A. Whether complainant has a disability

The determination of whether someone has a disability requires an individualized assessment. The ADAAA defines a disability as (1) a physical or mental impairment that substantially limits a major life activity; or (2) a record of a physical or mental impairment that substantially limited a major life activity; or (3) when an employer takes an action prohibited by the ADA based on an actual or perceived impairment. 42 U.S.C. § 12102(1); 29 C.F.R. § 1630.2(g)(1). To be entitled to reasonable accommodation, an individual's impairment must meet the first or second definition above; individuals whose impairment only meets the third definition are not legally entitled to accommodation. 42 U.S.C. § 12102 (4)(a)(1); 42 U.S.C. § 12201(h); 29 C.F.R. § 1630.9(e); see also EEOC Guidance on the ADAAA of 2008.

As a result of the ADAAA, major life activities now include major bodily functions, such as brain functions and functions of the neurological systems. 29 C.F.R. §1630.2(i)(1)(ii)(2011). Major life activities also include activities that the EEOC and many courts recognized as major life activities prior to the

ADAAA, such as thinking, concentrating, learning, and working. The ADAAA's list of major life activities is non-exhaustive. Determination of whether an individual is experiencing a "substantial limitation" in performing a major life activity is not meant to be a demanding standard. The ADAAA states that the term "substantially limits" shall be construed broadly in favor of expansive coverage. 42 U.S.C. § 12102(4)(A); 29 C.F.R. §1630.2(j)(1)(i). An impairment does not need to prevent or severely or significantly restrict a major life activity to be considered "substantially limiting." 29 C.F.R. § § 1630.2 (j)(1)(ii), (iv)-(v)(2011). In addition, the determination of whether an impairment substantially limits a major life activity must be made without regard to the ameliorative effects of mitigating measures (with the exception of "ordinary eyeglasses or contact lenses"). 29 C.F.R. § 1630.2(j)(1)(vi)(2011).

The EEOC regulations state that the individualized assessment of some types of impairments will, "in virtually all cases, result in a determination of coverage" under the statute. 29 C.F.R. § 1630.2(j)(3)(ii). The regulation states that "it should easily be concluded" that certain types of impairments will, at a minimum, substantially limit the major life activities indicated. One of those impairments specifically mentioned by the regulation is [redacted] (b)(6) Accordingly, under the disability discrimination laws, complainant is an individual with a disability.

B. Whether complainant is a qualified individual with a disability

The next step in this analysis is to determine whether complainant is a "qualified individual with a disability." The determination of whether complainant is a qualified individual with a disability depends on whether complainant satisfies the prerequisites of the [redacted] (b)(6) and whether she can perform the essential functions of the position with or without reasonable accommodation. 29 C.F.R. Pt. 1630, App. § 1630.2(m). [redacted] (b)(6)

employment requirements except the polygraph examination because her (b)(6) (b)(6) Thus, complainant is an otherwise qualified individual with a disability.

C. <u>Whether DEA denied complainant a reasonable accommodation</u>

Under the Rehabilitation Act, DEA is required to provide a reasonable accommodation to an otherwise qualified individual with a disability, unless DEA can show that the accommodation would impose an "undue hardship" on the operation of its program. 29 C.F.R. § 1630.9(e)(2011). It is unlawful for DEA to use qualification standards, employment tests, or other selection criteria that screen out an individual with a disability on the basis of disability, unless the standard, test, or other selection criteria is shown to be job-related for the position in question and is consistent with business necessity. 29 C.F.R. § 1630.10 (2011). The polygraph examination purportedly was used to determine a job candidate's ability to handle national security information.

The reasonable accommodation requirement extends to accommodations that are needed to ensure equal opportunity in the application process. The EEOC's Interpretive Guidance on disability law states (29 C.F.R. Pt. 1630.11, App. (2006)):

> [I]ndividuals with disabilities are not to be excluded from jobs that they can actually perform merely because a disability prevents them from taking a test, or negatively influences the results of a test, that is a prerequisite to the job.

Based on the witness statements and documentary evidence in the record, DEA officials were well aware of complainant's limitation in successfully completing the polygraph examination because of her (b)(6) condition and, more specifically, the (b)(6) Further, complainant requested the reasonable accommodation of being permitted (b)(6) (b)(6) and re-take the polygraph examination, but her request was denied.

(b)(6)

(b)(6)

In identifying an appropriate reasonable accommodation, federal regulations contemplate an interactive process requiring participation by both the employer and employee. 29 C.F.R. §1630.2(O)(3). One of the categories of reasonable accommodation listed by the EEOC is the modification or adjustments to a job application process that enables a qualified applicant with a disability to be considered for the position. 29 C.F.R. §1630.2 (o)(1)(1997); see EEOC Enforcement Guidance: "Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act" (EEOC Guidance), No. 915.02 (October 17, 2002). [redacted] (b)(6)

(b)(6) [redacted] and yet officials refused to discuss providing assistance designed to address her disability and allow her to successfully complete a polygraph examination. See, Calero-Cerezo v. U.S. Dept. of Justice, 355 F.3d 6, 23 (1st Cir. 2004). Thus, the evidence establishes that DEA did not participate in an interactive process of exploring reasonable

accommodations for complainant's (b)(6) [redacted] disability and did not make a good faith consideration of any accommodation in the application process.

The record also shows that DEA officials did not consider any other accommodation to assist complainant. The Rehabilitation Act requires an employer to grant a request for accommodation where the accommodation in question is reasonable and provides equal opportunity in the hiring process. See Fedro v. Reno, 21 F.3d 1391, 1395-96 (7th Cir. 1994). Had DEA provided complainant with the opportunity to take a polygraph examination (b)(6) [redacted] DEA would have been able to successfully complete the exam and evaluate complainant's true responses to the examiner's questions. As it were, the polygraph exam failed to ascertain complainant's credibility and eligibility for a security clearance (purportedly an essential function of the (b)(6) [redacted] job). Accordingly, DEA discriminated against complainant on the basis of her disability because it utilized a test which operated to screen an individual with a disability out of a job, and failed to modify the test so that it could assess the proper factors. See e.g. Jones v. Social Security Admin., 2011 WL 3547538, EEOC No. 0720070002 (August 2, 2011). Nothing in the record shows that allowing complainant to take the polygraph (b)(6) [redacted] would render an undue hardship on DEA. Therefore, DEA failed to provide complainant with a reasonable accommodation.

It is well-established that job applicants who are victims of discrimination are entitled to "make whole relief," which has been defined as the placement of an individual, as near as may be, in the situation she would have been in absent the discrimination. See Albemarle Paper Co. v. Moody, 422 U.S. 405, 418-19 (1975). Because DEA failed to accommodate complainant during the application process, the proper make-whole relief requires that DEA re-administer a polygraph examination to complainant by allowing complainant to (b)(6) [redacted] DEA shall engage complainant in an informal interactive process to clarify and identify fully what complainant needs as an accommodation. See Jones v. Social Security Admin., 2011 WL 3547538, EEOC No. 0720070002 (August 2, 2011. If complainant successfully completes and passes the polygraph examination, after being afforded a reasonable accommodation, DEA shall offer her the (b)(6) [redacted] position and pay her back pay, as discussed below.

## Decision and Relief

The record supports that complainant was subjected to disability discrimination when DEA officials failed to reasonably accommodate her (b)(6) during the pre-employment polygraph examination. Therefore, the following relief is ordered:

1. Within thirty days from the date of this decision, DEA shall schedule complainant to take a polygraph examination at the first available date. Complainant shall be afforded a reasonable accommodation, which shall include at a minimum, (b)(6) during the administration of the polygraph test, consistent with 29 C.F.R. § 1614.501 (a)(3).

2. If complainant successfully passes the polygraph examination, DEA shall offer her (b)(6) (b)(6) position. If no (b)(6) position is available, DEA shall offer complainant a substantially similar position, consistent with 29 C.F.R. §1614.501(b)(1).

DEA shall determine the appropriate amount of back pay, with interest, and other benefits due complainant, pursuant to 29 C.F.R. § 1614.501, et seq. Complainant shall cooperate in DEA's efforts to compute the amount of back pay and benefits due, and shall provide all relevant information requested by DEA.

3. DEA shall not take any retaliatory action against complainant for filing, prosecuting, and prevailing on this discrimination complaint, and shall take appropriate corrective action to prevent any reprisal from occurring at the DEA (b)(6) consistent with 29 C.F.R. § 1614.501 (a)(2).

Such preventive and corrective action by DEA will include providing EEO training, particularly training on disability discrimination, reasonable accommodation, and the requirement to enter in the interactive process, for the DEA

management officials in the (b)(6) and (b)(6) (b)(6) involved in the failure to reasonably accommodate complainant.

4. Regardless as to how complainant performs on the polygraph examination, complainant is eligible for compensatory damages recoverable under Section 102 (a) of the Civil Rights Act of 1991. This award is to be calculated based on complainant's proffer of evidence as to the harm suffered, the extent, nature and severity of the harm, and the expected duration of the harm caused as a result of DEA officials discriminating against her based on her disability and failing to accommodate her in the hiring process.

Complainant shall submit her request for compensatory damages and supporting documents, including medical documentation, if any, of her injuries suffered as a result of the disability discrimination, to Oliver C. Allen, Jr., EEO Officer, Drug Enforcement Administration, 8701 Morrissette Drive, Suite E-11275, Springfield, VA 22152-1080. Tel: (202) 307-(b)(6) A copy of the request should be submitted to the Complaint Adjudication Office as well. Following its receipt of the compensatory damages request, DEA should either award the amount requested or determine what amount it considers an appropriate award. DEA and complainant should then attempt to agree on the compensatory damages award. If a mutually acceptable amount cannot be agreed upon, the parties should notify the Complaint Adjudication Office, which will then issue a decision determining an appropriate award.

5. Complainant is statutorily entitled to reasonable attorney's fees incurred pursuant to her successful disability discrimination failure to reasonably accommodate claim. 29 C.F.R. § 1614.501(e). If complainant's attorney is eligible for an award of attorney's fees, then within thirty days of receipt of this decision, complainant's attorney shall submit a verified statement of costs and an affidavit itemizing the attorney's fees to Oliver C. Allen, Jr., EEO Officer, Drug Enforcement Administration, 8701 Morrissette Drive, Suite E-11275, Springfield, VA 22152-1080. A copy of this statement should be sent to the Complaint Adjudication Office as well. 29 C.F.R. §1614.501(e)(2).

If a mutually acceptable figure for the attorney's fees cannot be agreed upon, the parties should notify the Complaint

Adjudication Office, which will then determine an appropriate award. 29 C.F.R. §1614.501(e)(2)(ii)(A).

6. DEA shall post a notice for sixty days within the DEA (b)(6) [redacted] consistent with 29 C.F.R. § 1614.501 (a)(1).

7. DEA shall submit a report on the status of the implementation of the relief ordered in this case to the Complaint Adjudication Office within ninety days of this decision.

Mark L. Gross
Complaint Adjudication Officer

(b)(6) [redacted]

Attorney
Complaint Adjudication Office

**U.S. Department of Justice**

# Complaint of Discrimination

*(See instructions on reverse)* (b)(6)

PRIVACY ACT STATEMENT: 1. AUTHORITY- The authority to collect this information is derived from 42 U.S.C. Section 2000e-16; 29 CFR Sections 1614.106 and 1614.108. 2. PURPOSE AND USE-This information will be used to document the issues and allegations of a complaint of discrimination based on race, color, sex (including sexual harassment), religion, national origin, age, disability (physical or mental), sexual orientation or reprisal. The signed statement will serve as the record necessary to initiate an investigation and will become part of the complaint file during the investigation; hearing, if any; adjudication; and appeal, if one, to the Equal Employment Opportunity Commission. 3. EFFECTS OF NON-DISCLOSURE-Submission of this information is MANDATORY. Failure to furnish this information will result in the complaint being returned without action.

1. Complainant's Full Name
(b)(6)

Street Address, RD Number, or Post Office Box Number
(b)(6)

City, State and Zip Code
(b)(6)

2. Your Telephone Number *(including area code)*
Home (b)(6)
Work

3. Which Department of Justice Office Do You Believe Discriminated Against You?
Drug Enforcement Administration (b)(6)

B. Street Address of Office
(b)(6)

C. City, State and Zip Code
(b)(6)

4. Current Work Address
(b)(6)

A. Name of Agency Where You Work
DEA/(b)(6)

B. Street Address of Your Agency
(b)(6)

C. City, State and Zip Code
(b)(6)

D. Title and Grade of Your Job
(b)(6)

5. Date on Which Most Recent Alleged Discrimination Took Place

| Month | Day | Year |
|---|---|---|
| (b)(6) | | 2013 |

6. Check Below Why You Believe You Were Discriminated Against?

- [x] Race or Color *(Give Race or Color)* Black
- [ ] Religion *(Give Religion)*
- [ ] Sex *(Give Sex)* [ ] Male [ ] Female
  - [ ] Sexual Harassment
- [ ] Age *(Give age)*
- [ ] National Origin *(Give National Origin)*
- [ ] Disability [ ] Physical [ ] Mental
- [ ] Genetic Information
- [ ] Sexual Orientation
- [ ] Gender Identity
- [x] Reprisal
- [ ] Parental Status
- [ ] Class Complaint

7. Explain How You Believe You Were Discriminated Against *(treated differently from other employees or applicants)* Because of Your Race, Color, Sex (including sexual harassment), Religion, National Origin, Age, Disability (physical or mental), Genetic Information, Sexual Orientation, Gender Identity, Parental Status, or Reprisal. Do not include specific issues or incidents that you have not discussed with your EEO Counselor. *(You may continue your answer on another sheet of paper if you need more space.)*

See attachment. (5 pages)
In this matter, my representatives will be:
(b)(6)

8. What Corrective Action Do You Want Taken on Your Complaint?

Harassment to cease and decease.
Quality Step Increase
Diversity Training at (b)(6) from outside source
$300,000.00 with agency paying taxes

9. A) I have discussed my complaint with an Equal Employment Opportunity Counselor and/or other EEO Official.

DATE OF FIRST CONTACT WITH EEO OFFICE: (b)(6) 2013

DATE OF RECEIPT OF NOTICE OF FINAL INTERVIEW WITH EEO COUNSELOR: (b)(6)

B) Name of Counselor
(b)(6)

[ ] I Have Not Contacted an EEO Counselor

10. Date of This Complaint:

| Month | Day | Year |
|---|---|---|
| (b)(6) | | 2013 |

FORM DOJ-201A
APR. 2011

**Formal Complaint**

(b)(6) I have been working for the Department of Justice, Drug Enforcement Agency since (b)(6) (b)(6) and my Immediate Supervisor is Ms. (b)(6) ASAC is (b)(6) and the SAC is (b)(6)

(b)(6) I believe (b)(6) has treated Blacks (specifically me) less favorably than other White supervisor employees when handling office complaints, disputes, concerns or issues. Also, they have subjected me to a hostile working environment in Retaliation for my previous filings. (b)(6)

(b)(6)

(b)(6)

(b)(6)

(b)(6)

(b)(6)

(b)(6) I believe they discriminated against me because I am black, when SAC, ASAC and my immediate supervisor failed to (b)(6)

(b)(6)

No Further Entry this Page

(b)(6)

**FIRST AMDENDED COMPLAINT - ATTACHMENT** (b)(6)

**EEO ALLEGATIONS:**

**RACIAL DISCRIMINATION AND RETALIATION**

DEA (b)(6) an African-American male, (GS (b)(6), has been racially discriminated against by DEA (b)(6) (b)(6) and denied an equal opportunity to be permanently promoted to a GS- (b)(6)

(b)(6)

**CLAIM(S) OF DISCRIMINATION – FACTUAL BASIS**

(b)(6)

**ACTS OF DISCRIMINATION SINCE (b)(6) 2009 (SUBSEQUENT TO THE FILING OF THE ORIGINAL, FORMAL EEO COMPLAINT)**

(b)(6)

(b)(6)

(b)(6)

(b)(6)

(b)(6)

(b)(6)

(b)(6)

Therefore, please consider this as my formal filing of an Amended Formal EEO Complaint on behalf of (b)(6)

Additionally, I would request that either you, in concert with DEA Chief EEO Officer Oliver Allen, together with upper DEA HQS management, intervene on behalf of (b)(6) (b)(6) and halt this reprehensible conduct by (b)(6) which also appears to be condoned by (b)(6)

(b)(6) is, and has been, a faithful and dedicated civil servant and DEA Employee, who prides himself in his job performance. He wants to work in a safe, and non-hostile workplace, free of discrimination and retaliation. I would ask that you consider this as my formal request to re-consider (b)(6) promotion to the GS (b)(6) level, and resolve this conflict before it escalates any further.

(b)(6)

(b)(6)

## BASIS OF DISCRIMINATION

(b)(6) an African American male, has been, and continues to be, subjected to racial discrimination, and a hostile work environment due to his race, and a continuing pattern of retaliatory misconduct by DEA Management officials, including (b)(6) (b)(6) all of whom are assigned to the DEA (b)(6) Field Division. The conduct by the aforementioned individuals violates (b)(6) statutory and constitutional rights, including those as enumerated in Title VII of the Civil Rights Act, and Title 42, USC 2000e et seq.

## REMEDY(IES) SOUGHT

1. (b)(6) requests this outrageous, racially discriminatory and disparate treatment and retaliation cease immediately.

2. (b)(6) requests his immediate permanent promotion to GS (b)(6) retroactive to (b)(6) 2008.

3. (b)(6) requests that appropriate disciplinary action be imposed against (b)(6) (b)(6) for their misconduct.

(b)(6)

(b)(6) /09

Date

Attorney for (b)(6)

DEA (b)(6)

U.S. Department of Justice

# Complaint of Discrimination

*(See instructions on reverse)*

PRIVACY ACT STATEMENT: 1. AUTHORITY- The authority to collect this information is derived from 42 U.S.C. Section 2000e-16; 29 CFR Sections 1614.106 and 1614.108. 2. PURPOSE AND USE-This information will be used to document the issues and allegations of a complaint of discrimination based on race, color, sex (including sexual harassment), religion, national origin, age, disability (physical or mental), sexual orientation or reprisal.

The signed statement will serve as the record necessary to initiate an investigation and will become part of the complaint file during the investigation; hearing, if any; adjudication; and appeal, if one, to the Equal Employment Opportunity Commission. 3. EFFECTS OF NON-DISCLOSURE-Submission of this information is MANDATORY. Failure to furnish this information will result in the complaint being returned without action.

1. Complainant's Full Name
(b)(6)

Street Address, RD Number or Post Office Box Number
(b)(6)

City, State and Zip Code
(b)(6)

2. Your Telephone Number *(including area code)*
Home Cell - (b)(6)
Work (b)(6)

3. Which Department of Justice Office Do You Believe Discriminated Against You?
U.S. DRUG ENFORCEMENT ADMINISTRATION
(b)(6)

B. Street Address of Office
(b)(6)

C. City, State and Zip Code
(b)(6)

4. Current Work Address
(b)(6)

A. Name of Agency Where You Work
U.S. DRUG ENFORCEMENT ADMINISTRATION

B. Street Address of Your Agency
(b)(6)

C. City, State and Zip Code
(b)(6)

D. Title and Grade of Your Job
(b)(6)

5. Date on Which Most Recent Alleged Discrimination Took Place

Month Day Year
(b)(6) 14

6. Check Below Why You Believe You Were Discriminated Against?

- ☒ Race or Color *(Give Race or Color)* Caucasian
- ☐ Religion *(Give Religion)*
- ☐ Sex *(Give Sex)* ☐ Male ☐ Female
  - ☐ Sexual Harassment
- ☐ Age *(Give age)*
- ☐ National Origin *(Give National Origin)*
- ☐ Disability ☐ Physical ☐ Mental
- ☐ Genetic Information
- ☐ Sexual Orientation
- ☐ Gender Identity
- ☒ Reprisal
- ☐ Parental Status
- ☐ Class Complaint

7. Explain How You Believe You Were Discriminated Against *(treated differently from other employees or applicants)* Because of Your Race, Color, Sex (including sexual harassment), Religion, National Origin, Age, Disability (physical or mental), Genetic Information, Sexual Orientation, Gender Identity, Parental Status, or Reprisal. Do not include specific issues or incidents that you have not discussed with your EEO Counselor. *(You may continue your answer on another sheet of paper if you need more space.)*

SEE ATTACHMENT A, B, C, D

(b)(6)

2014 ... PM 12: 36

8. What Corrective Action Do You Want Taken on Your Complaint?

SEE ATTACHMENT A, B, C, D

9. A) I have discussed my complaint with an Equal Employment Opportunity Counselor and/or other EEO Official.

DATE OF FIRST CONTACT WITH EEO: (b)(6) 14

DATE OF RECEIPT OF NOTICE OF FINAL INTERVIEW WITH EEO COUNSELOR: (b)(6) 14

B) Name of Counselor
(b)(6)

☐ I Have Not Contacted an EEO Counselor

10. Date of This Complaint:
Month Day Year
(b)(6) /14

11. Sign Your Name Here: (b)(6)
(b)(6)

FORM DOJ-201A
APR. 2011

Received via email: (b)(6) 14

[redacted]

[redacted]

[redacted]

## Discussion of Attorney's Fees and Legal Expenses

### A. Attorney's Fees

(b)(6)

[redacted]

(b)(6) [redacted] already paid separately Par 1 + 2

(b)(6) [redacted]

A successful complainant is entitled to the award of reasonable attorney's fees. See 29 C.R.F. § 1614.501(e). The precise amount of attorney's fees due is typically determined by multiplying the number of hours reasonably expended by the attorney in question by a reasonable hourly rate. See 29 C.F.R. § 1614.501(e)(2)(ii)(B). The attorney requesting the fee award has the burden of proving, by specific evidence, entitlement to the requested fees and costs. See Jimenez v. Department of Health and Human Serv., EEOC No. 0120083765 (June 12, 2012).

A "reasonable hourly rate" for determining an appropriate award of attorney's fees is based on the prevailing market rate in the relevant community for attorneys of similar experience in similar cases. Wilson v. Department of Justice, EEOC No. 01A52756 (May 2, 2006). Generally, the relevant market for determining the reasonable hourly rate is where complainant resides or where the hearing is held. See Simmons v. Department of the Air Force, EEOC No. 01A60798 (October 23, 2006); McTier v. Department of the Navy, EEOC No. 07A30016 (March 2, 2004). However, the EEOC has determined that if a complainant "does not find counsel readily available in that locality with whatever degree of skill may reasonably be required, it is reasonable for that party to go elsewhere to find an attorney." Southerland v. United States Postal Serv., EEOC No. 01A05403 (October 16, 2002). The burden is on the agency to show that complainant's decision to retain out-of-town counsel was unreasonable. See id.

(b)(6)

(b)(6)

The EEOC's Management Directive 110 (MD-110) states that a verified statement of fees and costs shall include a list of services rendered itemized by date, number of hours, detailed summary of the task, rate, and the attorney's name. The EEOC has held that although an attorney requesting fees is not required to record in great detail the manner in which each minute of his time was expended, the attorney does have the burden of identifying the subject matters in which he spent his time, which can be documented by the submission of sufficiently detailed contemporaneous time records to ensure that the time spent was accurately recorded. <u>See</u> <u>McCann v. Department of the Air Force</u>, EEOC No. 01980715 (January 13, 2000). An attorney must attempt to identify the subject matter involved, in accord with his obligation to make a good faith effort to exclude hours that are excessive, redundant, or otherwise unnecessary. <u>Id.</u>

(b)(6)

Given that this matter continued over (b)(6) years, involved an intensive effort to get DEA to investigate this case properly, an intensive brief practice regarding damages, and ended with a favorable outcome for complainant, the record supports an award of $38,361.40 in attorney's fees.

B. <u>Legal Expenses</u>

Complainant requested reimbursement of $447.89 in legal expenses. Brief 1 at ex. 2; brief 5 at ex. B. There is sufficient documentation to support complainant's request for legal expenses in its entirety.

## <u>Decision</u>

For the reasons discussed above, complainant is awarded the sum of $65,000 in non-pecuniary compensatory damages for the emotional harm he sustained because of DEA's harassment and retaliation. DEA shall pay complainant the damage award within 30 days of this decision.

Complainant is awarded 40 hours of sick leave in addition to the 40 hours DEA has offered complainant for a total of 80 hours of sick leave.

<u>Complainant is awarded the right</u> to be reassigned as a (b)(6) back to the (b)(6) office. DEA shall reassign complainant to the (b)(6) office, if it is amenable to complainant as promptly as possible.

Complainant is awarded $38,361.40 in attorney's fees and $447.89 in legal expenses. DEA shall pay complainant the fees and expenses awarded within 60 days of the date of this decision.

(b)(6) DEA shall limit contact between complainant and (b)(6) as much as possible.

Mark L. Gross
Complaint Adjudication Officer

(b)(6)

Attorney
Complaint Adjudication Office

**Approval of Payment**
"This is to verify that all of the administrative determinations have been made, that the payment is legal, proper and correct for payment."

| | |
|---|---|
| Amount | $20,068.38 |
| Obligation Doc No | (b)(6) |
| Signature | |
| Print Name | Bettie E. Goldman |
| Title | Assistant Deputy Chief Counsel |
| Date Approved | (b)(6) /15 |

Office of Chief Counsel
REC'D (b)(6) REC'D
CD/ (b)(6) /2015

(b)(6)

Pursuant to USERRA, (b)(6) alleges that he has been subject to discrimination, retaliation and reprisal due to his participation in the (b)(6) (b)(6) alleges he was two suffered loss of pay, health and other benefits, seniority, and status when promotions were delayed an denied, stunting his DEA career and potential.

(b)(6)

(b)(6)

(b)(6)

(b)(6)

(b)(6)

(b)(6)

The above acts constitute acts of discrimination, retaliation and reprisal and where indicated or shown, violations of USERRA re-employment rights. Appellant seeks a backdated promotion to GS-(b)(6) with all benefits and pay, an end to the discriminatory, hostile

**Attachment to Formal Complaint of Discrimination f (b)(6)**

I have been discriminated against on the basis of my gender (female) in my non-selection for foreign assignments to DEA's (b)(6) Country Office. My EEO rights in pursuing this complaint have also been interfered with by Agency officials responsible for processing EEO complaints.

**Response to Question 7: Statement of Claims**

**DATES OF OCCURRENCE:**

I became aware of the most recent non-selection, for Vacancy (b)(6) (b)(6) Country Office, on (b)(6) 2013. I was also previously not selected for two similar foreign assignments in (b)(6) and (b)(6)

**BASES:** Gender (female); EEO Interference (reprisal for attempting to file informal EEO complaint).

**DISCRIMINATING OFFICES/OFFICIALS:**

The following DEA offices and/or officials may have been involved in the selection decisions at issue:

(b)(6)

1.
2.
3.
4.
5.
6.

**DESCRIPTION OF CLAIMS:**

I have been discriminated against in selections for foreign assignments on the basis of my gender since. Since (b)(6) I have applied for three foreign assignments to the (b)(6) Country Office. I am aware that I made the Best-Qualified Lists for all three positions. Most recently, on (b)(6) 2013, I was again denied a foreign assignment to (b)(6)

**Prior non-selections**

As background evidence, I am providing details on all three non-selections. On (b)(6) I applied for Vacancy (b)(6) a GS-(b)(6) position in the (b)(6) (b)(6) Country Office, under DEA's (b)(6) Field Division. (b)(6)
(b)(6)

(b)(6)

On (b)(6) I again applied for a GS- (b)(6) position in the (b)(6) Country Office. (b)(6)

(b)(6)

(b)(6) **Non-selection**

Most recently, I again applied for the (b)(6) Country Office position, advertised under Vacancy (b)(6)

(b)(6)

(b)(6)

(b)(6)

(b)(6)

The EEO counselor and EEO Office's approach to my complaint at every step of the process was to discourage me from filing an EEO complaint and ultimately delay the filing of my complaint against the Agency. My EEO rights to pursue a discrimination complaint regarding the most recent non-selection have been interfered with, which is *per se* reprisal.

**Response to Question 8: Corrective Action**

**REMEDY REQUESTED:**

As a result of the above-described discrimination, I seek all compensatory and corrective actions deemed necessary to make me whole, including but not limited to:

1. Retroactive placement in the position of (b)(6) Country Office, with backpay (if appropriate);

2. Attorneys fees and costs;

3. Compensatory damages up to $300,000, or as otherwise allowed by law.

4. Mandatory EEO training on sex discrimination and reprisal for all responsible management officials.

(b)(6)

(b)(6)

(b)(6) 2017

Honorable (b)(6)
Special Counsel
U.S. Office of Special Counsel (OSC)
(b)(6)

Attn: Complaints Examining Unit

Re: (b)(6) <u>Whistleblower Protection Act Complaint and Disclosure</u>

Dear (b)(6)

(b)(6) represents Mr. (b)(6) a GS-(b)(6) U.S. Drug Enforcement Administration (DEA) (b)(6) in his Whistleblower Protection Act complaint under 5 U.S. Code § 1212 for past and perceived prohibited personnel practices. Mr. (b)(6) was subject to personnel actions under 5 U.S.C. § 2302(a)(2)(A)(ii), 5 U.S.C. § 2302(a)(2)(A)(iv), 5 U.S.C. § 2302(a)(2)(A)(ix), 5 U.S.C. § 2302(a)(2)(A)(xi), and 5 U.S.C. § 2302(a)(2)(A)(xii). The retaliation was both for his whistleblowing disclosures, and for exercising his appeal rights (b)(6) The personnel actions violated 5 U.S.C. §§ 2302(b)(8), 2302(b)(9) and 2302(b)(13). Mr. (b)(6) also is disclosing misconduct pursuant to 5 USC § 1213 (b)(6)
(b)(6)

Mr. (b)(6) disclosures evidence illegality, gross mismanagement, abuse of authority, and gross waste, which has created a substantial and specific danger to public health and safety. This complaint also illustrates the Drug Enforcement Agency's (DEA), and management's, failure to take corrective action under 5 U.S.C. § 2302(b)(8). Mr. (b)(6) affidavit and supporting attachments are enclosed as Exhibit 1.

## SUMMARY OF FACTS

(b)(6)

(b)(6)

## Prohibited Personnel Practices

For a disclosure to be reasonable and fall under the protection of 5 U.S.C. § 2302(b)(8) the threshold question is could "a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee reasonably conclude that the actions of the government evidence [malfeasance]." *Lachance v. White*, 174 F.3d 1378, 1381 (Fed. Cir. 1999). Where the disclosure relates to a matter within the employee's expertise and familiarity, that expertise explicitly supports the reasonableness of the employee's disclosure. *Chambers v. Dep't of Interior*, 602 F.3d 1370, 1379 (Fed. Cir. 2010). In addition, a disclosure made to a supervisor about "other employees' conduct or other misconduct may be disclosures covered by the WPA." *Huffman v. Office of Pers. Mgmt.*, 263 F.3d 1341, 1344 (Fed. Cir. 2001).

### *Prima facie case*

#### 1. Personnel Actions

#### Hostile Work Environment

(b)(6) [redacted]

5 USC § 2302(a)(2)(A)(xii) makes "any significant change in duties, responsibilities or working conditions" a personnel action. A hostile working environment is jurisdictional under this personnel action. *Savage v. Dep't of Army,* 122 M.S.P.R. 612 (2015).

(b)(6) [redacted]

(b)(6)

(b)(6)

(b)(6)

(b)(6)

(b)(6) [redacted]

2. Protected activity

(b)(6) [redacted]

(b)(6)

(b)(6)

(b)(6) [redacted]

3. Knowledge

Case law has established that knowledge of the protected disclosures by the employee's supervisor satisfies this element. Gonzalez v. Dep't of Transp., 109 M.S.P.R. 250, 259 (2008). [redacted] (b)(6)

4. <u>Nexus/Contributing Factor</u>

A "contributing factor" means "any factor which, alone or in combination with other factors, tends to affect in any way the outcome" of a decision 135 *Cong. Rec.* 4509, 4518, 4522 and 4533 (Statements of Senators Grassley, Pryor, Representative Schroeder and Joint Explanatory Statement)

There are two ways to prove contributing factor: (1) the knowledge-timing test and (2) circumstantial evidence.

A. <u>Temporal proximity/knowledge-timing test[i]</u>

As a matter of law, after a deciding official acquires knowledge of the disclosure, any prohibited personnel action taken "within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action," can satisfy the nexus requirement 5 USC 1221(e)(1)(B). Prior Board precedent has ruled, for example, that a personnel action occurring within one to two years of the protected activity is sufficient to meet this test. *See Schnell v. Dep't of Army*, 114 M.S.P.R. 83, 93 (2010). Thus, events occurring within a shorter amount of time should sufficiently meet the test.

(b)(6) [redacted]

(b)(6)

B. Circumstantial evidence.

It is well established that nexus can also be established through circumstantial evidence. Criteria that can be used to establish the nexus between protected activity and the personnel action include: whether the proposing or deciding official was a target of the disclosures; the employer's hostile reaction to protected disclosures; discriminatory treatment compared to before making the disclosure; extent of disclosures; significance of the charges; strengths and weaknesses of the agency basis for a personnel action; adequacy of agency investigation and corrective action on alleged, confirmed misconduct; and the chilling effect. *See, e.g., Rumsey v. Dep't of Justice*, 120 M.S.P.R. 259, 273 (2013); *Valerino v. Dep't of Health and Human Services*, 7 M.S.P.R. 487, 489-90 (1981); *Fellhoelter v. Dep't Agriculture*, 568 F. 3d 965, 971 (Fed. Cir. 2009); *Daniels v. Dep't of Veterans Affairs*, 105 M.S.P.R. 248, 259 (2007); *Stiles v. Dep't of Homeland Security*, 116 M.S.P.R. 263, 273-74 (2011); accord *Sheehan v. Dep't of Navy*, 240 F.3d 1009, 1014 (Fed. Cir. 2001); *Webster v. Dep't of the Army*, 911 F.2d 679, 689-90 (Fed. Cir. 1990).

(b)(6)

(b)(6)

(b)(6)

**CLAIM FOR DAMAGE, INJURY, OR DEATH**

INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions.

FORM APPROVED OMB NO. 1105-0008

1. Submit To Appropriate Federal Agency

Drug Enforcement Administration
Office of Chief Counsel (CCL/LAW)
8701 Morrissette Drive
Springfield, Virginia 22152

2. Name, Address of claimant and claimant's personal representative, if any *(See instructions on reverse.) (Number, street, city, State and ZIP Code)*

(b)(6)

3. TYPE OF EMPLOYMENT ☐ MILITARY ☒ CIVILIAN

4. DATE OF BIRTH (b)(6)

5. MARITAL STATUS Single

6. DATE AND DAY OF ACCIDENT (b)(6) of 2012

7. TIME *(A.M. OR P.M.)* (b)(6)

8. Basis of Claim *(State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurence and the cause thereof.) (Use additional pages if necessary.)*

As set forth in the earlier claim letter, Mr. (b)(6) was taken into custody by agents of the Task Force on the early morning of (b)(6) 2012. He was questioned, then told he would be released, as he had been "at the wrong place at the wrong time". (b)(6)

(continued on attached page)

9. **PROPERTY DAMAGE**

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT *(Number, street, city, State, and ZIP Code)*

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. *(See instructions on reverse side.)* (b)(6)

10. **PERSONAL INJURY/WRONGFUL DEATH**

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

(b)(6)

(continued on attached page)

11. **WITNESSES**

| NAME | ADDRESS *(Number, street, city, State, and ZIP Code)* |
|---|---|
| (b)(6) various NTF and DEA personnel, identities unknown to plaintiff. | (b)(6) (see above) |

12. *(See instructions on reverse)* **AMOUNT OF CLAIM *(in dollars)***

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL *(Failure to specify may cause forfeiture of your rights.)* |
|---|---|---|---|
| $200,000.00 | $19,800,000.00 | | $20,000,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

13a. SIGNATURE (b)(6)

13b. Phone number of signatory

14. DATE OF CLAIM (b)(6) 2012

**CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM**

The claimant shall forfeit and pay to the United States the sum of $2,000, plus double the amount of damages sustained by the United States.

*(See 31 U.S.C. 3729.)*

**CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS**

Fine of not more than $10,000 or imprisonment for not more than 5 years or both. *(See 18 U.S.C. 287, 1001.)*

*Previous editions not usable.*

STANDARD FORM 95 (Rev. 7-85)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.

A. ***Authority:*** The requested information is solicited pursuant to one or more of the following: 5. U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. ***Principal Purpose:*** The information requested is to be used in evaluating claims.

C. ***Routine Use:*** See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.

D. ***Effect of Failure to Respond:*** Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid".

## INSTRUCTIONS

**Complete all items - Insert the word NONE where applicable**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF.

Any instructions or information necessary in the preparation of your claim will be furnished, upon request, by the office indicated in item # 1 on the reverse side. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplemental regulations also. If more than one agency is involved, please state each agency.

The claim may be filled by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with said claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file claim for both personal injury and property damage, claim for both must be shown in item 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

*(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

*(b)* In support of claims for damage to property which as been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)* Failure to completely execute this form or to supply the requested material within two years from the date the allegations accrued may render your claim "invalid". A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

**Failure to specify a sum certain will result in invalid presentation of your claim and may result in forfeiture of your rights.**

**According to the Paperwork Reduction Act of 1995, no persons are required to respond to a Collection of Information unless it displays a valid OMB control number. The valid OMB control number for this Information Collection is 1105-0008. The time required to complete this Information Collection is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data resources, gathering and maintaining the data needed, and completing and reviewing the Information collection. Send comments regarding this burden estimate or any other aspect of this information collection, including suggestions for reducing this burden**

**to Director, Torts Branch**
**Civil Division**
**U.S. Department of Justice**
**Washington, DC 20530**

**and to the**
**Office of Management and Budget**
**Paperwork Reduction Project (1105-0008)**
**Washington, DC 20503**

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

15. Do you carry accident insurance? [X] YES, If Yes, give name and address of insurance company *(Number, street, city, State, and ZIP Code)* and policy number. [ ] NO

(b)(6)

16. Have you filed claim on your insurance carrier in this instance, and if so, is it full coverage or deductible?

17. If deductible, state amount

18. If claim has been filed with your carrier, what action has your insurer taken or proposes to take with reference to your claim? *(It is necessary that you ascertain these facts)*

19. Do you carry public liability and property damage insurance? [ ] YES, If Yes, give name and address of insurance carrier *(Number, street, city, State, and Zip Code)* [ ] NO

SF 95 (Rev. 7-85) BACK

8 Continued:

(b)(6)

9 Continued:

(b)(6)

(b)(6); (b)(7)(C)

(b)(6); (b)(7)(C) 2012

Wendy H. Goggin, Esq.
Chief Counsel
Drug Enforcement Administration
8701 Morrissette Drive
Springfield, VA 22152

RE: (b)(6); (b)(7)(C)
Federal Tort Claims Act Clam Pursuant to 28 U.S.C. 2675

Dear Ms. Goggin:

I am writing you on behalf of (b)(6); (b)(7)(C) d.o.b. (b)(6); (b)(7)(C) to make a claim for compensation for the actions of the agents of the Narcotics Task Force (NTF) and the Drug Enforcement Administration (DEA), (b)(6); (b)(7)(C)

The actions of the officers give rise to the following causes of actions among others: intentional infliction of emotional distress, negligence, negligent infliction of emotional distress, and a *Bivens* cause of action for violation of (b)(6); (b)(7)(C) rights under the Fourth and the Fifth Amendments for excessive force, unreasonable detention and unlawful seizure of his person. The actions and the failure to act of the supervisory personnel, in failing to properly screen, hire, train and supervise give rise to, but are not limited to the following causes of action: negligence, negligent infliction of emotional distress, violation of statutory duty, and a *Bivens* violation based on the foregoing. The (b)(6); (b)(7)(C) (b)(6); (b)(7)(C) constitutes torture under both international and domestic law.

The Detainee Treatment Act of 2005, in effect at the time of these events, provides in relevant part as follows:

> "(a) In General. No individual in the custody or under the physical control of the United States Government, regardless of nationality or physical location, shall be subject to cruel, inhuman, or degrading treatment or punishment.
>
> (d) Cruel, Inhuman, or Degrading Treatment or Punishment Defined. In this section, the term "cruel, inhuman, or degrading treatment or punishment" means the cruel , unusual, and inhumane treatment or punishment prohibited by the Fifth, Eighth,

(b)(6); (b)(7)(C)

U.S. OFFICE OF SPECIAL COUNSEL
Form OSC-11 (2/28/14)

(202) 254-3600 / (202)254-3670 / (800) 872-9855
OMB Control No. 3255-0002

# COMPLAINT OF POSSIBLE PROHIBITED PERSONNEL PRACTICE
# OR
# OTHER PROHIBITED ACTIVITY

**IMPORTANT**

**Before filling out this Office of Special Counsel (OSC) form, please read the following information about:(1) the required complaint format; (2) the scope of OSC's jurisdiction; and (3) certain OSC policies. OSC cannot investigate a complaint if it lacks jurisdiction over the subject matter. Further, filing a complaint with OSC will not extend any time limits that may exist under any other complaint procedures that may be available. It is important, therefore, that you consider whether OSC may lack jurisdiction over your complaint.**

**If you plan to file a complaint alleging reprisal for whistleblowing, important information about the elements required by law to establish such a violation is provided in Part 2 of this form (at page 4).**

## INFORMATION ABOUT FILING A COMPLAINT WITH OSC

**Required Complaint Form**. Complaints alleging a prohibited personnel practice, or a prohibited activity other than a Hatch Act violation, must be submitted on this form. OSC will not process complaints (except a complaint alleging only a Hatch Act violation) that are not submitted on this form. OSC will return the material received, with a blank complaint form to complete and return to OSC. The complaint will be considered to be filed on the date on which OSC receives the completed form. 5 C.F.R. § 1800.1, as amended.

**No OSC Jurisdiction**. OSC has no jurisdiction over complaints filed by employees of –

- the Central Intelligence Agency, Defense Intelligence Agency, National Security Agency, or other intelligence agency excluded from coverage by the President;
- the armed forces of the United States (*i.e.*, uniformed military employees);
- the General Accounting Office;
- the Postal Rate Commission; and
- the Federal Bureau of Investigation.

**Limited OSC Jurisdiction**. OSC has jurisdiction over certain types of complaints filed by employees of some agencies, as follows –

- Federal Aviation Administration employees alleging reprisal for whistleblowing;
- employees of government corporations listed at 31 U.S.C. § 9101 alleging reprisal for whistleblowing; U.S.
- Postal Service employees alleging nepotism; and
- Transportation Security Administration (TSA) employees alleging reprisal for whistleblowing: TSA non-screener employees may file complaints alleging retaliation for protected whistleblowing under 5 U.S.C. § 2302(b)(8). OSC will process these complaints under its regular procedures, including filing petitions with the Merit Systems Protection Board, if warranted. TSA security screeners may also file complaints alleging retaliation for protected whistleblowing under 5 U.S.C. § 2302(b)(8) pursuant to a Memorandum of Understanding (MOU) between OSC and TSA executed on May 28, 2002. The MOU and TSA Directive HRM Letter No. 1800-01 provide OSC with authority to investigate whistleblower retaliation complaints from screeners and recommend that TSA take corrective and/or disciplinary action when warranted. Additional information on OSC procedures for reviewing security screener whistleblower complaints under the MOU is available at http://www.osc.gov/tsa-info.htm.

*(over)*

**VISIT WWW.OSC.GOV**
**FOR MORE INFORMATION ABOUT OSC JURISDICTION AND COMPLAINT PROCEDURES**

## INFORMATION ABOUT FILING A COMPLAINT WITH OSC *(cont'd)*

**Election of Remedies for Employees Covered By a Collective Bargaining Agreement**. Pursuant to 5 U.S.C. § 7121(g), if you are covered by a collective bargaining agreement, you must choose one of three possible avenues to pursue your prohibited personnel practice complaint: (a) a complaint to OSC; (b) an appeal to the Merit Systems Protection Board (MSPB) (if the action is appealable under law or regulation), or (c) a grievance under the collective bargaining agreement. If you have already filed an appeal about your prohibited personnel practice allegations with the MSPB, or a grievance about those allegations under the collective bargaining agreement, OSC lacks jurisdiction over your complaint and cannot investigate it.

**Deferral of Certain Complaints Involving Discrimination**. Although OSC is authorized to investigate discrimination based upon race, color, religion, sex, national origin, age, or handicapping condition, as well as reprisal for filing an EEO complaint, OSC generally defers such allegations to agency procedures established under regulations issued by the Equal Employment Opportunity Commission (EEOC). 5 C.F.R. § 1810.1. If you wish to report allegations of discrimination based upon race, color, religion, sex, national origin, age, or handicapping condition, or reprisal for filing an EEO complaint, you should contact your agency's EEO office immediately. There are specific time limits for filing such complaints. Filing a complaint with OSC will not relieve you of the obligation to file a complaint with the agency's EEO office within the time prescribed by EEOC regulations (at 29 C.F.R. Part 1614).

> ***Note:*** This deferral policy does not apply to discrimination claims outside the jurisdiction of the EEOC, such as complaints alleging discrimination based upon marital status or political affiliation.

**Complaints Involving Veterans Rights**. By law, complaints alleging denial of veterans' preference requirements must be filed with the Veterans Employment and Training Service (VETS) at the Department of Labor. 38 U.S.C. § 4301, *et seq.*, and 5 U.S.C. § 3330a(a). Certain allegations of discrimination based on the past, current, or future performance of military service (*e.g.*, discrimination based on veteran or reservist status) may be filed with OSC. Thus, you are encouraged to contact OSC's Uniformed Services Employment and Reemployment Rights Act (USERRA) Unit by e-mail at userra@osc.gov or by telephone at 202-254-3600.

**SEND COMPLETED COMPLAINT FORMS TO OSC -**

| | |
|---|---|
| **By Mail:** | **Complaints Examining Unit**<br>**Office of Special Counsel**<br>**1730 M Street, N.W. (Suite 218)**<br>**Washington, DC 20036-4505** |
| **By Fax:** | **(202)254-3711** |
| **Electronically:** | WWW.OSC.GOV (AT "FILE COMPLAINTS ONLINE") |

***PLEASE KEEP A COPY OF YOUR COMPLAINT, ANY SUPPORTING DOCUMENTION, AND ANY ADDITIONAL ALLEGATIONS SENT IN WRITING TO OSC NOW, OR AT ANY TIME WHILE YOUR COMPLAINT IS PENDING***
*REPRODUCTION CHARGES UNDER THE FREEDOM OF INFORMATION ACT MAY APPLY TO ANY REQUEST YOU MAKE FOR COPIES OF MATERIALS THAT YOU PROVIDED TO OSC.*

***IF YOU ARE FILING AN ALLEGATION OF REPRISAL FOR WHISTLEBLOWING,***
*PLEASE SEE PART 2 OF THE COMPLAINT FROM, AT PAGES 4-5, FOR OTHER RECORDKEEPING CONSIDERATIONS.*

U.S. OFFICE OF SPECIAL COUNSEL (202) 254-3600 / (202) 254-3670 / (800) 872-9855

## COMPLAINT OF POSSIBLE PROHIBITED PERSONNEL PRACTICE OR OTHER PROHIBITED ACTIVITY

*(Please print legibly or type and complete all pertinent items. Enter "N/A" (Not Applicable) or "Unknown" where appropriate. (If more space is needed, use Continuation Sheet at page 12.)*

### PART 1: PROHIBITED PERSONNEL PRACTICES PROHIBITED ACTIVITY (GENERAL)

1. Name of person seeking OSC action ("Complainant"): Mr. (•) Ms. ( ) Mrs. ( ) Miss ( )

(b)(6)

For USERRA complaints only - please provide the last digit only of your Social Security Number (SSN):
(needed to determine jurisdiction under § 204(c)(2) of Public Law No. 108-454.)

2. Position, title, series, and grade: (b)(6)

3. Agency name: Drug Enforcement Administration

4. Agency Address: 8701 Morrissette Drive, Springfield, VA 22152

5. Home or mailing address: (b)(6)

6. Contact information: Telephone number(s): (b)(6) (Home)
(Office) Ext.

Fax number: ( )

E-mail address: (b)(6)

7. If you are filing this complaint as a legal or other representative of the Complainant, please supply the following information:

Name and title of filer: Mr. (•) Ms. ( ) Mrs. ( ) Miss ( )

(b)(6)

Address:

Telephone number(s): (b)(6) (Home)
(Office) Ext.

Fax number: ( )

E-mail address: (b)(6)

8. Are you (or is the Complainant, if you are filing as a representative) covered by a collective bargaining agreement? (Check one.)

( ) Yes ( ) No ( ) I don't know

9. How did you first become aware that you could file a complaint with OSC?

( ) OSC Web site ( ) OSC Speaker ( ) OSC Brochure ( ) OSC Poster
( ) News Story ( ) Agency Personnel Office ( ) Union ( ) Co-worker
(•) Other (*please describe*): Attorneys with (b)(6)

Date (approximate): During year of 2015

10. What is the employment status of the person affected by the suspected prohibited personnel practice or other prohibited activity? (*Check all applicable items - more than one item may apply.*)

a. ( ) Applicant for Federal employment

b. ( ✓ ) Competitive Service

( ) temporary appointment
( ) term appointment
( ✓ ) career or career-conditional appointment
( ) probationary employee

c. ( ) Excepted Service

( ) Schedule A
( ) Schedule B
( ) Schedule C
( ) National Guard Technician
( ) Non-appropriated Fund
( ) Postal Service
( ) Tennessee Valley Authority
( ) VA Dept. of Medicine and Surgery
( ) Veterans Readjustment Act (VRA)
( ) Other (Specify) ______________

d. ( ) Senior Executive Service (SES), Supergrade, or Executive Level

( ) career SES
( ) noncareer SES
( ) career GS-16, 17, or 18
( ) noncareer GS-16, 17, or 18
( ) Executive Level V or above (career) fund
( ) Executive Level V or above (noncareer)
( ) Presidential appointee (Senate-confirmed)

e. ( ) Other

( ) civil service annuitant
( ) former civil service employee
( ) competitive service
( ) excepted service
( ) military officer or enlisted person
( ) contract employee
( ) other (*specify*): ______________
( ) unknown

11. What other action(s), if any, have you taken to appeal, grieve, or report this matter under any other procedure? (*Check all that apply.*)

( ) None, or not applicable — Date: ______________
( ) Appeal filed with Merit Systems Protection Board (MSPB) — Date: ______________
( ) Petition for reconsideration of initial decision filed with MSPB — Date: ______________
Initial Decision No. ______________
( ) USERRA claim filed with VETS (Department of Labor) (Form VETS/USERRA/VP-1010) — Date: ______________
( ) Grievance filed under agency grievance procedure — Date: ______________
( ) Grievance filed under negotiated grievance procedure — Date: ______________
( ) Matter heard by arbitrator under grievance procedure — Date: ______________
( ) Matter is pending in arbitration — Date: ______________
( ) Discrimination complaint filed with agency — Date: ______________
( ) Agency or Administrative Judge (AJ) decision on discrimination complaint appealed to Equal Employment Opportunity Commission — Date: ______________
( ) Appeal filed with Office of Personnel Management — Date: ______________
( ) Unfair labor practice (ULP) complaint filed with Federal Labor Relations Authority General Counsel — Date: ______________
( ) Lawsuit filed in Federal Court — Date: ______________
Court name: ______________
( ) Reported matter to agency Inspector General — Date: ______________
( ) Reported matter to member of Congress — Date: ______________
Name of Senator or Representative: ______________
( ✓ ) Other (*specify*): DEA OPR (b)(6) 14- investigation is still on-going

12. What official is responsible for the violation(s) that you are reporting, and what is his/her employment status? *(See question 10 for appropriate description of employment status. If space is needed to identify more than one official, use Continuation Sheet at page 12.)*

Name: See attached.

Position/Title:

Employment Status:

13. What are the actions or events that you are reporting to OSC? *(To the extent known, specifically list: (a) any suspected prohibited personnel practices or other prohibited activity, other than reprisal for whistleblowing; and (b) any personnel actions involved.* ***(IF YOU ARE ALLEGING REPRISAL FOR WHISTLEBLOWING, SKIP TO PART 2 ON THE NEXT PAGE.*** )

14. Provide details of the actions or events shown in your response to question 13. *(Be as specific as possible about dates, locations, and the identities and positions of all persons mentioned. In particular, identify actual and potential witnesses, giving work locations and telephone numbers when possible. Also, attach any pertinent documents that you may have. Please provide, if possible, a copy of the notification of the agency's proposal and/or decision about the personnel action(s) covered by your request for OSC action. If more space is needed, use Continuation Sheet at page 12.)*

15. What action would you like OSC to take in this matter (that is, what remedy are you asking for?)

## PART 2: REPRISAL FOR WHISTLEBLOWING

***This part of the form is solely for use by persons alleging reprisal for whistleblowing** (that is, persons who believe that personnel actions were taken, not taken, or threatened because of a whistleblower disclosure). Please read the introductory material before answering the questions that follow. If more space is needed, use the continuation sheet at page 12.*

***Complainants not alleging reprisal for whistleblowing should proceed to Part 3 ("Consent to Certain Disclosures of Information"), at page 9.***

### *Reprisal for Whistleblowing Allegations*

As a general rule, it is a prohibited personnel practice to take or fail to take, or threaten to take or fail to take, a personnel action because of a protected disclosure of certain types of information by a Federal employee, former employee, or applicant for Federal employment. 5 U.S.C. § 2302(b)(8).

### *Legal Elements of a Violation*

By law, certain elements must be present before OSC can establish that a legal violation of law has occurred. Two of the required elements that must be established are: (1) that a whistleblower disclosure was made; and (2) that an agency took, failed to take, or threatened to take or fail to take a personnel action because of the whistleblower disclosure. Your description of these elements will help OSC's investigation of your allegation(s).

### *Protected Disclosures*

A disclosure of information is a protected whistleblower disclosure if a Federal employee, former employee, or applicant for Federal employment discloses information which he or she reasonably believes evidences: (a) a violation of any law, rule, or regulation; (b) gross mismanagement; (c) a gross waste of funds; (d) abuse of authority; or (e) a substantial and specific danger to public health or safety.

### *Covered Personnel Actions*

The law prohibiting reprisal for whistleblowing requires proof that one or more of the following personnel actions occurred, or failed to occur, because of a protected disclosure:

(1) an appointment;
(2) a promotion;
(3) an action under 5 U.S.C. chapter 75 or other disciplinary or corrective action;

(4) a detail, transfer, or reassignment;
(5) a reinstatement;
(6) a restoration;
(7) a reemployment;
(8) a decision about pay, benefits, or awards, concerning education or training if the education or training may reasonably be expected to lead to an appointment, promotion, performance evaluation, or other action described in 5 U.S.C. § 2302(a)(2);
(9) a performance evaluation under 5 U.S.C. chapter 43;
(10) a decision to order psychiatric testing or examination; or
(11) any other significant change in duties, responsibilities, or working conditions.

***Reporting Your Allegation(s)***

In the section that starts below (pages 6-8), provide the information requested about all disclosures that you believe led to reprisal by the agency involved. If more space is needed, use extra copies of page 6-8, or the Continuation Sheet at page 12. **If any of the disclosures were in writing, please provide a copy of the disclosure with your complaint**.

**IT IS IMPORTANT THAT YOU LIST ALL DISCLOSURES AND PERSONNEL ACTIONS INVOLVED IN YOUR COMPLAINT**. This is because: (1) failure to list any disclosure or personnel action may delay the processing of your complaint by OSC; and (2) a comprehensive listing will avoid disputes in any later Individual Right of Action (IRA) appeal that you may file with the Merit Systems Protection Board (MSPB) about its jurisdiction to hear case.

Additional allegations of reprisal for whistleblowing may be added to this complaint while it is pending at OSC. Submission of any such additional allegations to OSC **in writing** will help you if you decide to file any later IRA appeal with the MSPB. Form OSC-11a is available for that purpose at OSC's web site, under "Forms."

***Appeal to the Merit Systems Protection Board (MSPB)***

If OSC fails to complete its review of your whistleblower reprisal allegation within 120 days after it receives your complaint, or if it closes your complaint at any time without seeking corrective action on your behalf, you have the right to file IRA appeal with the MSPB. 5 U.S.C. § 1214(a)(3).

***Recordkeeping***

To establish its jurisdiction over any later IRA appeal that you may file, the MSPB will require you to show that the appeal relates to the same whistleblower disclosure(s) and personnel action(s) involved in your complaint to OSC. A copy of the whistleblower reprisal allegations in your complaint, any supporting documentation about those allegations that you sent with the complaint, and any additional allegation of reprisal that you submitted in writing to OSC while the complaint was pending, will serve as proof in any IRA of the disclosure(s) and personnel action(s) involved in your OSC complaint. **IT IS IMPORTANT, THEREFORE, THAT YOU MAKE AND KEEP COPIES OF ALL THESE DOCUMENT FOR YOUR RECORDS.**

**MUST BE COMPLETED FOR ALL DISCLOSURES REPORTED IN THIS COMPLAINT**

**A. WHAT INFORMATION WAS DISCLOSED?**
*(DESCRIBE WHISTLEBLOWER DISCLOSURE).*

See attached documentation prepared by attorneys from (b)(6)

(b)(6)

**1. WHEN WAS THE DISCLOSURE MADE? (MO/DA/YR)**

See attached.

**2. TO WHOM (NAME AND TITLE) WAS THE DISCLOSURE MADE?**

See attached.

**3. DISCLOSURE OF INFORMATION EVIDENCED** ***(check all that apply):***

( ✓ ) VIOLATION OF LAW, RULE, OR REGULATION
( ) GROSS MISMANAGEMENT
( ✓ ) GROSS WASTE OF FUNDS
( ✓ ) ABUSE OF AUTHORITY
( ) SUBSTANTIAL AND SPECIFIC DANGER TO PUBLICHEALTH OR SAFETY
( ) NONE OF THE ABOVE

**4. WHAT PERSONNEL ACTION(S) OCCURRED, FAILED TO OCCUR, OR WAS THREATENED BECAUSE OF THE DISCLOSURE?** *(List all applicable personnel action numbers from pages 4-5).*

See attached at Section D at pages 24-28.

**5. WHEN DID PERSONNEL ACTION(S) OR THREAT(S) OCCUR? (MO/DA/YR)**

**B. WHAT INFORMATION WAS DISCLOSED?**
*(DESCRIBE NEXT WHISTLEBLOWER DISCLOSURE).*

**1. WHEN WAS THE DISCLOSURE MADE? (MO/DA/YR)**

**2. TO WHOM (NAME AND TITLE) WAS THE DISCLOSURE MADE?**

**3. DISCLOSURE OF INFORMATION EVIDENCED** ***(check all that apply):***

( ) VIOLATION OF LAW, RULE, OR REGULATION
( ) GROSS MISMANAGEMENT
( ) GROSS WASTE OF FUNDS
( ) ABUSE OF AUTHORITY
( ) SUBSTANTIAL AND SPECIFIC DANGER TO PUBLICHEALTH OR SAFETY
( ) NONE OF THE ABOVE

**4. WHAT PERSONNEL ACTION(S) OCCURRED, FAILED TO OCCUR, OR WAS THREATENED BECAUSE OF THE DISCLOSURE?** *(List all applicable personnel action numbers from pages 4-5).*

**5. WHEN DID PERSONNEL ACTION(S) OR THREAT(S) OCCUR? (MO/DA/YR)**

**KEEP A COPY OF THIS PAGE FOR YOUR RECORDS**

**MUST BE COMPLETEDFOR ALL DISCLOSURESREPORTEDIN THIS COMPLAINT**

**C. WHAT INFORMATION WAS DISCLOSED?**
*(DESCRIBE NEXT WHISTLEBLOWER DISCLOSURE).*

**1. WHEN WAS THE DISCLOSURE MADE? (MO/DA/YR)**

**2. TO WHOM (NAME AND TITLE) WAS THE DISCLOSURE MADE?**

**3. DISCLOSURE OF INFORMATION EVIDENCED** ***(check all that apply):***

( ) VIOLATION OF LAW, RULE, OR REGULATION
( ) GROSS MISMANAGEMENT
( ) GROSS WASTE OF FUNDS
( ) ABUSE OF AUTHORITY
( ) SUBSTANTIAL AND SPECIFIC DANGER TO PUBLICHEALTH OR SAFETY
( ) NONE OF THE ABOVE

**4. WHAT PERSONNEL ACTION(S) OCCURRED, FAILED TO OCCUR, OR WAS THREATENED BECAUSE OF THE DISCLOSURE?**

**5. WHEN DID PERSONNEL ACTION(S) OR THREAT(S) OCCUR? (MO/DA/YR)**

**D. WHAT INFORMATION WAS DISCLOSED?**
*(DESCRIBE NEXT WHISTLEBLOWER DISCLOSURE).*

**1. WHEN WAS THE DISCLOSURE MADE? (MO/DA/YR)**

**2. TO WHOM (NAME AND TITLE) WAS THE DISCLOSURE MADE?**

**3. DISCLOSURE OF INFORMATION EVIDENCED** ***(check all that apply):***

( ) VIOLATION OF LAW, RULE, OR REGULATION
( ) GROSS MISMANAGEMENT
( ) GROSS WASTE OF FUNDS
( ) ABUSE OF AUTHORITY
( ) SUBSTANTIAL AND SPECIFIC DANGER TO PUBLICHEALTH OR SAFETY
( ) NONE OF THE ABOVE

**4. WHAT PERSONNEL ACTION(S) OCCURRED, FAILED TO OCCUR, OR WAS THREATENED BECAUSE OF THE DISCLOSURE?** *(List all applicable personnel action numbers from pages 4-5).*

**5. WHEN DID PERSONNEL ACTION(S) OR THREAT(S) OCCUR?**

**KEEP A COPYOF THIS PAGE FOR YOURRECORDS**

**MUST BE COMPLETED FOR ALL DISCLOSURES INCLUDED IN THIS COMPLAINT**

3. If you are **not** the person who actually made a disclosure described in boxes A, B, C, D above, please check below to specify the disclosure involved, and provide the name, address, and telephone number of the person who made the disclosure, if known. *(If space is needed to identify more than one person, use Continuation Sheet at page 12.)*

Disclosure: A ( ) B ( ) C ( ) D ( )

Name: ____________________

Address: ____________________

____________________

Telephone number: ( ) ____________ Ext. ________

4. Explain why you believe that the personnel action(s) listed above occurred because of the disclosure(s) that you described. *(Be as specific as possible about any dates, locations, names, and positions of all persons mentioned in your explanation. In particular, identify actual and potential witnesses, giving work locations and telephone numbers, if known. Attach a copy of any documents that support your statements.* ***Please provide, if possible, a copy of the notification of the agency's proposal and/or decision about the personnel action(s) covered by your complaint****. If more space is needed, continue on page 12.)*

See attached documentation prepared by attorneys from (b)(6)
(b)(6)

5. What action would you like OSC to take in this matter (that is, what remedy are you asking for)?

All relief permitted by law.

**KEEP A COPY OF THIS PAGE FOR YOUR RECORDS**

## PART 3: CONSENT TO CERTAIN DISCLOSURES OF INFORMATION

OSC asks everyone who files a complaint alleging a possible prohibited personnel practice or other prohibited activity to select one of three Consent Statements shown below. ***IF YOU DO NOT SELECT ONE OF THE THREE CONSENT STATEMENTS BELOW, OSC WILL ASSUME THAT YOU HAVE SELECTED CONSENT STATEMENT 1.*** Please: (a) select and sign (or check, if filing electronically) one of the Consent Statements below; and (b) keep a copy of the Consent Statement you select (as well as a copy of all documents that you send to OSC) for your own records.

If you initially select a Consent Statement that restricts OSC's use of information, you may later select a less restrictive Consent Statement. If your selection of Consent Statement 2 or 3 prevents OSC from being able to conduct an investigation, an OSC representative will contact you, explain the circumstances, and provide you with an opportunity to select a less restrictive Consent Statement.

You should be aware that the Privacy Act allows information in OSC case files to be used or disclosed for certain purposes, regardless of which Consent Statement you sign. See 5 U.S.C. § 552a(b). Information about certain circumstances under which OSC can use or disclose information under the Privacy Act appears on the next page.

***(Please sign one)***

---

***Consent Statement 1***

I *consent* to OSC's communication with the agency involved in my complaint. I agree to allow OSC to disclose my identity as the complainant, and information from or about me, to the agency if OSC decides that such disclosure is needed to investigate the allegation(s) in my complaint (for example, to request information from the agency, or seek a possible resolution through mediation or corrective action). I understand that regardless of the Consent Statement I choose, OSC may disclose information from my complaint file when permitted by the Privacy Act (including circumstances summarized in Part 5, below).

| Complainant's Signature for Consent Statement 1 | Date Signed |
|---|---|

---

***Consent Statement 2***

I *consent* to OSC's communication with the agency involved in my complaint, but I do not agree to allow OSC to disclose my identity as the complainant to that agency. I agree to allow OSC to disclose only information from or about me, without disclosing my name or other identifying information, if OSC decides that such disclosure is needed to investigate the allegation(s) in my complaint (for example, to request information from the agency, or seek a possible resolution through mediation or corrective action). I understand that in some circumstances (for example, if I am complaining about my failure to receive a promotion), OSC could not maintain my anonymity while communicating with the agency involved about a specific personnel action. In such cases, I understand that this request for confidentiality might prevent OSC from taking further action on my complaint. I also understand that regardless of the Consent Statement I choose, OSC may disclose information from my complaint file when permitted by the Privacy Act (including circumstances summarized in Part 5, below).

| Complainant's Signature for Consent Statement 2 | Date Signed |
|---|---|

---

***Consent Statement 3***

I *do not consent* to OSC's communication with the agency involved in my complaint. I understand that if OSC decides that it cannot investigate the allegation(s) in my complaint without communicating with that agency, my lack of consent will probably prevent OSC from taking further action on the complaint. I understand that regardless of the Consent Statement I choose, OSC may disclose information from my complaint file when permitted by the Privacy Act (including circumstances summarized in Part 5, below).

| Complainant's Signature for Consent Statement 3 | Date Signed |
|---|---|

## PART 4: CERTIFICATION AND SIGNATURE

**I certify that all of the statements made in this complaint (including any continuation pages) are true, complete, and correct to the best of my knowledge and belief. I understand that a false sta** (b)(6) [redacted] **material fact is a criminal offense punishable by a fine of up to $2** [redacted] **to five years, or both. 18 U.S.C. § 1001.**

Si [redacted] (b)(6) [redacted]

## PART 5: PRIVACY ACT / PAPERWORK REDUCTION ACT STATEMENTS

*Routine Uses.* Limited disclosure of information from OSC files is needed to fulfill OSC's investigative, prosecutorial, and related responsibilities. OSC has described 18 routine uses for information in its files in the *Federal Register* (F.R.), at 66 F.R. 36611 (July 12, 2001), and 66 F.R. 51095 (October 5, 2001). A copy of the routine uses is available from OSC upon request. A summary of the routine uses appears below.
OSC may disclose informatiofrom its files in the following circumstances:

1. to disclose that an allegation of prohibited personnel practices or other prohibited activity has been filed;
2. to disclose information to the Office of Personnel Management (OPM) as needed for inquiries involving civil service laws, rules or regulations, or to obtain an advisory opinion;
3. to disclose information about allegations or complaints of discrimination to entities concerned with enforcement of antidiscrimination laws;
4. to the MSPB or the President, when seeking disciplinary action;
5. to the involved agency, MSPB, OPM, or the President when OSC has reason to believe that a prohibited personnel practice has occurred, exists, or is to be taken;
6. to disclose information to Congress in OSC's annual report;
7. to disclose information to third parties as needed to conduct an investigation; obtain an agency investigation and report on information disclosed to OSC's whistleblower disclosure channel; or to give notice of the status or outcome of an investigation;
8. to disclose information as needed to obtain information about hiring or retention of an employee; issuance of a security clearance; conduct of a security or suitability investigation; award of a contract; or issuance of a license, grant, or other benefit;
9. to the Office of Management and Budget (OMB) for certain legislative coordination and clearance purposes;

10. to provide information from an individual's record to a congressional office acting pursuant to the individual's request;
11. to furnish information to the National Archives and Records Administration for records management purposes;
12. to produce summary statistics and work force or other studies;
13. to provide information to the Department of Justice as needed for certain litigation purposes;
14. to provide information to courts or adjudicative bodies as needed for certain litigation purposes;
15. to disclose information to the MSPB as needed in special studies authorized by law;
16. for coordination with an agency's Office of Inspector General or comparable entity, to facilitate the coordination and conduct of investigations and review of allegations;
17. to news media or the public in certain circumstances (except when the Special Counsel determines that disclosure in a particular case would be an unwarranted invasion of personal privacy); and
18. to the Department of Labor and others as needed to implement the Uniformed Services Employment and Reemployment Rights Act of 1994, and the Veterans' Employment Opportunities Act of 1998.

If OSC officials believe that disclosure may be appropriate in a situation not covered by one of OSC's routine uses, or one of the 11 other exceptions to the Privacy Act's general prohibition on disclosure, OSC will seek written authorization from the complainant permitting the disclosure.

*Purposes, Burdens, and Other Information*. An agency may not conduct or sponsor a collection of information, and persons may not be required to respond to a collection of information, unless it: (a) has been approved by OMB, and (b) displays a currently valid OMB control number. The information in this form is collected pursuant to OSC's legal responsibility to investigate: (a) allegations of prohibited personnel practices, to the extent necessary to determine whether there are reasonable grounds to believe that a prohibited personnel practice has occurred, exists, or is to be taken (5 U.S.C. § 1214); and (b) other allegations of prohibited activity (5 U.S.C. § 1216). The information will be reviewed by OSC to determine whether the facts establish its jurisdiction over the subject of the complaint, and whether further investigation and corrective or disciplinary action is warranted. The reporting burden for this collection of information is estimated to be an average of one hour and 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering the data needed, and completing and reviewing the form. Please send any comments about this burden estimate, and suggestions for reducing the burden, to the Office of Special Counsel, Legal Counsel and Policy Division, 1730 M Street, N.W. (Suite 218), Washington, DC 20036-4505. Use of this form to file a complaint alleging a prohibited personnel practice or other prohibited activity is required; use of this to file a complaint alleging only a Hatch Act violation is not required. 5 C.F.R. § 1800.1(d), as amended. As stated in Part 3 of this form, complainants may request that OSC maintain their name, and information provided by them, in confidence.

## CONTINUATION SHEET

| Part No | Item/Question No | Response Continuation |
|---|---|---|
| | | |

**KEEP A COPY OF THIS PAGE FOR YOUR RECORDS IF YOU ARE ALLEGING REPRISAL FOR WHISTLEBLOWING**

(b)(6)

(b)(6)

PURSUANT TO 5 USC 1213
PROPOSED ISSUES FOR MR. (b)(6) DISCLOSURE

As referenced in the OSC Form 12, below are Mr. (b)(6) requests for issues to be investigated pursuant to 5 USC 1213(c).

(b)(6)

(b)(6)

Part 2A of Form OSC-11

**MR. (b)(6) [redacted] HAS ESTABLISHED A PRIMA FACIE CLAIM UNDER THE WHISTLEBLOWER PROTECTION ACT**

**A. Introduction**

(b)(6) [redacted]

**B. Mr. (b)(6) [redacted] was subjected to prohibited personnel actions under the WPEA.**

To establish a claim under the Whistleblower Protection Act (hereinafter "WPA" or "statute"), *see* 5 U.S.C. § 2302 (b)(8), the appellant must show that: "(1) the acting official has the authority to take, recommend, or approve any personnel action; (2) the aggrieved employee made a *disclosure protected* under section 2302(b)(8); (3) the acting official used his authority to take, or refuse to take, a personnel action against the aggrieved employee; (4) the acting official took, or failed to take, the personnel action against the aggrieved employee because of the protected disclosure." *Eidmann v. Merit Sys. Protection Bd.*, 976 F.2d 1400, 1407 (Fed. Cir. 1992). *Webb v. Department of Interior*, 122 MSPR 248 (Jan. 12. 2015).

(b)(6) [redacted]

(b)(6)

**C. Mr. (b)(6) Disclosures Are Protected.**

The myriads of disclosures made by Mr. (b)(6) are undoubtedly protected under the WPA and the WPEA. To establish protected conduct, an appellant must demonstrate by a preponderance of the evidence that he reasonably believed his disclosure evidences misconduct listed in section 2302(b)(8) (e.g. violation of law or regulation, gross government waste or mismanagement, abuse of authority, or a substantial and specific danger to public health or safety). Since passage of the Whistleblower Protection Enhancement Act, it, disclosures to a supervisor are protected, whether or not the official has any corrective action authority. Further, it is irrelevant if the audience is a suspected wrongdoer. 5 USC 2302 section (f)(1)(A); *Nasuti v. Dep't of State*, 2014 MSPR 12. The appellant need not show that -- misconduct actually occurred, *Shannon v. DVA*, 2014 MSPB 41; the disclosure was in fact correct, *Mithen v. DVA*, 2015 MSPB 38 (2015); *Juffer v. USIA*, 80 MSPR 81, 86-87 (1998), or even was properly motivated. *D'Elia v. Dept of Treasury*, 65 MSPR 540, 543 (1994). Rather, the appellant must simply show that a disinterested observer with the same knowledge could reasonably conclude the disclosure evidenced a misconduct listed in section 2302(b)(8). *Mithen, supra, citing Drake v. AID*, 543 F.3d 1377, 1382 (Fed. Cir., 2008); *Lachance v. White*, 174 F.3d 1378, 1381 (Fed. Cir. 1999). Moreover, while retaliation must be established rather than a mere causal link, disclosures made "in the normal course of one's job duties" do not lose their protected status under the WPEA. 5 USC section 2302(f)(2); *Coulter, supra.* It is not necessary to cite specific rules or regulations, if the employee provides "sufficiently detailed statements to implicate an

identifiable violation." *Benton-Flores v. Department of Defense,* 2014 MSPB 60, *slip op.* at 9 n.3; *Chavez v. DVA, 120 MSPR 285* (2013), *slip op.* at 9.

(b)(6)

(b)(6)

(b)(6)

(b)(6)

(b)(6)

(b)(6)

(b)(6)

(b)(6)

(b)(6)

(b)(6)

(b)(6)

**Complaint of Prohibited Personnel Practices**
(b)(6)
**Page 26**

(b)(6)

(b)(6)

(b)(6)

**D. DEA Officials Used Their Authority to Take Retaliatory Action Against Mr. (b)(6)**

In an IRA appeal, a "personnel action" is defined as: (1) an appointment; (2) a promotion; (3) an adverse action under 5 U.S.C. §75 or other disciplinary or corrective action; (4) a detail, transfer, or reassignment; (5) a reassignment; (6) a restoration; (7) a reemployment; (8) a performance evaluation under 5. U.S.C. Chapter 43; (9) a decision concerning pay, benefits, or awards, or concerning education or training; (10) a decision to order psychiatric testing or examination; or (11) any other significant change in duties, responsibilities, or working conditions. 5 C.F.R. §1209.4.

Here, Agency officials took personnel actions against Mr. (b)(6) by:

(b)(6)

(b)(6)

(b)(6)

(b)(6) [redacted]

**E. Causation/Nexus Requirement**

Finally, the personnel actions cited in Part I(D), *supra*, were caused by the protected disclosures discussed in Part I(A), *supra*. To satisfy this prong, an appellant must show that a personnel action was taken or not taken *because* of a protected disclosure. For Individual Right of Action appeals, an appellant need only show that her protected activity was a "contributing" factor in the adverse action, which means that it tends to affect the outcome "in any way." *Eidmann*, 976 F.2d at 1405.

There are many ways to demonstrate that an employee's disclosure was a "contributing factor." One way is to show that the deciding official knew, or had constructive knowledge of the disclosure, and acted within such a period of time that a reasonable person would conclude that disclosure was a factor; this is frequently referred to as the knowledge/timing test. *See Wagner v. EPA*, 51 MSPR 337, 342 n.6 (1991). With regard to the "time" component of the knowledge/timing test, the "reasonable time" standard is to be liberally applied. *Kewley v. DHHS*, 153 F.3d 1357, 1363 (Fed. Cir. 1998). Generally, any action within one to two years within the same performance evaluation period would normally be considered within a reasonable time. *Id. Boyd v. Dep't of Homeland Sec.*, 2015 MSPB LEXIS 5631, p. 10 (June 25, 2015); *Chavez v. Department of Veterans Affairs*, 120 M.S.P.R. 285, p. 27 (2013); *Shibuya v.*

*USDA*, 2013 MSPB LEXUS 44, p.24; *Gonzalez v. Department of Transportation*, 109 M.S.P.R. 250, p. 20 (2008); *Redschlag v. Department of the Army*, 89 M.S.P.R. 589, p. 87 (2001).

With regard to the "knowledge" component, the appellant must be able to show actual or constructive knowledge in order to make a prima facie case for reprisal. Constructive knowledge may be imputed to acting agency officials by showing that the officials who influenced or consulted the acting official(s) had either actual or constructive knowledge. *McClellan v. Dep't of Defense*, 53 M.S.P.R 139 (1992).

Significantly, the knowledge/timing test is dispositive as a matter of law to satisfy the nexus element. This is the case, even if an examination of the whole record would not support a conclusion that protected activity was a contributing factor to the challenged personnel action. *Schnell v. Dep't Army*, 114 M.S.P.R. 83 (2010), 2010 MSPB LEXUS 67, p. 21; *Carey v. DVA*, 93 M.S.P.R. 676 (2003).

The knowledge-timing test is not the only way to prove the contributing factor element, which also can be proved by circumstantial evidence. For three decades it has been established that nexus can be established through circumstantial evidence. Principal criteria include the employer's reaction to protected disclosures; discriminatory treatment compared to before making the disclosure; extent of disclosures; significance of the charges; motive to retaliate, and the chilling effect. *See, e.g., Boyd, supra; Stiles v. Department of Homeland Security*, 116 M.S.P.R. 263, p. 24 (2011); *Valerino v. Department of Health and Human Services*, 7 M.S.P.R. 347 (1981); *Fellhoelter v. Dep't Agriculture*, 568 F. 3d 965, 971 (Fed. Circ. 2009); *Sheehan v. Dep't Navy*, 230 F.3d 1009, 1014 (2001); *Webster v. Dep't of the Army*, 911 F.2d 689, 690 (Fed.Cir. 1990).

(b)(6)

(b)(6)

(b)(6)

(b)(6)

## CONCLUSION

Therefore, Mr. (b)(6) respectfully submits the Office of Special Counsel to find that the Agency has taken numerous prohibited personnel practices against him because of his protected disclosures. (b)(6) Mr. (b)(6) requests that the Office of Special Counsel take affirmative action to correct the Agency's acts of impunity.

(b)(6)

**Formal Complaint of Discrimination**
**Attachment Form**

Complainant, Mr. (b)(6) through counsel, raises allegations of retaliation for his EEO protected activity. On or about

(b)(6)

# EXHIBIT Q

VC: (b)(6) [redacted]

**ACCEPTANCE FORM**
**FOR PAYMENT UNDER 31 U.S.C. § 3724**

**PAYEE(S):** (b)(6) [redacted]

**TAX IDENTIFICATION NUMBER**
**SOCIAL SECURITY NUMBER:** (b)(6) [redacted]

**ADDRESS:** (b)(6) [redacted]

**DATE CLAIM OCCURRED:** (b)(6) [redacted] **2011**

**AMOUNT OF AWARD, COMPROMISE OR SETTLEMENT: $27,729.00**

**BRIEF DESCRIPTION OF CLAIM: Truck Load of Frozen French Fries**

**ACCEPTANCE BY CLAIMANT**

I, (We), the claimant(s), do hereby accept the within stated award, compromise or settlement as final and conclusive on me (us), and agree that said acceptance constitutes a complete release by me (us) of any claim against the United States and the employees (s) of the United States whose act or omission gave rise to the claim, by reason of the same subject matter.

**DATE:** (b)(6) [redacted] -12

(b)(6) [redacted]
**CLAIMANT**

This claim has been fully examined in accordance with the provisions of 31 U.S.C. § 3724 and is approved in the amount of **$27,729.00.**

**DATE:** (b)(6) [redacted] /12

Karen K. Richardson
Associate Chief Counsel
Civil Litigation Section

Attachments
IRS Form W-9
DEA Form 137B

(b)(6) [redacted]

# CLAIM FOR DAMAGE, INJURY, OR DEATH

INSTRUCTIONS: [illegible]

FORM APPROVED OMB NO. [illegible]

1. Submit To Appropriate Federal Agency:
Department of Justice

2. Name, Address of claimant and claimant's personal representative, if any. [illegible]
(b)(6)

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
| --- | --- | --- | --- | --- |
| MILITARY / (CIVILIAN, circled) | N/A | N/A | (b)(6) 2011 | Approx 1400 |

8. Basis of Claim [illegible]

DEA CONDUCTED A WARRANT ARREST ON AN EMPLOYEE of (b)(6) When they arrested HIM THEY OPENED THE LOADED TRAILER of FRENCH FRIES FOR (b)(6) REJECTED FRIES DUE TO FOOD SAFETY CONCERNS.

9. PROPERTY DAMAGE

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, street, city, State, and ZIP Code)
N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on reverse side.)
LOAD OF FRENCH FRIES.

10. PERSONAL INJURY/WRONGFUL DEATH

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.
N/A

11. WITNESSES

| NAME | ADDRESS (Number, street, city, State, and ZIP Code) |
| --- | --- |
| (b)(6) | (b)(6) |

12. AMOUNT OF CLAIM (in dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) |
| --- | --- | --- | --- |
| $27,729 | Ø | Ø | $27,729.00/100 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.) | 13b. Phone number of [illegible] | 14. DATE OF CLAIM |
| --- | --- | --- |
| (b)(6) | (b)(6) | 2011 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
| --- | --- |
| The claimant shall forfeit and pay to the United States the sum of $2,000, plus double the amount of damages sustained by the United States. (See 31 U.S.C. 3729.) | Fine of not more than $10,000 or imprisonment for not more than 5 years or both. (See 18 U.S.C. 287, 1001.) |

Previous editions not usable.

STANDARD FORM 95 (Rev. 7-85)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

* See attached letter

## PRIVACY ACT NOTICE

[illegible]

## INSTRUCTIONS

[illegible]

[illegible]

## INSURANCE COVERAGE

[illegible]

15. [illegible] ☐ YES [illegible] ☒ NO

16. [illegible]

NO COVERAGE

17. [illegible]

———

18. [illegible]

N/A

19. [illegible] ☐ YES [illegible] ☐ NO

SF 95 (Rev. 7-85) BACK

(b)(6)

(b)(6)

(b)(6) 2011

To: (b)(6)

From: (b)(6)

On (b)(6) 11, at approximately 1300 hours, the driver of (b)(6) truck trailer, license (b)(6) was arrested for an outstanding warrant in (b)(6) (b)(6) (at (b)(6)

Pursuant to the driver's arrest, (b)(6) agents inspected the trailer for any illegal contraband. The trailer was opened with a key provided by the driver and (b)(6) agents twisted the security cable to unlock the trailer door. Agents visually inspected the trailer and found that it contained boxes labeled "curly fries" destined to be delivered to the (b)(6) No illegal contraband was located and (b)(6) agents then locked and secured the trailer door.

The tractor and trailer was then turned over to a representative of the (b)(6) (b)(6)

If you should have any further questions, please contact (b)(6) (b)(6) at (b)(6)

Respectfully,
(b)(6)

**CLAIM FOR DAMAGE, INJURY, OR DEATH**

**INSTRUCTIONS:** Please read carefully the instructions on the reverse side and supply information requested on both sides of the form. Use additional sheet(s) if necessary. See reverse side for additional instructions.

FORM APPROVED OMB NO. 1105-0008

**1. Submit To Appropriate Federal Agency:**
Drug Enforcement Administration
Attn: Tort Claims
8701 Morrissette Drive
Springfield, VA 22152

**2. Name, Address of claimant and claim** (b)(6)
*(See instructions on reverse.) (Numb*
(b)(6)

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. or P.M.) |
|---|---|---|---|---|
| ☐ MILITARY ☒ CIVILIAN | (b)(6) | Single | Wed. (b)(6) 13 | 12:30 P.M. |

**8. Basis of Claim** *(State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof) (Use additional pages if necessary.)*

On (b)(6) 2013 at the (b)(6) County Department of Corrections Internal Affairs office in (b)(6) agents of the DEA falsely arrested claimant and initiated a malicious prosecution in the (b)(6) (b)(6) which ended in a voluntary dismissal by the Government on (b)(6) 2013. Claimant was suspended from his position as a (b)(6) suffering lost wages, mental and emotional trauma and damage to his reputation.

**9. PROPERTY DAMAGE**

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT *(Number, street, city, State, and Zip Code)*

N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. *(See instructions on reverse side.)*

N/A

**10. PERSONAL INJURY/WRONGFUL DEATH**

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

2 days false imprisonment, one month lost wages, permanent mental and emotional trauma and defamation.

**11. WITNESSES**

| NAME | ADDRESS (Number, street, city, State, and Zip Code) |
|---|---|
| (b)(6) | (b)(6) County Corrections |

**12.** *(See instructions on reverse)* **AMOUNT OF CLAIM** *(In dollars)*

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) |
|---|---|---|---|
| | 5,000,000.00 | | 5,000,000.00 |

**I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.**

| 13a. SIGNATURE ... side.) | 13b. Phone number of signatory | 14. DATE OF CLAIM |
|---|---|---|
| (b)(6) | (b)(6) | (b)(6) 13 |

**...ALTY ... PRESENTING FRAUDULENT CLAIM**

The claimant shall forfeit and pay to the United States the sum of $2,000 plus double the amount of damages sustained by the United States. *(See 31 U.S.C. 3729.)*

**CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS**

Fine of not more than $10,000 or imprisonment for not more than 5 years or both. *(See 18 U.S.C. 287, 1001.)*

95-109
*Previous editions not usable.*

*NSN 7540-00-634-4046*

*STANDARD FORM 95 (Rev. 7-85) (EG)*
*PRESCRIBED BY DEPT. OF JUSTICE*
*28 CFR 14.2*

# CLAIM FOR DAMAGE, INJURY, OR DEATH

INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions.

FORM APPROVED
OMB NO.
1105-0008

1. Submit To Appropriate Federal Agency

**Drug Enforcement Administration**
**Office of Chief Counsel**
**8701 Morrissette Drive**
**Springfield, VA 22152**

2. Name, Address of claimant and claimant's personal representative, if any *(See instructions on reverse.) (Number, street, city, State and ZIP Code)*

(b)(6)

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME *(A.M. OR P.M.)* |
|---|---|---|---|---|
| ☐ MILITARY ☐ CIVILIAN | | | | |

8. Basis of Claim *(State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurence and the cause thereof.) (Use additional pages if necessary.)*

(b)(6)

PROVIDED PREVIOUSLY UNDER SEPARATE COVER. SEE ENCLOSED.

## 9. PROPERTY DAMAGE

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT *(Number, street, city, State, and ZIP Code)*

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. *(See instructions on reverse side.)*

PROVIDED PREVIOUSLY UNDER SEPARATE COVER

## 10. PERSONAL INJURY/WRONGFUL DEATH

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

## 11. WITNESSES

| NAME | ADDRESS *(Number, street, city, State, and ZIP Code)* |
|---|---|
| | |

## 12. *(See instructions on reverse)* AMOUNT OF CLAIM *(In dollars)*

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL *(Failure to specify may cause forfeiture of your rights.)* |
|---|---|---|---|
| $500 | $10,000 | – | $10,500* |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT *(See instructions on reverse side.)* | 13b. Phone number of signatory | 14. DATE OF CLAIM |
|---|---|---|
| (b)(6) by (b)(6) ESQ. COUNSEL | (b)(6) | (b)(6) /15 |

**CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM**

The claimant shall forfeit and pay to the United States the sum of $2,000, plus double the amount of damages substained by the United States.

*(See 31 U.S.C. 3729.)*

**CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS**

Fine of not more than $10,000 or imprisonment for not (b)(6) r both. *(See 18 U.S.C. 287, 1001.)*

*Previous editions not usable.*

STANDARD FORM 95 (Rev. 7-85)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

* MS (b)(6) RESERVES RIGHT TO SUE FOR ADDITIONAL PERSONAL DAMAGES AND PUNITIVE DAMAGES IN THE EVENT HER CLAIM IS NOT RESOLVED PROMPTLY AT ADMINISTRATIVE LEVEL.

# EXHIBIT R

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**(b)(6) OFFICE**

(b)(6)
Appellant,

v.

DEPARTMENT OF JUSTICE,
Agency.

DOCKET NUMBER
(b)(6)

DATE: (b)(6) 2012

(b)(6) Esquire, (b)(6) for the appellant.

(b)(6) Esquire, and (b)(6) Esquire, Springfield, Virginia, for the agency.

**BEFORE**
(b)(6)
Administrative Judge

**INITIAL DECISION**

The appellant filed a petition for attorneyfees and costs incurred in connection with his appeal of his removalwhich was reversed by the full Board. AttorneyFee File (AFF), Tabs (b)(6) *See* (b)(6) v. *Department of Justice*, (b)(6) (2012). The Board has jurisdiction over the petition for attorneyfees pursuant to 5 U.S.C. § 7701(g)(1); 5 C.F.R. § 1201.202(a)(2). For the following reasons, the appellant's motion for attorneyfees and costs is GRANTED in part and DENIED in part.

BACKGROUND

At the time of his removal, the appellant was employed in the position of (b)(6) GS-(b)(6) at the Drug Enforcement Administration

(DEA), in (b)(6) Agency File (Ag. File),[1] Tab (b)(6) On (b)(6) 2010, (b)(6) Human Resources Division, proposed the appellant's removal from Federal service based on two charges: (1) Conduct Unbecoming a DEA (b)(6) (one specification); and (2) Making False Statements (two specifications). *Id.* at Tab (b)(6) The appellant filed a written response to the proposed removal. *Id.* at Tab (b)(6) By letter dated (b)(6) 2010, the deciding official, (b)(6) Human Resources Office, sustained the removal action. *Id.* at Tab (b)(6) The agency's charges were based on events which occurred when the appellant was employed as a (b)(6) GS (b)(6) in DEA's (b)(6) Resident Office. The appellant filed an appeal of the agency's action. *See* (b)(6) *v. Department of Justice*, MSPB Docket No (b)(6) Initial Appeal File (IAF), Tab (b)(6)

By initial decision dated (b)(6) 2011, I affirmed the agency's action. *Id.* at Tab (b)(6) The appellant filed a petition for review with the full Board. On (b)(6) 2012, the Board reversed the appellant's removal based on its determination that the agency's removal action violated the appellant's due process rights. (b)(6)

On (b)(6) 2012, the appellant filed the instant motion for attorney fees.[2] AFF, Tab (b)(6) The appellant sought$52,208.00, representing 260.04 hours of attorney time at $200.00 per hour, plus an additional $6,741.18 related to costs associated with this action. AFF, Tab (b)(6) The agency conceded the appellant's entitlement to fees in the amount of $52,008.00 and the appellant submitted an unopposed motion agreeing to an order for payment of attorney fees in that

---

[1] The agency file is found in the initial appeal file at tab (b)(6)

[2] The appellant also filed a petition for enforcement. *See* (b)(6) *v. Department of Justice*, MSPB Docket No. (b)(6) As the parties reached a resolution on the issues contained therein, the appellant withdrew that petition and the appeal was dismissed by initial decision dated (b)(6) 2012.

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**(b)(6) OFFICE**

| | | |
|---|---|---|
| (b)(6)<br>Appellant,<br><br>v.<br><br>DEPARTMENT OF JUSTICE (Drug Enforcement Administration (DEA)),<br>Agency. | ) | DOCKET NUMBER<br>(b)(6) |

**SETTLEMENT AGREEMENT CONCERNING ATTORNEY'S FEES AND COSTS**

WHEREAS, as the prevailing party in this action, Appellant (b)(6) is entitled to receive payment of reasonable attorney's fees and costs;

WHEREAS, the parties wish to resolve the issues of attorneys fees and costs without further litigation;

WHEREAS, counsel for Appellant has filed a timely motion for attorney's fees and costs with a supporting Memorandum of Law and Declaration, in which Appellant seeks compensation at the rate of $250.00 per hour, which the Agency agrees is in conformity with prevailing rates in the relevant legal community;

NOW, THEREFORE, in consideration of the foregoing recitals and the promises and acts set forth below, it is hereby agreed as follows:

1. The United States Department of Justice, Drug Enforcement Administration (DEA) agrees to pay Appellant the sum of $59,000.00 (Fifty-Nine Thousand Dollars) in full and final accord and satisfaction of all claims for attorney's fees and costs in this litigation through the effective date of this Agreement.

2. Appellant agrees to waive any claims for further attorney's fees and costs relating to this matter through the effective date of this Agreement.

3. Other than the payment described in paragraph 1, above, each party shall be responsible for its own fees and costs.

4. This Agreement represents the full and complete agreement of the parties. No other promises or agreements will be binding unless reduced to writing and signed by both parties.

5. The parties agree that this Agreement will be filed with the Merit Systems Protection Board, which will retain jurisdiction for the limited purpose of enforcing this Agreement.

6. This Agreement will be deemed fully executed and effective on the date that the last of the parties or parties' representatives, signs the Agreement.

Bettie E. Goldman
Assistant Deputy Chief Counsel

(b)(6) Senior Attorney
Office of Chief Counsel
Civil Litigation Section
U.S. Department of Justice
Drug Enforcement Administration
8701 Morrissette Drive
Springfield, Virginia 22152
Telephone (b)(6)
Facsimile

Agency Representatives

## BACKGROUND

In 1993, the Class Agent (CA), a GS-13 Special Agent (SA), filed a class complaint alleging that the Agency discriminated against her and similarly situated females on the basis of sex (female) when it denied female SAs foreign assignments. In 1998, the Commission issued a decision certifying a class consisting of "those female [SAs] who were denied foreign assignments between 1990 and 1992." (b)(6) v. Dep't of Justice, EEOC Request No. 05960870 (Oct. 1, 1998).

On April 27, 2011, after a nine-day hearing, an EEOC Administrative Judge (AJ) issued a decision, titled "Class Action Interim Hearing Decision," finding liability against the Agency. On October 7, 2011, the Agency filed a motion to decertify the class, in which it asserted that the AJ's April 27, 2011 decision was contrary to the new standards for class certification set forth by the Supreme Court in Wal-Mart Stores, Inc. v. Dukes, 564 U.S. ___, 131 S. Ct. 2541 (June 20, 2011).[1] On January 12, 2012, the AJ denied the Agency's motion and issued a report of findings and recommendations. The report included the AJ's previously issued finding of liability, and also included the recommended remedies to make CA whole. On March 13, 2012, the Agency issued a final decision rejecting the findings and recommendations of the AJ.

*Appellate Decision*

The appellate decision reversed the Agency's final decision.

First, the appellate decision affirmed the AJ's denial of the Agency's 2011 motion to decertify the class. Specifically, citing General Telephone Co. v. Falcon, 457 U.S. 147, fn. 16 (1982), the appellate decision noted that a judge may alter or amend a class certification order before the decision on the merits. The appellate decision, however, found that the AJ had issued a final decision on the merits on April 27, 2011 - almost two months before Wal-Mart. The appellate decision found that it was clear from the AJ's April 27, 2011 decision that the findings on the merits were final and that the only remaining issue was relief.

Second, the appellate decision determined that there was substantial evidence in the record to support the AJ's finding of class-wide disparate impact on the basis of sex for foreign assignments at GS grades 11-13. Specifically, the appellate decision found that there was substantial evidence in the record to support the following findings by the AJ: (a) the class identified the existence of a selection process within the Office of International Operations that was highly subjective and lacked clear guidelines; (b) the class's expert presented evidence

[1] In Wal-Mart, the Court held, among other things, that the certification of a nationwide class of 1.5 million female employees was not consistent with the commonality requirement of Rule 23(a) of the Federal Rules of Civil Procedure. Specifically, the Court found that the evidence presented by members of the putative class did not rise to the level of significant proof that the company operated under a general policy of discrimination.

# MERIT SYSTEMS PROTECTION BOARD

## Appeal of Agency Personnel Action or Decision (Non-retirement)

*Please type or print legibly.*

6. With respect to the agency personnel action or decision you are appealing, have you, or has anyone on your behalf, filed a grievance under a negotiated grievance procedure provided by a collective bargaining agreement?

☐ Yes ☑ No

7. If your answer to question 6 is "Yes," on what date was the grievance filed (month, day, year)?

NOT APPLICABLE

8. If your answer to question 6 was "Yes," has a decision on the grievance been issued?

NOT APPLICABLE

9. Did you file a whistleblowing complaint with the Office of Special Counsel (OSC)?

☐ Yes ☑ No

10. Have you received written notice that the Office of Special Counsel made a decision or terminated its investigation?

NOT APPLICABLE

11. Did you file a complaint on this matter with the Department of Labor (DOL)?

☐ Yes ☑ No

12. Has the Department of Labor notified you that your USERRA or VEOA complaint could not be resolved?

NOT APPLICABLE

Appeal Number: (b)(6)
Submission Date: (b)(6) 2013 (b)(6) AM
Confirmation Number: (b)(6)

# e-Appeal Attachment Transmittal

**Appeal Number:** (b)(6)
**Appellant Name:**
**Agency Name:** **Department of Justice**

Please check the box for each document included with this transmittal.

| | Name of Attachment | Attachment Processing Status | File Name/Delivery Method |
|---|---|---|---|
| | Designation of Representative Form | Upload with e-Appeal | Designation Executed.pdf |
| | Agency Proposal Letter | Upload with e-Appeal | Proposal Letter 2.pdf |
| | Agency Decision Letter | Upload with e-Appeal | Decision Letter 2.pdf |
| | SF-50, Notification of Personnel Action | Document not available or not applicable | N/A |

2 copies must be submitted of all documents submitted in hardcopy.
Send documents to be submitted in paper form to:
(b)(6)
United States of America

Phone: (b)(6)
Fax:

UNITED STATES OF AMERICA
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
(b)(6) OFFICE

| | |
|---|---|
| (b)(6)<br>Complainant,<br><br>v.<br><br>DEPARTMENT OF JUSTICE,<br>Agency. | EEOC No. (b)(6)<br><br>Agency Nos. DEA-(b)(6)<br>DEA-<br><br>Administrative Judge<br>(b)(6) |

FULL AND FINAL SETTLEMENT AGREEMENT
AND RELEASE OF ALL CLAIMS

This FULL AND FINAL SETTLEMENT AGREEMENT AND RELEASE OF ALL CLAIMS ("Agreement") is hereby made between Complainant (b)(6) and the United States Department of Justice, Drug Enforcement Administration (DEA) (the "Agency").

1. In consideration for the promises made by Complainant (b)(6) as set forth in paragraph 2 of this Agreement below, the Agency agrees to pay one hundred thousand dollars ($100,000.00) ("Settlement Sum") to (b)(6) Said Settlement Sum is in consideration of (b)(6) execution of this Agreement and agreement to waive any and all claims (b)(6) (b)(6) raised or could assert arising out of the facts and circumstances giving rise to Equal Employment Opportunity (EEO) Complaints (b)(6) Within fourteen (14) days of the execution of this Agreement, the Agency will process the amount of the Settlement Sum and submit the necessary information to the Department of Treasury for payment.

2. In consideration for the promises made by the Agency, including those set forth in paragraph 1 of the Agreement above, (b)(6) agrees to voluntarily dismiss with prejudice

**United States of America**
**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**(b)(6) Office**

(b)(6)

Complainant

vs.

EEOC Case No (b)(6)
Agency No. DEA-(b)(6)
AJ: Hon. (b)(6)

Eric H. Holder, Jr., Attorney General,
DEPARTMENT OF JUSTICE,
Agency

## SETTLEMENT AGREEMENT

WHEREAS, (b)(6) (Complainant) filed the above-captioned consolidated complaint before the Equal Employment Opportunity Commission (EEOC);

WHEREAS, both DEA and Complainant wish to dispose of this matter without a hearing or further litigation;

NOW, THEREFORE, in consideration of the foregoing recitals and promises and acts hereinafter stated, it is hereby agreed as follows:

1. The parties do hereby agree to settle and compromise this action upon the terms indicated below.

2. Complainant declares that he understands the terms and conditions of this Agreement, and is freely and voluntarily entering into this Agreement and to the terms and conditions set forth herein. Furthermore, Complainant agrees that he is not under any duress or coercion of any kind by anyone to enter this Agreement, and that he was represented by counsel and enters into this Agreement after consultation with, and on the advice of, his counsel. Further, it is agreed that Complainant is mentally and physically fit so as to comprehend the terms of this Agreement in its entirety.

3. DEA agrees to pay Complainant $40,000. DEA will directly deposit the amount into Complainant's counsel's bank account. Complainant's counsel will provide DEA with the necessary information and paperwork to facilitate the deposit. DEA agrees to complete the necessary paperwork to effectuate payment and submit it to United Financial Management System (UFMS) within thirty days of receipt of Complainant's counsel's payment information.

4. DEA will ensure that Complainant's Official Personnel File ("OPF") does not contain a copy of the document known as the (b)(6) Letter" dated (b)(6) 2010, and shall provide Complainant with confirmation of the same through email to his representative within thirty days of the effective date of this agreement.

5. DEA will ensure that Complainant's OPF does not contain a copy of the document known as the (b)(6) Letter," dated (b)(6) 2010, and shall provide Complainant with confirmation of the same through email to his representative within thirty days of the effective date of this agreement.

6. DEA will ensure that the (b)(6) Letter and the (b)(6) Letter are not retained in any supervisory or "drop" files, and shall provide Complainant with confirmation of the same through email to his representative within thirty days of the effective date of this agreement.

7. DEA will re-issue Complainant's (b)(6) performance appraisal, with a rating of "excellent" as to each element and an overall rating of "excellent." The revised performance appraisal will replace the existing (b)(6) performance appraisal in Complainant's Employee Performance File ("EPF"), and DEA shall provide Complainant with confirmation of the same through email to his representative within sixty days of the effective date of this agreement. Complainant's EPF and OPF records will be subject to standard retention schedules as published by the Office of Personnel Management.

8. This Agreement does not constitute and will not constitute or be construed as an admission of liability or violation of any law, regulation, order, or rule by DEA, nor shall this agreement constitute an admission by Complainant that he violated any law, regulation, order, or rule.

9. Complainant hereby agrees that within five (5) days of the date of execution of this Agreement he will voluntarily dismiss with prejudice the above-captioned case, as well as all other claims, causes of action, appeals, grievances, and complaints now pending against DEA before the EEOC or in any forum. This includes all actions now pending, whether as grievances, EEO complaints, MSPB appeals, or Freedom of Information Act requests within DEA or the Department of Justice or before any administrative agency or court, including, but not limited to, the Merit Systems Protection Board, Equal Employment Opportunity Commission, Office of Special Counsel, and United States District Courts or Courts of Appeal. Further, Complainant hereby waives any and all potential claims, appeals, causes of action, grievances, actions, complaints, or rights of appeal, that he may have, or has had, arising out of his employment with DEA, against the United States or its officers or employees through the effective date of this agreement.

10. Complainant agrees that no further action based upon the facts and circumstances giving rise to this Agreement shall be brought by him before any court or administrative tribunal.

11. Each party will waive, abandon, and release the other party, its officers, employees, assigns, heirs, and agents from any action, suit, claim, grievance, or demand, regarding the incidents and circumstances arising from or related to the above-captioned case.

12. This Agreement represents the full and complete agreement of the parties hereto. No other promises or agreements will be binding unless placed in writing and signed by both parties.

13. The terms and provisions of this Agreement shall be executed in good faith.

14. Each party shall be responsible for its/his own costs and attorney's fees arising from or related to the above-captioned case.

15. The parties agree that this settlement agreement will be filed with the EEOC , which will retain jurisdiction of the matter only for the purpose of enforcing the terms of this Agreement.

16 The terms of this Agreement will not establish any precedent and will not be used as a basis by Complainant or any representative of Complainant to seek or justify similar terms in any other case.

17. This Agreement will be deemed to be fully executed upon the date that the last of the parties, or parties' representatives, affixes her signature hereto.

KAREN K. RICHARDSON, ESQ.
Associate Chief Counsel

(b)(6)
Senior Attorney
Drug Enforcement Administration
Office of Chief Counsel (CCL)
8701 Morrissette Drive
Springfield, VA 22152
Telephone: (202) 353 (b)(6)
Facsimile: (202) 307

Counsel for the Agency

(b)(6)

-4-

(b)(6)

Counsel for Complainant

(b)(6)

Complainant

**Approval of Payment**

**"This is to verify that all of the administrative determinations have been made, that the payment is legal, proper and correct for payment."**

| | |
|---|---|
| **Amount** | $40,000.00 |
| **Obligation Doc No** | (b)(6) |
| **Signature** | [signature] |
| **Print Name** | **Bettie E. Goldman** |
| **Title** | **Assistant Deputy Chief Counsel** |
| **Date Approved** | (b)(6) /2014 |

Office of Chief Counsel
REC'D (b)(6) REC'D
CD (b)(6) /2014

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| (b)(6); (b)(7)(C) | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No (b)(6); (b)(7)(C) |
| | ) | (Judge (b)(6); (b)(7)(C) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

SETTLEMENT AGREEMENT

For the purpose of disposing of the claims brought in plaintiff's Motion For Sanctions, filed on (b)(6); (b)(7)(C) 2012, without any further judicial proceedings and without there being any adjudication of any issue of law or fact, and without constituting an admission of liability on the part of either party, and for no other purpose, the parties stipulate and agree as follows:

1. In 1997, plaintiff, (b)(6); (b)(7)(C), filed this lawsuit at the United States Court of Federal Claims.

2. Since that time, the parties have engaged in discovery and the Court has conducted the trial of this case.

3. Throughout the pendency of the case, there have been a number of discovery disputes between the parties. The disputes culminated with (b)(6); (b)(7)(C) filing a Motion For Sanctions on (b)(6); (b)(7)(C) 2012. The Government responded to the Motion For Sanctions, (b)(6); (b)(7)(C) (b)(6); (b)(7)(C) filed a reply brief, and the Court heard argument upon the motion on (b)(6); (b)(7)(C) 2012.

4. The parties subsequently entered into negotiations designed to resolve amicably (b)(6); (b)(7)(C) claims with respect to the Motion For Sanctions. (b)(6); (b)(7)(C) has offered to settle the matters raised by the Motion For Sanctions in exchange for payment by the United States (through the Drug Enforcement Administration) in the amount of $20,000.

5. (b)(6), (b)(7)(C) offer has been accepted on behalf of the Attorney General.

6. Upon satisfaction of the terms set forth in paragraph 4, (b)(6), (b)(7)(C) agrees to withdraw her Motion For Sanctions with prejudice.

7. Upon satisfaction of the terms set forth in paragraph 4, (b)(6), (b)(7)(C) releases, waives, and abandons all claims against the United States, its political subdivisions, its officers, agents, and employees, arising out of or related to discovery matters raised in her Motion For Sanctions and for any discovery disputes that pre-dated the Motion For Sanctions.

8. In the event that the Court should award attorney fees to (b)(6), (b)(7)(C) in connection with her prevailing upon the merits of this lawsuit, the money paid pursuant to paragraph 4 of this agreement shall be credited by (b)(6), (b)(7)(C) towards such attorney fees. This settlement does not address expert costs that may be sought by (b)(6), (b)(7)(C) upon the conclusion of the case if she prevails upon the merits of the lawsuit.

9. This agreement is in no way related to or concerned with income or other taxes for which (b)(6), (b)(7)(C) is now liable or may become liable in the future as a result of this agreement.

10. (b)(6), (b)(7)(C) warrants and represents that no other action or suit with respect to the claims against the United States advanced in her Motion For Sanctions is pending or will be filed in or submitted to any other court, administrative agency, or legislative body. (b)(6), (b)(7)(C) further warrants and represents that she has made no assignment or transfer of all or any part of her rights arising out of or relating to the claims against the United States advanced in the Motion For Sanctions. Should there be now or in the future any violation of these warranties and representations, any amount paid by the United States or Drug Enforcement Administration pursuant to this agreement shall be refunded promptly by (b)(6), (b)(7)(C) together with interest thereon at the rates provided in 41 U.S.C. § 611, computed from the date the United States makes

payment.

11. This agreement is for the purpose of settling the Motion For Sanctions, and for no other purpose. Accordingly, this agreement shall not bind the parties, nor shall it be cited or otherwise referred to, in any proceedings, whether judicial or administrative in nature, in which the parties or counsel for the parties have or may acquire an interest, except as is necessary to effect the terms of this agreement.

12. Plaintiff's counsel represents that he has been and is authorized to enter into this agreement on behalf of (b)(6), (b)(7)(C)

13. This document constitutes a complete integration of the agreement between the parties and supersedes any and all prior oral or written representations, understandings or agreements among or between them.

AGREED TO:

(b)(6), (b)(7)(C)

Attorney for Plaintiff

Dated: (b)(6), (b)(7)(C) /12

JEANNE E. DAVIDSON
Director
Authorized Representative Of
The Attorney General
(b)(6), (b)(7)(C)
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
(b)(6), (b)(7)(C)

Attorneys for Defendant

Dated: (b)(6), (b)(7)(C) /12

2012 (b)(6), (b)(7)(C) PM 2: 20
OFFICE OF CHIEF COUNSEL
CP (b)(6), (b)(7)(C) /12

**Approval of Payment**
"This is to verify that all of the administrative determinations have been made, that the payment is legal, proper and correct for payment."

Amount $20,000.00
Obligation Doc No (b)(6), (b)(7)(C)
Line No 001
Signature
Print Name/Title Bettie E. Goldman, Asst Deputy
Date Approved (b)(6), (b)(7)(C) /12

**U. S. Department of Justice**
Drug Enforcement Administration
8701 Morrissette Drive
Springfield, VA 22152

---

## SETTLEMENT AGREEMENT

WHEREAS, (b)(6) ("Complainant") filed a Complaint of Prohibited Personnel Practice, dated (b)(6) 2017 ("Complaint"), with the Office of Special Counsel ("OSC") alleging that the U.S. Department of Justice, Drug Enforcement Administration ("DEA") subjected (b)(6) to prohibited personal actions in violation of the Whistleblower Protection Act;

WHEREAS, both Complainant and DEA wish to resolve this matter without further processing of the Complaint or litigation;

NOW, THEREFORE, in consideration of the foregoing recitals, and promises and acts hereinafter stated, it is hereby agreed in this Settlement Agreement as follows:

1. The parties do hereby agree to settle and compromise this action upon the terms set forth below. By entering into this Settlement Agreement, DEA does not admit to having engaged in any prohibited personnel practice, discrimination, reprisal, or any other wrong-doing; and Complainant does not concede that his Complaint of Prohibited Personnel Practice lacks merit.

2. Complainant declares that he understands the terms and conditions of this Settlement Agreement and is freely and voluntarily entering into this Settlement Agreement and agreeing to the terms and conditions set forth herein. Furthermore, Complainant agrees that he is not under any duress or coercion of any kind by anyone to enter into this Settlement Agreement, and that he is represented by counsel and enters into this Settlement Agreement after consultation with, and on the advice of, his counsel. Further, it is agreed that Complainant is mentally and physically fit so as to comprehend the terms of this Settlement Agreement in their entirety.

3. In consideration of the promises of Complainant as set forth below, DEA agrees as follows:

    a. Within ten (10) days after the Effective Date of this Settlement Agreement, the DEA shall initiate the process of laterally reassigning Complainant to the (b)(6) (b)(6) Office.

    b. DEA agrees that Complainant will not be transferred out of the (b)(6) Office for a minimum period of two (2) years following the Effective Date of this settlement agreement.

    c. DEA will restore eighty (80) hours of sick leave to Complainant.

    d. DEA will pay Complainant Twenty-Five Thousand Dollars ($25,000) in total compensatory/consequential damages. DEA will directly deposit this amount into Complainant's bank account. Complainant's counsel will provide DEA with the necessary information and paperwork to facilitate the deposit.

DEA (b)(6)

U.S. Department of Justice

# Complaint of Discrimination

*(See instructions on reverse)*

PRIVACY ACT STATEMENT: 1. AUTHORITY- The authority to collect this information is derived from 42 U.S.C. Section 2000e-16; 29 CFR Sections 1614.106 and 1614.108. 2. PURPOSE AND USE-This information will be used to document the issues and allegations of a complaint of discrimination based on race, color, sex (including sexual harassment), religion, national origin, age, disability (physical or mental), sexual orientation or reprisal. The signed statement will serve as the record necessary to initiate an investigation and will become part of the complaint file during the investigation; hearing, if any; adjudication; and appeal, if one, to the Equal Employment Opportunity Commission. 3. EFFECTS OF NON-DISCLOSURE-Submission of this information is MANDATORY. Failure to furnish this information will result in the complaint being returned without action.

1. Complainant's Full Name: (b)(6)

Street Address, RD Number, or Post Office Box Number: (b)(6)

City, State and Zip Code: (b)(6)

2. Your Telephone Number *(including area code)*
Home: CELL - (b)(6)
Work: (b)(6)

3. Which Department of Justice Office Do You Believe Discriminated Against You?
U.S. DRUG ENFORCEMENT ADMINISTRATION
(b)(6)

B. Street Address of Office: (b)(6)

C. City, State and Zip Code: (b)(6)

4. Current Work Address: (b)(6)

A. Name of Agency Where You Work: U.S. DRUG ENFORCEMENT ADMINISTRATION

B. Street Address of Your Agency: (b)(6)

C. City, State and Zip Code: (b)(6)

D. Title and Grade of Your Job: (b)(6)

5. Date on Which Most Recent Alleged Discrimination Took Place
Month Day Year
(b)(6) 14

6. Check Below Why You Believe You Were Discriminated Against?

- ☒ Race or Color *(Give Race or Color)* Caucasian
- ☐ Religion *(Give Religion)*
- ☐ Sex *(Give Sex)* ☐ Male ☐ Female
  - ☐ Sexual Harassment
- ☐ Age *(Give age)*
- ☐ National Origin *(Give National Origin)*
- ☐ Disability ☐ Physical ☐ Mental
- ☐ Genetic Information
- ☐ Sexual Orientation
- ☐ Gender Identity
- ☒ Reprisal
- ☐ Parental Status
- ☐ Class Complaint

7. Explain How You Believe You Were Discriminated Against *(treated differently from other employees or applicants)* Because of Your Race, Color, Sex (including sexual harassment), Religion, National Origin, Age, Disability (physical or mental), Genetic Information, Sexual Orientation, Gender Identity, Parental Status, or Reprisal. Do not include specific issues or incidents that you have not discussed with your EEO Counselor. *(You may continue your answer on another sheet of paper if you need more space.)*

SEE ATTACHMENT A, B, C, D

2014 (b)(6) PM 12: 36

8. What Corrective Action Do You Want Taken on Your Complaint?

SEE ATTACHMENT A, B, C, D

9. A) I have discussed my complaint with an Equal Employment Opportunity Counselor and/or other EEO Official.

DATE OF FIRST CONTACT WITH EE(b)(6) 14

DATE OF RECEIPT OF NOTICE OF FINAL INTERVIEW WITH EEO COUNSELOR: (b)(6) 14

B) Name of Counselor: (b)(6)

☐ I Have Not Contacted an EEO Counselor

10. Date of This Complaint:
Month Day Year
(b)(6) /14

11. Sign Your Name Here: (b)(6)
(b)(6)

FORM DOJ-201A
APR. 2011

Received via email: (b)(6) 14

DEA (b)(6)

U.S. Department of Justice

# Complaint of Discrimination

*(See instructions on reverse)*

PRIVACY ACT STATEMENT: 1. AUTHORITY- The authority to collect this information is derived from 42 U.S.C. Section 2000e-16; 29 CFR Sections 1614.106 and 1614.108. 2. PURPOSE AND USE-This information will be used to document the issues and allegations of a complaint of discrimination based on race, color, sex (including sexual harassment), religion, national origin, age, disability (physical or mental), sexual orientation or reprisal. The signed statement will serve as the record necessary to initiate an investigation and will become part of the complaint file during the investigation; hearing, if any; adjudication; and appeal, if one, to the Equal Employment Opportunity Commission. 3. EFFECTS OF NON-DISCLOSURE-Submission of this information is MANDATORY. Failure to furnish this information will result in the complaint being returned without action.

1. Complainant's Full Name
(b)(6)

Street Address, RD Number, or Post Office Box Number
(b)(6)

City, State and Zip Code
(b)(6)

2. Your Telephone Number *(including area code)*
Home Cell - (b)(6)
Work (b)(6)

3. Which Department of Justice Office Do You Believe Discriminated Against You?
U.S. DRUG ENFORCEMENT ADMINISTRATION
(b)(6)

B. Street Address of Office
(b)(6)

C. City, State and Zip Code
(b)(6)

4. Current Work Address
(b)(6)

A. Name of Agency Where You Work
U.S. DRUG ENFORCEMENT ADMINISTRATION

B. Street Address of Your Agency
(b)(6)

C. City, State and Zip Code
(b)(6)

D. Title and Grade of Your Job
(b)(6)

5. Date on Which Most Recent Alleged Discrimination Took Place

Month Day Year
(b)(6) 14

6. Check Below Why You Believe You Were Discriminated Against?

- ☒ Race or Color *(Give Race or Color)* Caucasian
- ☐ Religion *(Give Religion)*
- ☐ Sex *(Give Sex)* ☐ Male ☐ Female
  - ☐ Sexual Harassment
- ☐ Age *(Give age)*
- ☐ National Origin *(Give National Origin)*
- ☐ Disability ☐ Physical ☐ Mental
- ☐ Genetic Information
- ☐ Sexual Orientation
- ☐ Gender Identity
- ☒ Reprisal
- ☐ Parental Status
- ☐ Class Complaint

7. Explain How You Believe You Were Discriminated Against *(treated differently from other employees or applicants)* Because of Your Race, Color, Sex (including sexual harassment), Religion, National Origin, Age, Disability (physical or mental), Genetic Information, Sexual Orientation, Gender Identity, Parental Status, or Reprisal. Do not include specific issues or incidents that you have not discussed with your EEO Counselor. *(You may continue your answer on another sheet of paper if you need more space.)*

SEE ATTACHMENT A, B, C, D

(b)(6)

8. What Corrective Action Do You Want Taken on Your Complaint?

SEE ATTACHMENT A, B, C, D

2014 (b)(6) PM 12: 36 RECEIVED

9. A) I have discussed my complaint with an Equal Employment Opportunity Counselor and/or other EEO Official.

DATE OF FIRST CONTACT WITH EEO (b)(6) 14

DATE OF RECEIPT OF NOTICE OF FINAL INTERVIEW WITH EEO COUNSELOR: (b)(6) 14

B) Name of Counselor
(b)(6)

☐ I Have Not Contacted an EEO Counselor

10. Date of This Complaint:
Month Day Year
(b)(6) /14

11. Sign Your Name Here: (b)(6)
(b)(6)

FORM DOJ-201A
APR. 2011

Received via email: (b)(6) 14

[redacted]

[redacted]

[redacted]

Discussion of Attorney's Fees and Legal Expenses

A. Attorney's Fees

(b)(6)

# AGREEMENT

WHEREAS, on (b)(6) 2016, complainant (b)(6) ("Complainant") filed an employment discrimination complaint against the Drug Enforcement Administration pursuant to Section 717 of Title VII of the Civil Rights Act of 1965, as amended, 42U.S.C. §2000e-16, and 29 C.F.R. §1614.101(a) alleging that she was subjected to disparate treatment and a hostile work environment based on her sex and race;

WHEREAS, Complainant was informed of her right to elect either a hearing before an Equal Employment Opportunity Administrative Judge or a final written decision from the Department of Justice and elected to receive a final agency decision;

WHEREAS, on (b)(6) 2018, the U.S. Department of Justice Complaint Adjudication Office issued a final decision finding that the preponderance of the evidence in the record demonstrates that (b)(6) subjected Complaint to a hostile work environment based on her sex and race beginning in approximately (b)(6) and continuing into (b)(6) and that DEA is liable for the harassment;

WHERAS, the Complaint Adjudication Office directed the Drug Enforcement Administration to determine whether an agreement with Complainant on reasonable compensatory damages and attorney's fees was possible;

NOW, THEREFORE, the parties hereby agree as follows:

a. The Drug Enforcement Administration will pay Complainant $7,000.00 (seven thousand dollars) in compensatory damages and $0.00 (zero dollars) in attorney's fees, as Complainant was not represented by an attorney in this matter.

b. Complainant declares that she understands the terms of this Agreement, and is freely and voluntarily entering into this Agreement and to the terms and conditions set forth herein. Furthermore, Complainant agrees that she is not under any duress or coercion of any kind by anyone to enter into this Agreement. Further, it is agreed that Complainant is mentally and physically fit so as to comprehend the terms of this Agreement in its entirety.

c. Complainant agrees that no further action based upon the facts and circumstances giving rise to this Agreement shall be brought by her before any court or administrative tribunal.

d. This Agreement represents the full and complete agreement of the parties hereto. No other promises or agreements will be binding unless placed in writing and signed by both parties.

e. The terms and provisions of this Agreement shall be executed in good faith.

# CLAIM FOR DAMAGE, INJURY, OR DEATH

INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions.

FORM APPROVED
OMB NO.
1105-0008

1. Submit To Appropriate Federal Agency

**Drug Enforcement Administration**
**Office of Chief Counsel**
**8701 Morrissette Drive**
**Springfield, VA 22152**

2. Name, Address of claimant and claimant's personal representative, if any (See instructions on reverse.) (Number, street, city, State and ZIP Code)

(b)(6)

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|
| ☐ MILITARY ☐ CIVILIAN | | | | |

8. Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof.) (Use additional pages if necessary.)

(b)(6)

PROVIDED PREVIOUSLY UNDER SEPARATE COVER. SEE ENCLOSED.

## 9. PROPERTY DAMAGE

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, street, city, State, and ZIP Code)

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on reverse side.)

PROVIDED PREVIOUSLY UNDER SEPARATE COVER

## 10. PERSONAL INJURY/WRONGFUL DEATH

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

## 11. WITNESSES

| NAME | ADDRESS (Number, street, city, State, and ZIP Code) |
|---|---|
| | |

## 12. (See instructions on reverse) AMOUNT OF CLAIM (In dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) |
|---|---|---|---|
| $ 500 | $ 10,000 | — | $ 10,500 * |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.) | 13b. Phone number of signatory | 14. DATE OF CLAIM |
|---|---|---|
| (b)(6) (b)(6) | (b)(6) | (b)(6) /15 |

ESQ. COUNSEL (b)(6)

**CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM**

The claimant shall forfeit and pay to the United States the sum of $2,000, plus double the amount of damages substained by the United States.

(See 31 U.S.C. 3729.)

**CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS**

Fine of not more than $10,000 or imprisonment for not [...] or both. (See 18 U.S.C. 287, 1001.)

Previous editions not usable.

STANDARD FORM 95 (Rev. 7-85)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

* MS (b)(6) RESERVES RIGHT TO SUE FOR ADDITIONAL PERSONAL DAMAGES AND PUNITIVE DAMAGES IN THE EVENT HER CLAIM IS NOT RESOLVED PROMPTLY AT ADMINISTRATIVE LEVEL.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.

A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5, U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.

C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.

D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid".

## INSTRUCTIONS

**Complete all items - Insert the word NONE where applicable**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

Any instructions or information necessary in the preparation of your claim will be furnished, upon request, by the office indicated in item # 1 on the reverse side. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplemental regulations also. If more than one agency is involved, please state each agency.

The claim may be filled by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with said claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file claim for both personal injury and property damage, claim for both must be shown in item 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

*(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

*(b)* In support of claims for damage to property which as been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)* Failure to completely execute this form or to supply the requested material within two years from the date the allegations accrued may render your claim "invalid". A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

**Failure to specify a sum certain will result in invalid presentation of your claim and may result in forfeiture of your rights.**

**According to the Paperwork Reduction Act of 1995, no persons are required to respond to a Collection of Information unless it displays a valid OMB control number. The valid OMB control number for this Information Collection is 1105-0008. The time required to complete this Information Collection is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data resources, gathering and maintaining the data needed, and completing and reviewing the information collection. Send comments regarding this burden estimate or any other aspect of this information collection, including suggestions for reducing this burden**

**to Director, Torts Branch**
**Civil Division**
**U.S. Department of Justice**
**Washington, DC 20530**

**and to the**
**Office of Management and Budget**
**Paperwork Reduction Project (1105-0008)**
**Washington, DC 20503**

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

15. Do you carry accident insurance? ☐ YES, If Yes, give name and address of insurance company *(Number, street, city, State, and ZIP Code)* and policy number. ☐ NO

PROVIDED UNDER SEPARATE COVER

16. Have you filed claim on your insurance carrier in this instance, and if so, is it full coverage or deductible?

17. If deductible, state amount

18. If claim has been filed with your carrier, what action has your insurer taken or proposes to take with reference to your claim? *(It is necessary that you ascertain these facts)*

19. Do you carry public liability and property damage insurance? ☐ YES, If Yes, give name and address of insurance carrier *(Number, street, city, State, and Zip Code)* ☐ NO

SF 95 (Rev. 7-85) BACK

**U.S. Department of Justice**
**Drug Enforcement Administration**
Office of Chief Counsel (CCL (b)(6)
8701 Morrissette Drive
Springfield, Virginia 22152

(b)(6) 2016

(b)(6)

Re: Claim by (b)(6)

Dear Mr. (b)(6)

This will acknowledge receipt of your (b)(6) 2016, letter concerning the claim submitted by your client, (b)(6) to the Drug Enforcement Administration (DEA or Agency) on or about (b)(6) 2016, pursuant to the Federal Tort Claims Act, in which Mr. (b)(6) alleges wrongful incarceration and seeks $160,000.00 (One Hundred Sixty Thousand Dollars) to settle his claim.

By letter dated (b)(6) 2016, the Office of Chief Counsel made a settlement offer to your client in the amount of $30,000.00 (Thirty Thousand Dollars) for full and final settlement of this claim. Your (b)(6) 2016, letter rejected that offer, but countered with a demand for $160,000.00. Your letter also indicated your desire to resolve this matter soon. The Agency also wishes to resolve this matter. Therefore, in a good faith effort to resolve this matter, the Agency counters your demand with an offer of $50,000.00 (Fifty Thousand Dollars). If Mr. (b)(6) (b)(6) is willing to accept this amount in full and final settlement of his claim, please have him sign and return the enclosed FMS 197, Voucher for Payment; DEA 137 B, Commercial Vendor Record Request Form; and IRS Form W-9, Request for Taxpayer Identification Number and Certification. Upon receipt of these forms and subject to the availability of funds, this claim will be processed for payment.

If further assistance is needed regarding this matter, you may contact (b)(6) Senior Attorney at (b)(6)

Sincerely,

Marcia N. Tiersky
Acting Associate Chief Counsel
Civil Litigation Section

Enclosures

**U.S. Department of Justice**
**Drug Enforcement Administration**
**Office of Chief Counsel**
Civil Litigation Section
8701 Morrissette Drive
Springfield, Virginia 22152

---

VIA EMAIL ONLY
(b)(6)

Re: (b)(6)
SF-95 Claim dated (b)(6) 2016 (alleged personal injury)

Dear Ms. (b)(6)

This will acknowledge receipt of your e-mail dated (b)(6) 2015, wherein you confirmed that your client, Mr. (b)(6) agrees to settle his claim with the Drug Enforcement Administration (DEA) for the amount of $10,000, and no more, in full and final settlement of this claim. As you are aware, we were forced to deny this claim previously based on your failure to accept our offer of settlement timely. Thus, we interpret your e-mail of (b)(6) (b)(6) as a request to reconsider our denial of your client's claim, and of your client's previous rejection of our offer of $10,000, in full and final settlement of this claim. We hereby accept your request to reconsider our denial, and rescind our denial of the claim.

This office is willing to offer your client $10,000 in full and final settlement of this claim. If your client is willing to accept this amount in full and final settlement of this claim, please sign and return the enclosed FS Form 197 - Voucher for Payment. Please be sure to provide your client's Social Security Number for payment purposes (FS Form 197 - No. 7.).

Upon receipt of these forms, and subject to the availability of funds, this claim will be processed for payment. If further assistance is needed regarding this matter, you may contact (b)(6) Paralegal Specialist, at (b)(6)

Sincerely,

Marcia N. Tiersky
Associate Chief Counsel
Civil Litigation Section

Enclosures

(b)(6) 2017

eBay - (b)(6) - $249.00

Payment

**Paid with**

VISA x-(b)(6)

You'll see "PAYPAL *(b)(6) on your card statement.

**Seller info**

(b)(6)

**Shipped to**

(b)(6)

United States

**Your purchase**

| | |
|---|---|
| **2 New 275 30 24 Nexen N3000 Tires** | $249.00 |
| Item #(b)(6) | |
| Shipping | $0.00 |
| Tax | $0.00 |
| Purchase total | $249.00 |
| Fee | $0.00 |
| **Total** | **$249.00** |

**Track your shipment**

(b)(6)

(b)(6) 2017, Sent by FEDEX

Status: Shipped

**Transaction ID**

(b)(6)

**Need help?**

First contact the seller through eBay to try resolving the problem. If it's still not resolved, go to the **eBay Resolution Center**. You may be eligible for purchase protection.

## Judgment Fund Voucher for Payment

10. **Acceptance by Claimants: Compensation for property damage attributed to seizure, forfeiture, and sale of motor vehicle.**

11. **NOTE: For use ONLY where the settlement is (i) for cash, (ii) in an amount that does not exceed $200,000, and (iii) a court order approving the settlement is not warranted. For all other situations, a final judgment or a standard Department of Justice Stipulation For Compromise Settlement and Release must be attached.**

Each claimant/plaintiff and his/her guardians, heirs, executors, administrators, and assigns agree to and do accept this settlement in full settlement and satisfaction and release of any and all claims, demands, rights, and causes of action of any kind, whether known or unknown, including without limitation any claims for fees, costs, expenses, survival, or wrongful death, arising from any and all known or unknown, foreseen or unforeseen bodily injuries, personal injuries, death, or damage to property, which they may have or hereafter acquire against the United States of America, its agents, servants, or employees, on account of the subject matter of the administrative claim or suit, or that relate or pertain to or arise from, directly or indirectly, the subject matter of the administrative claim or suit. Each claimant/plaintiff and his/her guardians, heirs, executors, administrators, and assigns further agree to reimburse, indemnify, and hold harmless the United States of America, its agents, servants, and employees, from and against any and all claims, demands, rights, and causes of action of any kind, whether known or unknown, including without limitation claims for subrogation, indemnity, contribution, or lien of any kind, or for fees, costs, expenses, survival or wrongful death, that relate or pertain to or arise from, directly or indirectly, any act or omission that relates to the subject matter of the administrative claim or suit.

**Date:** (b)(6)

(Claimant(s) sign above)

**11. AGENCY APPROVING OFFICIAL:** This claim has been fully examined in accordance with Statutory Citation 28 U.S.C. §2672 and approved in the amount of $3,683.43

Authorized Signature: (b)(6)

Title: Associate Chief Counsel, Civil Litigation Section

Date: (b)(6) 1/17

**FMS** FORM **197** Page 2 of 2 (PREVIOUS EDITIONS ARE OBSOLETE)
12-03

DEPARTMENT OF THE TREASURY
FINANCIAL MANAGEMENT SERVICE

# EXHIBIT S

**RECEIVED**

(b)(6) 2015

**ASU/FISCAL**

## ACCEPTANCE FORM
## FOR PAYMENT UNDER 31 U.S.C. § 3724

**PAYEE(S):** (b)(6)

**TAX IDENTIFICATION NUMBER**
**SOCIAL SECURITY NUMBER:** (b)(6)

VC# (b)(6)

**ADDRESS:** (b)(6)

**DATE CLAIM OCCURRED:** (b)(6) **2014**

INV#: (b)(6)

**AMOUNT OF AWARD, COMPROMISE OR SETTLEMENT: $3,071.00**

**BRIEF DESCRIPTION OF CLAIM:**

Alleged damage to claimant's property in execution of a search warrant as well as a Federal arrest warrant at claimant's residence. Due to a reinforced security bar at the front entrance to the residence, the on-site personnel performed a "bar pull" to gain entry into the home. During the "bar pull," Ms. (b)(6) vehicle was damaged.

## ACCEPTANCE BY CLAIMANT

I, the claimant, do hereby accept the within stated award, compromise or settlement as final and conclusive on me, and agree that said acceptance constitutes a complete release by me of any claim against the United States and the employees of the United States whose act or omission gave rise to the claim, by reason of the same subject matter.

**DATE:** (b)(6) -15

(b)(6)
**C NT**

This claim has been fully examined in accordance with the provisions of 31 U.S.C. § 3724 and is approved in the amount of **$3,071.00.**

**DATE:** (b)(6) /15

Karen K. Richardson
Associate Chief Counsel
Civil Litigation Section

Attachments
IRS Form W-9
DEA Form 137B

(b)(6)

Admin Claim
CLAIM-SETL,
SOC (b)(6)
FY 2014 DIVISION OPS

(b)(6)



RECEIVED (b)(6) 2015

**ACCEPTANCE FORM**
**FOR PAYMENT UNDER 31 U.S.C. § 3724**

**PAYEE:** (b)(6)

**TAX IDENTIFICATION NUMBER** (b)(6)
**SOCIAL SECURITY NUMBER:** ______________

**ADDRESS:** Hampton Inn & Suites - Woodlawn
1810 Belmont Avenue, Windsor Mill, Maryland 21244

**DATE CLAIM OCCURRED:** (b)(6) **2017**

**AMOUNT OF AWARD, COMPROMISE OR SETTLEMENT: $2,696.86**

**BRIEF DESCRIPTION OF CLAIM:**

Alleged property damage allegedly cause by the Drug Enforcement Administration (DEA) on (b)(6) 2017, to hotel door (b)(6) located at 1810 Belmont Avenue, Windsor Mill, Maryland.

**ACCEPTANCE BY CLAIMANT**

I, (We), the claimant(s), do hereby accept the within stated award, compromise or settlement as final and conclusive on me (us), and agree that said acceptance constitutes a complete release by me (us) of any claim against the United States and the employees (s) of the United States whose act or omission gave rise to the claim, by reason of the same subject matter.

**DATE:** (b)(6) 17 (b)(6)

**CLAIMANT**

This claim has been fully examined in accordance with the provisions of 31 U.S.C. § 3724 and is approved in the amount of **$2,696.86.**

**DATE:** (b)(6) 17

Marcia N. Tiersky
Associate Chief Counsel
Civil Litigation Section

Attachments
IRS Form W-9
DEA Form 137B

# CLAIM FOR DAMAGE, INJURY, OR DEATH

**INSTRUCTIONS:** Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions.

FORM APPROVED
OMB NO. 1105-0008

1. Submit to Appropriate Federal Agency:

2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code.
Hampton Inn & Suites - Woodlawn
1810 Belmont Ave
Windsor Mill, MD 21244

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|
| ☐ MILITARY ☐ CIVILIAN | | | (b)(6) 17 - Thursday | |

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).
On Thursday (b)(6) 2017 Baltimore Law Enforcement removed a fugitive from the hotel. there was property damage done to Room (b)(6) causing the room to be placed out of service for a period of time until repaired.

9. PROPERTY DAMAGE

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).
Guest room (b)(6) door was completely broken, door frame & lock causing a severe hole in door. Room remain out of order over 30 Days

10. PERSONAL INJURY/WRONGFUL DEATH

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

11. WITNESSES

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| | |

12. (See instructions on reverse). AMOUNT OF CLAIM (in dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
|---|---|---|---|
| $1734.06 | Loss Revenue $2,727.34 | | $4,461.40 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| (b)(6) | reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|---|
| | | (b)(6) | (b)(6) 17 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable
95-109

NSN 7540-00-634-4046

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

**INSURANCE COVERAGE**

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident Insurance? [X] Yes If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number. [ ] No

Penn National Insurance PO Box 2361 Harrisburg. PA 17105
Policy number (b)(6)

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible? [ ] Yes [X] No

17. If deductible, state amount.

$ 2,500.00

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

NONE

19. Do you carry public liability and property damage insurance? [X] Yes If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code). [ ] No

Penn National Insurance PO Box 2361 Harrisburg. PA 17105

**INSTRUCTIONS**

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

**Complete all items - Insert the word NONE where applicable.**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A <u>SUM CERTAIN</u> FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN <u>TWO YEARS</u> AFTER THE CLAIM ACCRUES.

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filled by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

*(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

*(b)* In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)* **Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.**

**PRIVACY ACT NOTICE**

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.

A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.

C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.

D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

**PAPERWORK REDUCTION ACT NOTICE**

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

**STANDARD FORM 95 REV. (2/2007) BACK**

8. <u>Basis for Claim:</u>

On (b)(6) 2014 I, (b)(6) contracted with (b)(6) (b)(6) to haul a load produce that I purchased form (b)(6) to be delivered to customers in (b)(6) On or about (b)(6) I was advised by (b)(6) of (b)(6) that the load had been impounded by the DEA. He was not able to offer any more information than that. I was able to contact the (b)(6) office of the DEA and spoke with (b)(6) After some leg work he was able to confirm that in fact the load had been detained and that drugs were found on board. At some point the DEA made a unilateral decision to have the load destroyed. I was not a party to this discussion nor was I consulted in any way regarding this decision.

Furthermore I was never contacted by the DEA in any way regarding this matter until I reached out to them. The DEA's decision precluded me from obtaining any salvage from this load. I have paid both shippers for the product and advanced the truck $4,000 for fuel after loading, which is common in my business. The decision to destroy the load was apparently an attempt to protect the public interest, which I can understand. However, as I am not in any way responsible for the events that occurred I am an innocent party who has suffered significant financial loss due to these actions. For these reasons I am hopeful that this claim will be viewed favorably and that I will receive compensation to the extent I was damaged, thank you for your consideration.

9. <u>Description of Property:</u>

1,120 cases of baby lettuce
144 cases of baby spinach
1,232 cases of red bell peppers
Inspection is not possible as the product was destroyed. - Paid shipper invoices are enclosed.

18. The carrier claims that his insurance will not cover this situation. Since one or two days after the load was impounded the carrier has not answered repeated phone calls or emails.