1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HUMAN RIGHTS DEFENSE CENTER, a
Washington nonprofit corporation,

　　　　　　　　　Plaintiff,

　　　v.

UNITED STATES DEPARTMENT OF
JUSTICE; and its component, DRUG
ENFORCEMENT ADMINISTRATION,

　　　　　　　　　Defendants.

CASE NO. 2:20-cv-00674-JHC

ORDER RE: CROSS-MOTIONS FOR
SUMMARY JUDGMENT

# I

## INTRODUCTION

　　This case concerns Plaintiff Human Rights Defense Center's (HRDC) request, under the

Freedom of Information Act (FOIA), 5 U.S.C. § 552, for records of claims against Defendant

Drug Enforcement Administration (DEA) that the DEA resolved through payment of a

settlement or judgment. *See generally* Dkt. # 1. Before the Court are cross-motions for

summary judgment brought by Plaintiff and Defendants United States Department of Justice and

its law enforcement component the DEA (collectively, Defendants or DEA). Dkt. ## 24, 26.

Being fully advised, for the reasons below, the Court: (1) GRANTS in part, DENIES in part, and

DENIES without prejudice in part Defendants' motion; and (2) GRANTS in part, DENIES in part, and DENIES without prejudice in part Plaintiff's motion.  Dkt. ## 24, 26.

## II

### BACKGROUND

The material facts are not in dispute.  Dkt. ## 26 at 8; 29 at 4.

A.     Plaintiff's FOIA Request

On May 20, 2019, Plaintiff submitted a FOIA request seeking disclosure of records of "all litigation against the [DEA] and/or its employees or agents where the [DEA] and/or its insurers paid $1,000 or more to resolve claims."  Dkt # 25-2 at 2.  Plaintiff requested records of "settlements, damages, attorney fee awards, and sanctions, irrespective of the identity of the plaintiff or claimant."  *Id.*  Plaintiff's request sought:

1. Records, regardless of physical form of characteristics, sufficient to show for all claims or lawsuits brought against DEA and/or any of its agents or employees in which payments totaling $1,000 or more were disbursed from January 1, 2010, to the present:
   - The name of all parties involved;
   - The case or claim number;
   - The jurisdiction in which the case or claim was brought (e.g., U.S. District Court for the District of Columbia, D.C. Superior Court, etc.);
   - The date of resolution;
   - The amount of money involved in the resolution and to whom it was paid[;]
2. For each case or claim detailed above:
   - The complaint or claim form or any amended versions;
   - The verdict form, final judgment, settlement agreement, consent decree, or other paper that resolved the case.

*Id.*  On June 27, 2019, the DEA notified Plaintiff that it might have records responsive to the FOIA request, but that (1) the DEA's system was not searchable by the size of a payment, and (2) its "electronic data [was] only available from mid-2012 to the present."  Dkt. # 25-3 at 2–4. The DEA said that answering the FOIA request would involve both an electronic search and a manual search of its archives, requiring around 295 hours of work.  *Id.* at 3.  The DEA concluded

that such a search would be overly burdensome and asked Plaintiff to narrow the scope of its request. *Id.*

On July 11, 2019, Plaintiff agreed to a "production of documents from 2012 or later" and waived the $1,000 threshold. Dkt. # 25-4 at 2. Three months later, on October 21, 2019, the DEA informed Plaintiff that its revised request did not meet FOIA's requirements because "it [did] not reasonably describe records." Dkt. # 25-5 at 3. The DEA estimated that the revised request would still require at least 250 hours to complete. *Id.* The DEA said that Plaintiff's request was "overly broad and burdensome," and that it would take no further action unless Plaintiff provided "a reasonable description of records sought." *Id.*

On October 29, 2019, Plaintiff sent an administrative appeal letter to the DOJ Office of Information Policy (OIP) over the DEA's denials. *See* Dkt. # 25-6. On January 31, 2020, OIP affirmed the DEA's decision, stating that Plaintiff "did not reasonably describe the subject of [its] request" because Plaintiff "did not characterize the records sought in such a way that they could be located with a reasonable amount of effort." Dkt. # 25-7 at 3.

B.    Procedural History and Production of Records

On May 5, 2020, Plaintiff filed its complaint, which contains one cause of action for violating FOIA. Dkt. # 1 at 6–7. Plaintiff requests declaratory relief that Defendants' failure to disclose responsive records violates FOIA and injunctive relief ordering Defendants to search for and produce records responsive to Plaintiff's request. *Id.* at 7. In June 2020, in their answer, Defendants denied "that Plaintiff is entitled to the relief requested or any relief whatsoever." Dkt. # 8 at 7. But in July 2020, the DEA informed Plaintiff that it now could "feasibly search for, process, and produce documents responsive to [Plaintiff's] FOIA request." Dkt. # 28 at 8–9. In August 2020, Plaintiff agreed to narrow its request to exclude "tort claims arising from motor

vehicle collisions," "claims that the DEA resolved with payments made before 2012," and "claims that the DEA resolved for less than $2,500." Dkt. # 25 at 4.

In its search for records responsive to the FOIA request, the DEA searched two financial databases and its internal case management system for the Office of Chief Counsel. *Id.* Beginning in November 2020, the DEA began releasing records to Plaintiff in monthly batches. *Id.* at 5–6. Upon reviewing these records, Plaintiff challenged the DEA's withholding of certain information, including the DEA's redaction of (1) names of claimants and tortfeasors, (2) the amount paid under each settlement, (3) details of the misconduct alleged by the claimants, (4) "publicly filed documents," and (5) pronouns. Dkt. # 28 at 2. Between the DEA's initial production of records until August 2021, the parties attempted to resolve a number of issues raised by Plaintiff concerning the DEA's production, with the agency removing certain redactions while insisting on keeping other information withheld. *See id.* at 2–6. In total, the DEA released over 1,700 pages of records to Plaintiff. Dkt. # 25 at 5–7. The DEA created a *Vaughn* index that describes the contents of the documents subject to Plaintiff's FOIA request, identifies the FOIA exemptions under which the DEA redacted information, and specifies the bases for such exemptions.[1] *Id. See* Dkt. # 25-1. The DEA invoked two exemptions under 5 U.S.C. §§ 552(b)(6) and 552(b)(7)(C)—exemptions 6 and 7(C)—to justify its redactions. *See* Dkt. # 25-1.

---

[1] Subsection (b) of FOIA establishes nine exemptions from disclosure that permit agencies to protect, among other things, personal privacy, national security, and law enforcement interests. *See* 5 U.S.C. § 522(b). Should an agency withhold information, it must submit an affidavit under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973)—commonly called a "*Vaughn*" index"—that "identif[ies] the documents withheld, the FOIA exemptions claimed, and [provides] a particularized explanation of why each document falls within the claimed exemption." *Lion Raisins v. U.S. Dep't of Agric.*, 354 F.3d 1072, 1082 (9th Cir. 2004), *overruled on other grounds by Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987 (9th Cir. 2016). The *Vaughn* index "must be detailed enough for the district court to make a de novo assessment of the government's claim of exemption." *Id.* (quoting *Maricopa Audubon Soc'y v. United States Forest Serv.*, 108 F.3d 1089, 1092 (9th Cir. 1997)).

ORDER RE: CROSS-MOTIONS FOR SUMMARY
JUDGMENT - 4

1

2

3

4

On July 8, 2022, Defendants moved for summary judgment. Dkt. # 24. On August 26, 2022, Plaintiff cross-moved for summary judgment. Dkt. # 26. The parties agree that there are no disputed issues of fact, and that summary judgment is the appropriate method to resolve all remaining issues except for attorney fees. Dkt. ## 24 at 6; 26 at 8; 29 at 4; 31 at 12.

5

### III

### LEGAL STANDARDS

6

A. Summary Judgment

7

8

9

10

11

12

13

14

15

16

Summary judgment is proper if there is no genuine dispute as to any material fact and the movant shows that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the [nonmovant]." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1031 (9th Cir. 2010). When parties cross-move for summary judgment, each motion "must be considered on its own merits." *Fair Hous. Council of Riverside City, Inc., v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (internal quotation omitted).

17

B. FOIA

18

19

20

21

22

23

24

FOIA's purpose is to inform citizens about "what their government is up to." *Cameranesi v. U.S. Dep't of Def.*, 856 F.3d 626, 640 (9th Cir. 2017). The Act "seeks to permit access to official information long shielded unnecessarily from public view and attempts to create a judicially enforceable public right to secure such information from possibly unwilling official hands." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151–52 (1989) (quoting *EPA v. Mink*, 410 U.S. 73, 80 (1973)). "'[D]isclosure, not secrecy, is [FOIA's] dominant

objective.'" *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7–8 (2001) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)).

"Summary judgment is the procedural vehicle by which nearly all FOIA cases are resolved." *Sea Shepherd Legal v. Nat'l Oceanic & Atmospheric Admin.*, 516 F. Supp. 3d 1217, 1227 (W.D. Wash. 2021) (quoting *L.A. Times Commc'ns, LLC v. Dep't of the Army*, 442 F. Supp. 2d 880, 893 (C.D. Cal. 2006)).  But in FOIA cases, courts "do not ask whether there is a genuine issue of material fact, because the facts are rarely in dispute." *Minier v. Cent. Intel. Agency*, 88 F.3d 796, 800 (9th Cir. 1996).  Instead, courts follow a two-step inquiry when ruling on summary judgment motions in FOIA cases.  *See, e.g.*, *Sea Shepherd Legal*, 516 F. Supp. 3d at 1227; *Prison Legal News v. U.S Dep't of Homeland Sec.*, 113 F. Supp. 3d 1077, 1081 (W.D. Wash. 2015).

First, the government must show that its search for responsive documents was adequate "beyond material doubt." *Transgender L. Ctr. v. Immigr. & Customs Enf't*, 46 F.4th 771, 779 (9th Cir. 2022).  Second, courts must determine "whether the agency has proven that the information that it did not disclose falls within one of the nine FOIA exemptions." *L.A. Times*, 442 F. Supp. 3d at 894.  "To justify withholding, the government must provide tailored reasons in response to a FOIA request.  It may not respond with boilerplate or conclusory statements." *Shannahan v. IRS*, 672 F.3d 1142, 1148 (9th Cir. 2012).

Even if an exemption applies to a document, FOIA requires that a "reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."  5 U.S.C. § 552(b).  "[I]t is reversible error for the district court to simply approve the withholding of an entire document without entering a finding on segregability, or the lack thereof, with respect to that document." *Transgender L. Ctr.*, 46 F.4th at 785 (quoting *Hamdan v. Dep't of Just.*, 797 F.3d 759, 779 (9th Cir. 2015)).  *See*

ORDER RE: CROSS-MOTIONS FOR SUMMARY
JUDGMENT - 6

1
2

*Wiener v. FBI*, 943 F.2d 972, 988 (9th Cir. 1991) (explaining that district courts err "by failing to make specific findings on the issue of segregability").

3
4

The Court reviews de novo the adequacy of an agency's search and its justifications for withholding information.  5 U.S.C. § 552(a)(4)(B).

5

**IV**

6

**DISCUSSION**

7
8
9
10
11
12
13
14
15
16
17

Defendants move for summary judgment on the adequacy of the DEA's search and whether the DEA properly invoked exemptions 6 and 7(C).  Dkt. # 24 at 9–19.  Plaintiff moves for summary judgment on four broad issues.  Dkt. # 26 at 8–10, 22–24.  First, Plaintiff argues that the DEA's search was inadequate, and separately, that the DEA violated FOIA in not producing the claim form and complaint for each claim.  *Id.* at 22–24.  Second, Plaintiff says that the DEA improperly invoked exemptions 6 and 7(C) in its redactions.  *Id.* at 8.  Accordingly, Plaintiff seeks an order requiring the DEA to disclose: (1) the names of alleged tortfeasors and claimants; (2) certain settlement agreements containing provisions permitting public disclosure; (3) "information that is already in the public domain"; (4) files 18 and 19, which were withheld because they are under court seal; and (5) narrative descriptions of alleged wrongdoing.  *Id.* at 9, 31.  Third, Plaintiff seeks a declaration that the DEA violated FOIA because of its untimely response.  *Id.* at 9.  And fourth, Plaintiff requests attorney fees.  *Id.* at 10.

18

A.    Adequacy of Search

19
20

The DEA bears the burden of proof in showing the adequacy of its search beyond a material doubt.  *Transgender L. Ctr.*, 46 F.4th at 780.  The DEA has met its burden.

21
22
23
24

Requiring an agency to show its search was adequate beyond a material doubt "properly places a concrete burden of proof on the Government," compelling an agency to show that it has "undertaken all reasonable measures to uncover all relevant documents."  *Id.*  This can be shown

through "reasonably detailed, nonconclusory affidavits submitted in good faith." *Lahr v. National Transp. Safety Bd.*, 569 F.3d 964, 986 (9th Cir. 2009) (quoting *Zemansky v. U.S. E.P.A.*, 767 F.2d 569, 571 (9th Cir. 1985)). An affidavit must be reasonably detailed in its "description of the files searched and the search procedure." *Zemansky*, 767 F.2d at 571. At the very least, an agency must "explain in its affidavit that no other record system was likely to produce responsive documents." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). "Affidavits submitted by an agency to demonstrate the adequacy of its response are presumed to be in good faith." *Hamdan*, 797 F.3d at 770. FOIA requesters are "entitled to a reasonable search for records, not a perfect one." *Id.* at 772.

In support of its motion, the DEA submitted the Declaration of Angela Hertel, Unit Chief of the DEA's FOIA Unit. Dkt. # 25 at 1. According to Hertel, in seeking records responsive to Plaintiff's request, the DEA first searched two financial databases. *Id.* at 4. The first database was the Unified Financial Management System (UFMS). *Id.* UFMS is the DOJ's system of record for financial management; it contains the budgets, payments, billings, and collections for the DEA and DOJ. *Id.* The DEA searched UFMS because all DEA "claims are paid from or at least recorded in UFMS." *Id.* at 4–5. The second database was the Judgment Fund Internet Claims System (JFICS). *Id.* at 5. The Judgment Fund "pays court judgments and compromise settlements against the government," and federal agencies may request that such judgments and settlements are paid from the Judgment Fund if funds are not "available to pay from the agency's own appropriations." *Id.* Most payments that the DEA "makes in litigation or administrative claims that [the] DEA settles or is ordered to pay" come from the Judgment Fund. *Id.* The DEA searched the JFICS because it has a record of every payment that the DEA has requested to be made from the Judgment Fund. *Id.* Using the information collected from these two databases (such as names of individuals), the DEA searched its case management system for the Office of

Chief Counsel (OCC) to locate the documents Plaintiff requested (i.e., claim forms, complaints, settlement agreements, and judgments). *Id.* at 4–5. The DEA determined that UFMS, JFICS, and the OCC's case management system were the "only databases/systems likely to have responsive records." *Id.* at 5.

Hertel's Declaration was reasonably detailed in its explanation of the databases and systems searched. Hertel explained why UFMS, JFICS, and the OCC's case management system were the only databases or systems that would likely contain information responsive to Plaintiff's request. *See, e.g.*, *Oglesby*, 920 F.2d at 68 (noting that an agency must, at the very least, explain "that no other record system was likely to produce responsive documents"); *Franklin v. Drug Enf't Agency*, No. 214CV03701CBMRNBX, 2016 WL 9110164, at *3 (C.D. Cal. Mar. 25, 2016), *aff'd*, 689 F. App'x 542 (9th Cir. 2017) (search was adequate where the DEA searched only the record systems that it believed contained the information the plaintiff requested); *Brown v. U.S. Dep't of Just.*, No. 1:13-CV-01122-LJO, 2015 WL 1237274, at *6 (E.D. Cal. Mar. 17, 2015), *report and recommendation adopted*, 2015 WL 11233059 (E.D. Cal. Apr. 30, 2015) (search was adequate where the only record system likely to contain documents responsive to the plaintiff's request was searched). Hertel also explained how the DEA used the information gleaned from the first two databases to tailor the searches it performed within the OCC's case management system for responsive documents. Plaintiff correctly points out that the DEA did not disclose the search terms that it used when searching the databases or OCC system. Dkt. # 26 at 30. But Plaintiff submits no on-point legal authority, nor has the Court found any, requiring an agency to share the search terms it used to render a search adequate.[2] The Court is

---

[2] In support of its position that the DEA should have disclosed its search terms, Plaintiff cites *Flete-Garcia v. United States Marshals Serv.*, 613 F. Supp. 3d 425 (D.D.C. 2020). There, the district court determined that summary judgment for the agency on the adequacy of its search was unwarranted

1    satisfied that the DEA reasonably described the process it used in responding to the FOIA

2    request.

3           In challenging the adequacy of the DEA's search, Plaintiff contends that the DEA did not

4    produce or search for complaints and claim forms.  Dkt. # 26 at 30.  Plaintiff also says that the

5    DEA's purported failure to produce or search for these records violates FOIA.  *See id.* at 29.  In

6    making this argument, Plaintiff cites excerpts from 15 files that Plaintiff claims refer to

7    complaints and claim forms that the DEA should have produced.  *See* Dkt. # 26 at 29–30; *see*

8    *also* Dkt. # 28 at 291–317.

9           That the DEA has not located all complaints or claim forms does not render its entire

10   search inadequate.[3]  *See, e.g.*, *Citizens Comm'n on Hum. Rts. v. Food & Drug Admin.*, 45 F.3d

11   1325, 1328 (9th Cir. 1995) ("[T]he issue to be resolved is not whether there might exist any other

12   documents possibly responsive to the request, but rather whether the *search* for those documents

13   was *adequate*." (quotation omitted) (emphasis in original)); *Iturralde v. Comptroller of the*

14   *Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (explaining that the adequacy of a search is

15   determined "not by the fruits of the search, but by the appropriateness of the methods used to

16   carry out the search"); *Wilbur v. C.I.A.*, 355 F.3d 675, 678 (D.C. Cir. 2004) (noting that an

17   "agency's failure to turn up a particular document . . . does not undermine the determination that

18

19   because, among other reasons, the agency's declaration did not provide "any detail regarding search terms
     or methodologies, possible custodians, or whether additional databases or files might contain the
20   requested records."  *Id.* at 433.  *Flete-Garcia* is distinguishable because Hertel described the DEA's
     methodology in searching for responsive records and explained that no other databases or systems would
21   contain the records Plaintiff sought.

     [3] Also, the documents referenced in these 15 files are not all responsive to Plaintiff's FOIA
22   request for a "complaint or claim form or any amended versions."  Dkt. # 25-2 at 2.  *See, e.g.*, Dkt. # 28 at
     292 (file 2 at page 33 refers to a "petition for attorney fees and costs" on appeal); *id.* at 294 (file 10 at
23   page 1 refers to a "motion for attorney's fees and costs"); *id.* at 297 (file 17 at page 11 is a form issued by
     the "Merit Systems Protection Board" showing that whoever prepared the form did not file a complaint
     with the Department of Labor or the Office of Special Counsel); *id.* at 315 (file 147 at page 5 refers to
24   emails about settlement).

     ORDER RE: CROSS-MOTIONS FOR SUMMARY
     JUDGMENT - 10

1  the agency conducted an adequate search").  And it is not as if the DEA refused to search for or

2  produce *all* complaints or claim forms as Plaintiff seems to suggest; the *Vaughn* index shows

3  many claim forms and complaints that were indeed produced.  *See generally* Dkt. # 25-1.

4          In sum, for this particular issue, Hertel's Declaration is entitled to a presumption of good

5  faith, and Plaintiff has not rebutted that presumption with any evidence about the search.  The

6  DEA has shown that its search was adequate beyond material doubt.  The Court thus grants

7  summary judgment for Defendants and denies summary judgment for Plaintiff as to the

8  adequacy of the search.  The Court also denies Plaintiff's motion as to its argument that the DEA

9  violated FOIA in not producing certain complaint or claim forms.

10         Given the adequacy of its search, the DEA must show that any withheld information is

11 covered by one of FOIA's exemptions.  *Shannahan*, 672 F.3d at 1148.  The DEA withheld and

12 redacted information under FOIA exemptions 6 and 7(C).  Dkt. # 25 at 7.  The Court considers

13 the DEA's application of each exemption in turn.

14 B.      Exemption 6

15         Withholding is permissible "only if the agency reasonably foresees that disclosure would

16 harm an interest protected by an exemption," only after "consider[ing] whether partial disclosure

17 of information is possible" and taking "reasonable steps necessary to segregate and release

18 nonexempt information."  5 U.S.C. § 552(a)(8)(A).  Courts narrowly construe FOIA's nine

19 exemptions in favor of disclosure.  *Dep't of Interior*, 532 U.S. at 8.  "The burden of proving that

20 withheld documents fit into the exemptions falls on the agencies."  *Transgender L. Ctr.*, 46 F.4th

21 at 782.  *See Lahr*, 569 F.3d at 973 ("FOIA's 'strong presumption in favor of disclosure' means

22 that an agency that invokes one of the statutory exemptions . . . bears the burden of

23 demonstrating that the exemption properly applies to the documents.") (quoting *U.S. Dep't of*

24

*State v. Ray*, 502 U.S. 164, 173 (1991)); *see also* 5 U.S.C. § 552(a)(4)(B) (explaining that "the burden is on the agency to sustain its action").

1.      Legal framework

Exemption 6 allows agencies to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The Court must ask two questions in deciding whether the DEA has properly invoked exemption 6: (1) does the document consist of "personnel and medical files and similar files"; and (2) would production of the document, or the information contained therein, "constitute a clearly unwarranted invasion of personal privacy." *Id.*; *see Prudential Locations LLC v. U.S. Dep't of Hous. & Urb. Dev.*, 739 F.3d 424, 429 (9th Cir. 2013).

a.      "Personnel and medical files and similar files"

Exemption 6 was "intended to cover detailed Government records on an individual which can be identified as applying to that individual." *Prudential Locations LLC*, 739 F.3d at 429 (quoting *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982)). "Information unrelated to any particular person presumably would not satisfy the threshold test." *Wash. Post Co.*, 456 U.S. at 602 n.4. The term "similar files" has a "broad, rather than a narrow, meaning." *Id.* at 602.

The parties do not dispute that the files the DEA produced are "similar" files. *See* Dkt. ## 24, 26, 29, 31. The documents subject to the FOIA request represent various types of claim files in which an identifiable claimant sought compensation from the DEA for an alleged wrong. *See* Dkt. # 25 at 7. The Court agrees that the files at issue satisfy this threshold requirement under exemption 6. *See Lepelletier v. F.D.I.C.*, 164 F.3d 37, 46 (D.C. Cir. 1999) ("The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual.").

b.      "Clearly unwarranted invasion of personal privacy"

Exemption 6's second requirement is that disclosure of the information "would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  To answer this question, courts "must balance the privacy interest protected by the exemptions against the public interest in government openness that would be served by disclosure."  *Prudential Locations LLC*, 739 F.3d at 430 (quoting *Elec. Frontier Found. v. Office of The Dir. of Nat'l Intel.*, 639 F.3d 876, 886 (9th Cir. 2010)).

The Ninth Circuit employs a two-step test for balancing individual privacy rights against the public's interest in disclosure.  *Cameranesi*, 856 F.3d at 637.  Courts must first assess the personal privacy interest at stake to ensure that disclosure "implicates a personal privacy interest that is nontrivial" or "more than [] de minimis."  *Id.* (internal citation and quotation marks omitted).  Second, "if the agency succeeds in showing that the privacy interest at stake is nontrivial, the requester 'must show that the public interest sought to be advanced is a significant one and that the information [sought] is likely to advance that interest.'"  *Id.* (quoting *Lane v. Dep't of Interior*, 523 F.3d 1128, 1137 (9th Cir. 2008) (alteration in original)).

For the first step, disclosure implicates a nontrivial personal privacy interest if it impacts "the individual's control of information concerning [their] person."  *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763 (1989).  "Disclosures that would subject individuals to possible embarrassment, harassment, or the risk of mistreatment constitute nontrivial intrusions into privacy under Exemption 6."  *Cameranesi*, 856 F.3d at 638.

For the second step, courts must examine whether the public interest is significant, meaning one "more specific than having the information for its own sake."  *Id.* at 639 (quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004)).  "[T]he only relevant public interest . . . is the extent to which disclosure of the information sought would shed light on

ORDER RE: CROSS-MOTIONS FOR SUMMARY
JUDGMENT - 13

an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Bibles v. Oregon Nat. Desert Ass'n*, 519 U.S. 355, 355–56 (1997) (internal citations omitted).  In other words, "the evidence must show some nexus between the specific requested information and unveiling agency misconduct." *Lahr*, 569 F.3d at 978.  The information the plaintiff seeks must "contribut[e] significantly to public understanding of the operations or activities of the government." *Forest Serv. Emps. for Env't Ethics v. U.S. Forest Serv.*, 524 F.3d 1021, 1025 (9th Cir. 2008) (alteration in original) (internal citation and quotation marks omitted).

Plaintiff requests disclosure of: (1) the names of claimants; (2) the names of the alleged tortfeasors; (3) certain settlement agreements containing provisions permitting public disclosure; and (4) all "publicly available information."  Dkt. # 26 at 8–9.  Having determined that the documents are "similar files," the Court below evaluates whether disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy" under exemption 6's second requirement, using the two-step balancing standard set forth above.  5 U.S.C. § 552(b)(6).

2.       Names of claimants

Throughout its production, the DEA invoked exemption 6 to redact the identities of "tort claimants who filed administrative claims, DEA employees who filed claims for property damage, DEA employees who filed Equal Employment Opportunity (EEO) or Merit System Protection Board . . . complaints and appeals, and DEA employees who filed whistleblower and other complaints with the U.S. Office of Special Counsel."  Dkt. # 25 at 7.  Plaintiff contends that the redaction of claimant names violates FOIA.  Dkt. # 26 at 21.

a.       Privacy interests

As for the private citizen claimants, disclosure of their identities would reveal that these individuals filed administrative tort claims against the DEA.  Such a disclosure, per the DEA,

would interfere with these individuals' personal privacy interest in "being free from harassment, criticism, intimidation, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion" and "controlling how communications about the individual are shared with the public." Dkt. # 25 at 9.  Despite the conclusory nature of this portion of Hertel's Declaration, the potential for unwanted contact by third parties—including Plaintiff—exists.  *See Lahr*, 569 F.3d at 976 ("The case law establishes that protection from such unwanted contact facilitated by disclosure of a connection to government operations and investigations is a cognizable privacy interest under Exemption[] 6 . . . .").  In its brief, the DEA states that the administrative tort claims were not publicly filed in court.  Dkt. # 29 at 14.  Apparently, there is no sign that these claimants ever consented to having their identities publicly disclosed.  *See Dayton Newspapers, Inc. v. Dep't of Veteran Affs.*, 257 F. Supp. 2d 988, 1009 (S.D. Ohio 2003) (tort claimants' names had "demonstrable privacy interest" in non-disclosure of their identities under exemption 6).  Private citizen claimants have more than a de minimis privacy interest in preventing the disclosure of their identities.

As for the DEA employee claimants, the DEA identifies several nontrivial privacy interests.  Hertel describes how the DEA's EEO claim system "provides a source of relief to aggrieved and vulnerable employees," in which DEA complainants' identities are "protected and held in confidence in order to protect the claimants from retaliation and embarrassment."  Dkt. # 25 at 9.  Hertel also says that the disclosure of DEA claimants' names may have a "chilling effect" such that future complainants are dissuaded from filing future EEO complaints because of fear that their identities would be later disclosed.  *Id.*  The Court agrees.  *See Wilson v. U.S. Dep't of Transp.*, 730 F. Supp. 2d 140, 156 (D.D.C. 2010), *aff'd*, No. 10-5295, 2010 WL 5479580 (D.C. Cir. Dec. 30, 2010) ("Because EEO charges often concern matters of a sensitive nature, an EEO complainant has a significant privacy interest in keeping confidential the fact that

[they are] an EEO complainant.").  The Court similarly recognizes a privacy interest in not

disclosing the other DEA employee claimants' identities for the simple reason that

embarrassment, harassment, or retaliation may result in publicly disclosing that an employee has

filed a claim against their employer.  *See Cameranesi*, 856 F.3d at 638.

> b. Public interest

The Court has determined that the private citizen and DEA employee claimants have

cognizable privacy interests.  The Court must now consider whether these interests are

outweighed by the public interest advanced in disclosing these claimant names.  Plaintiff

identifies no public interest served by disclosing claimants' identities.  *See* Dkt. # 26 at 24–26.

Nor does Plaintiff explain how the release of claimant names would somehow "shed light on [the

DEA's] performance of its statutory duties or otherwise let citizens know what their government

is up to."  *Bibles*, 519 U.S. at 355–56.  Further, "'information about private citizens that is

accumulated in various governmental files but that reveals little or nothing about an agency's

own conduct' is not the type of information to which FOIA permits access."  *Forest Serv. Emps.*,

524 F.3d at 1025 (quoting *U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 495–96

(1994)).  When there is no public interest in disclosure, "[w]e need not linger over the balance;

something, even a modest privacy interest, outweighs nothing every time."  *Nat'l Ass'n of

Retired Fed. Emp. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989).  Thus, the Court concludes

that the DEA's redactions of claimants' names would constitute a clearly unwarranted invasion

of personal privacy.  The DEA properly invoked exemption 6 in redacting their names.

> 3. Names of alleged tortfeasors

The DEA also withheld the identities of alleged "tortfeasors/wrongdoers" (collectively,

tortfeasors).  Dkt. # 25 at 7.  Throughout its briefing, Plaintiff presumes that the tortfeasors

whose names were redacted are all DEA employees.  *See* Dkt. # 26 at 21 ("DEA's blanket

redaction of names of individual claimants and alleged tortfeasors (i.e., its employees who have been accused of wrongdoing) violates FOIA.")  Defendants do not suggest that Plaintiff is mistaken.  Defendants acknowledge that "many of the DEA employees identified in the records are also the subject of underlying personnel matters being discussed in the record."  Dkt. # 25 at 8.  Defendants also argue, and cite authority, to support their position that government employees (not members of the public) retain substantial privacy interests in not releasing their identities.  *See* Dkt. # 29 at 14–15.  It also makes sense that the alleged tortfeasors would be DEA employees because the FOIA request seeks information about "all claims or lawsuits brought against DEA and/or any of its agents or employees" that the DEA resolved through payment of a settlement or judgment.  Dkt. # 25-2 at 2.  The Court follows the parties' lead in presuming that the alleged tortfeasors are all DEA employees.

        a.       Privacy interests

The Hertel Declaration says that disclosure of the DEA employees' "identities would prejudice their effectiveness in conducting their official duties, including [law enforcement] investigations, and subject them to unwarranted harassment."  Dkt. # 25 at 8–9.  The DEA offers no further specification.  For this particular issue, the DEA's justification for nondisclosure is insufficient.  The DEA's statements are vague, conclusory allegations of prejudice and harassment.  *See, e.g.*, *Stonehill v. IRS*, 534 F. Supp. 2d 1, 12 (D.D.C. 2008), *aff'd*, 558 F.3d 534 (D.C. Cir. 2009) ("In short, the government offers no explanation as to why disclosure of this particular agent's name would cause embarrassment, undue harassment, etc."); *Kleinert v. Bureau of Land Mgmt.*, 132 F. Supp. 3d 79, 97 (D.D.C. 2015) ("[T]he Court will certainly not accept the suggestion that the remote possibility of harassment means that every disclosure of a name implicates a significant privacy interest.").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Further, "federal government employees' privacy interests are generally diminished when they have been 'investigated for misfeasance relating to the performance of official duties.'" *Hum. Rts. Def. Ctr. v. U.S. Dep't of Homeland Sec.*, No. C18-1141 TSZ, 2021 WL 1264003, at *3 (W.D. Wash. Apr. 6, 2021) (*HRDC v. ICE*) (quoting *Providence J. Co. v. U.S. Dep't of Army*, 981 F.2d 552, 568 (1st Cir. 1992)).  *See Prison Legal News v. Samuels*, 787 F.3d 1142, 1150 (D.C. Cir. 2015) (rejecting categorical withholding of agency employee names accused of wrongdoing).  The DEA relies on the Ninth Circuit's general holding in *Hunt v. FBI*, that a government employee "generally has a privacy interest in any file that reports on an investigation that could lead to the employee's discipline or censure." 972 F.2d 286, 288 (9th Cir. 1992). *Hunt* is distinguishable because, contrary to this case, there was "little or no public interest served by disclosure of th[e] isolated file." *Id.* at 290.  Because it wishes to evaluate the public interest prong, the Court assumes without deciding that these DEA employee alleged tortfeasors have a nontrivial privacy interest in preventing the disclosure of their identities.

    b.  Public interest

    There is a significant public interest served by disclosure of the DEA employee alleged tortfeasors' identities to determine whether the "public servants who have been accused of wrongdoing are multiple offenders; how much taxpayer money has been used to resolve claims against those individuals; and whether any continue to be employed by DEA."  Dkt. # 26 at 26. *See HRDC v. ICE*, 2021 WL 1264003, at *3 (district court determined that the public had a "significant" interest in knowing the identities of ICE officials involved in "any allegedly wrongful act of detention" for the same reasons as those here).  The Court is also persuaded by

ORDER RE: CROSS-MOTIONS FOR SUMMARY
JUDGMENT - 18

the D.C. Circuit's discussion of this issue in *Prison Legal News v. Samuels*, a past case brought

by Plaintiff.[4]  787 F.3d at 1151.  The *Samuels* court reasoned:

> Identifying employees who repeatedly engage in tortious or discriminatory conduct
> will "shed[] light on an agency's performance of its statutory duties."  *Dep't of
> Justice*, 489 U.S. at 773.  This, in turn, will further the public interest in ensuring
> that "disciplinary measures imposed are adequate, and that those who are
> accountable are dealt with in an appropriate manner."  *Stern v. FBI*, 737 F.2d 84,
> 92 (D.C. Cir. 1984).  It may also help root out the misuse of public funds, an interest
> typically favoring disclosure.

*Id.* (alteration in original).

These same considerations apply with equal force here.  Balancing the tortfeasors'

nontrivial privacy interests against the significant interests favoring disclosure, the Court

concludes that revealing the DEA employee alleged tortfeasors' names would not constitute a

clearly unwarranted invasion of personal privacy.  The DEA thus improperly invoked exemption

6 in redacting the alleged tortfeasors' names who are DEA employees.

      4.      Settlement agreements that the parties agreed to disclose

Next, Plaintiff challenges the DEA's redaction of information from "settlement

agreements that contain provisions expressly permitting public disclosure of the agreements."

Dkt. # 28 at 4.  Plaintiff refers to two settlement agreements, each of which contains such a

provision permitting public disclosure.  *See id.* at 32 (file 102 at page 23 states that "[t]he parties

agree that this Stipulation for Compromise Settlement and Release, including all the terms and

conditions of this compromise settlement and any additional agreements relating thereto, may be

made public in their entirety"); *id.* at 36 (file 112 at page 10 states that "[t]he parties agree that

this Stipulation and any additional documents relating to this settlement, may be made public in

---

[4] HRDC was founded in 1990 as "Prisoners' Legal News."  Dkt. # 27 at 1.  The organization
adopted its current name in 2009.  *Id.*

ORDER RE: CROSS-MOTIONS FOR SUMMARY
JUDGMENT - 19

their entirety").[5]  Certain names of individuals appear redacted in each settlement agreement.
*See id.*  The DEA says that it only redacted the names of "third parties" because as non-parties to the agreement, they never consented to the release and disclosure of the agreements.  Dkt. # 30 at 3.  But these third parties, at least in the two settlement agreements Plaintiff cites, might be DEA employees accused of wrongdoing.  *See* Dkt. # 28 at 33 (stating that redacted names are "official members of the DEA Task Force at issue" and "are deemed federal employees for the purposes of this Stipulation"); *id.* at 30 (stating that the United States agrees to pay $80,000 in full settlement and satisfaction of all claims arising from the subject matter of the settlement that the plaintiff "now has or may hereafter acquire against the United States of America, its agents, servants, and employees, including, but not limited to, [redaction] and [redaction].").

Assuming the third parties are private citizens, disclosure of their identities would, for the reasons above, constitute a clearly unwarranted invasion of personal privacy.  *See supra* Section IV.B.2.  But if these third parties are DEA employees accused of wrongdoing who are the subject of the settlement agreement, any privacy interest is greatly diminished.  *See supra* Section IV.B.3.a.  As for the public interest, knowing the identities of DEA employees who are the subject of a settlement agreement would enable the public to see "what their government is up to," for the same reasons articulated above.  *See supra* Section IV.B.3.b.  *See also HRDC v. ICE*, 2021 WL 1264003, at *3 (explaining that the public has a "strong interest" in knowing which ICE officials were involved in any allegedly wrongful conduct "as alleged in the lawsuit that led to the payment of public funds disclosed in the Settlement").

---

[5] It is unclear whether these two settlement agreements were indeed publicly filed.  In its brief, the DEA says that it "produced some settlement agreements . . . that were not publicly filed," without reference to files 102 and 112.  Dkt. # 29 at 12–13.  The *Vaughn* index similarly does not answer this question.  *See* Dkt. # 25-1 at 46, 50.

ORDER RE: CROSS-MOTIONS FOR SUMMARY
JUDGMENT - 20

The Court's conclusion for this section depends on who these third parties are.  If the third parties are DEA employees accused of wrongdoing, revealing their names in the settlement agreements would not constitute a clearly unwarranted invasion of personal privacy.  The DEA must produce these settlement agreements without redacting the names of the DEA employees accused of wrongdoing.  But if the third parties are private citizens, disclosure would constitute a clearly unwarranted invasion of personal privacy, and the DEA need not produce the settlement agreements.

5.    "Publicly available information"

Plaintiff next challenges the DEA's redaction of information that Plaintiff says has already been publicly disclosed in civil litigation filings.[6]  Dkt. # 26 at 19.  This information includes case numbers, judge and attorney names, and litigant names.  Dkt. # 28 at 4–5.  Apparently, these redactions mostly appear in settlement agreements that were *not* filed on any civil case docket.  *See* Dkt. ## 29 at 11; 28 at 4.

Litigants have diminished privacy interests because "their names are publicly available on the underlying case docket report, which includes much of the stigmatizing information."  *HRDC v. ICE*, 2021 WL 1264003, at *3.  *See id.* (concluding that "individuals have diminished privacy interests in information that is already publicly available").  Generally, in a civil lawsuit, case numbers, judge and attorney names, and litigant names are matters of public record.  The DEA has not shown that the privacy interest at stake for litigants, judges, or attorneys in civil

---

[6] Not all claims at issue in the FOIA request resulted in a civil lawsuit, such that the docket entries are public.  *See* Dkt. # 29 at 11 ("HRDC mistakenly claims that 'much' of the information the DEA redacted 'has already been publicly disclosed in civil litigation.' . . . Those references make clear that by 'civil litigation[,]' HRDC means proceedings in court, as opposed to administrative proceedings to adjudicate tort claims within the DEA, or employment claims through the DEA's EEO process or at the Merit Systems Protection Board . . . .").

matters is nontrivial, as the agency must to justify any withheld information.  *See* 5 U.S.C.
§552(a)(4)(B).

Arguing in favor of redaction, the DEA relies on case law holding that an agency need
not expend resources to collect and produce publicly available *documents*.  *See, e.g.*, *Freedberg
v. Dep't of Navy*, 581 F. Supp. 3, 4 (D.C. Cir. 1982) ("Insofar as documents sought are readily
available in the public record, it is abusive and a dissipation of agency and court resources to
make and process a claim for their disclosure.") (internal citation and quotation marks omitted).
But Plaintiff seeks disclosure of *information* already in the public domain that appears elsewhere
in documents, many of which apparently have not been made public.  The information Plaintiff
requests that has already been made public cannot reasonably constitute an "unwarranted"
privacy intrusion under exemption 6.  5 U.S.C. § 552(b)(6).  And if there is a cognizable privacy
interest that is being overlooked, the DEA has described no privacy interest at stake.

The Court concludes that—for claims that resulted in a publicly filed civil lawsuit—
disclosure of case numbers, judge and attorney names, and litigant names would not constitute a
clearly unwarranted invasion of personal privacy.  The DEA improperly invoked exemption 6 in
redacting this information.  This ruling does not apply to claims subject to the FOIA request that
did not result in a public lawsuit.

C.      Exemption 7(C)

Similar to exemption 6, exemption 7(C) permits an agency to withhold information only
if disclosure "could reasonably be expected to constitute an unwarranted invasion of personal
privacy."  5 U.S.C. § 522(b)(7)(C).  But unlike exemption 6, exemption 7 has an additional
requirement: it applies only to "records or information compiled for law enforcement purposes."
*Id.* § 522(b)(7).  The threshold question is whether the records here were "compiled for law
enforcement purposes."  *Id.*

"Law enforcement" refers to "the act of enforcing the law, both civil and criminal." *Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 203 (D.C. Cir. 2014). An agency with a clear law enforcement mandate, such as the DEA, must "only establish a 'rational nexus' between enforcement of a federal law and the document for which an exemption is claimed." *Am. C.L. Union of N. Cal. v. FBI*, 881 F.3d 776, 778 (9th Cir. 2018) (quoting *Church of Scientology of Cal. v. U.S. Dep't of Army*, 611 F.2d 738, 748 (9th Cir. 1979), *overruled on other grounds by Animal Legal Def. Fund*, 836 F.3d at 990). *See Binion v. U.S. Dep't of Just.*, 695 F.2d 1189, 1194 (9th Cir. 1983) (explaining that an agency with a clear law enforcement mandate need establish only a "rational nexus" between "its law enforcement duties and the document for which Exemption 7 is claimed"); *Wiener*, 943 F.2d at 985 (same). "The rational nexus test requires courts to accord a degree of deference to a law enforcement agency's decisions to investigate." *Rosenfeld v. U.S. Dep't of Just.*, 57 F.3d 803, 808 (9th Cir. 1995). But "not every document compiled by a law enforcement agency is compiled for a law enforcement purpose." *100Reporters LLC v. United States Dep't of Just.*, 248 F. Supp. 3d 115, 159 (D.D.C. 2017).

The DEA has shown no nexus between its law enforcement duties and the information in these records. The DEA did not compile these records to prevent criminal activity or enforce federal law. To the contrary, the claim and settlement records at issue appear to be generated by the claimant's counsel or the DEA during its resolution of these administrative or civil claims filed against the agency—not brought on behalf of the agency. In arguing that it properly invoked exemption 7(C), the DEA relies on a decision from the Southern District of New York that is over 30 years old, *Forrester v. U.S. Dep't of Lab.*, 433 F. Supp. 987 (S.D.N.Y. 1977), *aff'd*, 591 F.2d 1330 (2d Cir. 1978). The court there held that the Department of Labor's investigative report into age discrimination claims brought against a private company were

compiled for law enforcement purposes. *See id.* at 988 (explaining that "[t]here can be no doubt that the report, compiled following an investigation . . . , is an investigatory record compiled for law enforcement purposes"). But in *Forrester*, there is a clear nexus between the Department of Labor's investigation and the agency's work in investigating discrimination claims. The records here do not involve the DEA's investigative or law enforcement function; the records concern the resolution of mostly tort and discrimination claims filed against the DEA, not the DEA's investigation or enforcement of drug offenses.

The DEA has not satisfactorily explained how the information at issue serves law enforcement purposes. Having concluded that the DEA has not met this threshold requirement, the Court thus grants Plaintiff's motion and denies Defendants' motion as to whether the DEA properly invoked exemption 7(C).

D.      Files 18 & 19

Plaintiff says that the DEA violated FOIA by withholding files 18 and 19 and requests that the Court order the DEA to produce these files. Dkt. # 26 at 31. The DEA did not produce any part of files 18 and 19. *See* Dkt. # 25-1 at 14–15. Nor did the DEA provide any description as to the contents of these files. *See id.* (providing "N/A" description). The DEA's only justification, as identified in the *Vaughn* index, is that these documents are under court seal. *See id.* (noting that files 18 and 19 were "NOT PRODUCED – SEALED"). The *Vaughn* index cites no FOIA exemption or other basis for non-disclosure. *Id.* The DEA's failure to provide any information besides stating that these files are sealed is inadequate because it prevents the Court from evaluating whether the DEA properly withheld this information. *See Maricopa Audubon Soc'y*, 10 F.3d at 1092 (explaining that because courts and the plaintiff do not have the opportunity to view the documents, a *Vaughn* index must be "detailed enough for the district court to make a *de novo* assessment of the government's claim of exemption").

1

2   "[T]he mere existence of a court seal is, without more, insufficient to justify

3   nondisclosure under the FOIA." *Schoenberg v. FBI*, 2 F.4th 1270, 1277 (9th Cir. 2021) (quoting

4   *Morgan v. U.S. Dept. of Justice*, 923 F.2d 195, 199 (D.C. Cir. 1991)).  In *Schoenberg*, the Ninth

5   Circuit endorsed the D.C. Circuit's standard for evaluating whether a sealing order provides a

6   proper basis for nondisclosure under FOIA.  *See id.*  A sealing order "only justifies nondisclosure

7   if it is 'intended to operate as the functional equivalent of an injunction prohibiting disclosure.'"

8   *Id.* (quoting *Morgan*, 923 F.2d at 199).  To determine a sealing order's intended function:

> [A] court considers the totality of the circumstances, including the sealing order, transcripts and papers filed with the sealing court, sealing orders in similar cases, and the issuing court's general rules governing sealed records.  Ultimately, this analysis boils down to two inquiries: (1) Does the agency have discretion to disclose the information under seal? And (2) would disclosing the information show disrespect for the judicial process?

*Id.*  The DEA has offered no information that would allow the Court to assess the purpose and

scope of the order that sealed files 18 and 19 to evaluate whether the DEA may justifiably rely

on the court seal in refusing to produce these files.  As explained below, Defendants are directed

to submit evidence surrounding the sealing order and provide supplemental briefing on whether

the DEA may withhold files 18 and 19 based on the standard in *Schoenberg v. FBI*, 2 F.4th 1270

(9th Cir. 2021).  The Court therefore denies without prejudice Plaintiff's motion as to whether

Defendants violated FOIA by withholding files 18 and 19.

E.      Segregability

        The parties dispute whether the DEA excessively redacted all narrative descriptions of

alleged wrongdoing that appear in the DEA's files.  Dkt. # 24 at 9–19, Dkt. # 26 at 8–9.  The

Court considers this argument in the context of segregability.

        "The burden is on the agency to establish that all reasonably segregable portions of a

document have been segregated and disclosed." *Pac. Fisheries, Inc. v. United States*, 539 F.3d

1143, 1148 (9th Cir. 2008). "Courts must apply that burden with an awareness that the plaintiff, who does not have access to the withheld materials, is at a distinct disadvantage in attempting to controvert the agency's claims." *Maricopa Audubon Soc'y*, 108 F.3d at 1092 (internal quotation omitted). But the agency is also "entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). The Court "need not conduct a page-by-page review of an agency's work." *Id.*

The Court has scrutinized the DEA's segregability determinations for each entry in the *Vaughn* index. The entries are not sufficiently individualized to permit the Court to find that all reasonably segregable factual information has been produced. The segregability paragraph in Hertel's Declaration is boilerplate. *See* Dkt. # 25 at 12. Hertel explains how the DEA examined each page of every document "to determine whether there was any reasonably segregable information." *Id.* Further, the DEA "withheld portions of pages where, based upon the review, the release of any additional information would . . . provide no useful information," or where Plaintiff would be left with merely "incomprehensive words or phrases that would not shed any light on how the Government conducts business." *Id.*

Specifically, the DEA has not met its burden in establishing that it disclosed all reasonably segregable portions of the documents that contain narrative descriptions of the alleged wrongs for each claim or lawsuit. For this category of information, the DEA's redactions show that it did not engage in a "careful" review, and that the DEA did not produce all "reasonably segregable portion[s]" of the record while redacting only the exempted information, as required. *Hamdan*, 797 F.3d at 778–79. The DEA appears to have redacted almost all narrative descriptions contained in its production of documents. Exhibit P of the Kalinowski Declaration identifies 232 pages of near-total redaction of facts. *See* Dkt. # 28 at 51–283. For

ORDER RE: CROSS-MOTIONS FOR SUMMARY
JUDGMENT - 26

example, file 21 includes a 22-page complaint.  *See id.* at 132.  The 16-page long section titled "Factual Allegations Related to All Claims" is entirely redacted.  *Id.* at 135–151.  Exhibit P teems with similar examples of such excessive redactions.  *See, e.g.*, *id.* at 63–69 (seven page description of "facts and circumstances" of alleged discriminatory conduct redacted from file 3); *id.* at 78–82 (five pages of factual allegations redacted from discrimination complaint in file 14); *id.* at 83–100 (18 pages of factual allegations redacted from EEO complaint in file 15).  For each redaction, the *Vaughn* index's justification states: "Further segregation of this file (including the [employee or claimant's] narrative which describes in detail the facts and circumstances surrounding the complaint at issue) would only provide sporadic words, such as 'the', 'to', etc., and not yield any useful information."  *See generally* Dkt. # 25-1.  The Court doubts that the only non-exempt words that appear in these narrative descriptions are articles and prepositions. These identical justifications for all narrative descriptions are also conclusory and fail to describe with specificity the DEA's redactions for each document.  *See Transgender Law Ctr.*, 46 F.4th at 786 (explaining that agencies must explain redactions for each record with "a careful document-by-document review" backed by "clear, precise, and easily reviewable explanations for why information is not segregable"); *see also Am. C.L. Union v. Dep't of Def.*, 389 F. Supp. 2d 547, 567 (S.D.N.Y. 2005) (concluding that an agency's statement that "there are no meaningful, reasonably segregable, non-exempt portions" of 71 documents was impermissibly conclusory because it did not "describe the individual documents paragraph by paragraph and line by line").

The DEA's position that further segregation of these narrative descriptions is impossible may lack credibility because elsewhere in its production, the DEA *did* properly segregate and redact information from claim descriptions.  *See* Dkt. # 28 at 319 (properly segregated and redacted "description of claim" alleging property damage, with only the claimant's name redacted); *id.* at 321 (properly segregated and redacted "basis of claim" alleging property

damage); *id.* at 323 (properly segregated and redacted "basis of claim" alleging damage to a truckload of vegetables).

The DEA asserts that it has sufficiently addressed the public's interest in disclosure by disclosing the "nature of each claim's allegations, e.g., race-based employment discrimination or tortious false arrest, and the amount of money DEA paid to resolve the claim." Dkt. # 29 at 3. FOIA's disclosure requirements are more demanding. For the public to reasonably understand "what their government is up to," the DEA must furnish more details about the alleged wrongdoing than it has provided. *Cameranesi*, 856 F.3d at 640.

In short, the Court does not find that the DEA has produced all meaningful, reasonably segregable, non-exempt portions of narrative descriptions of alleged wrongdoing that appear in the DEA's production of records. *See* Dkt. # 28 at 51–283. The Court is not persuaded that further segregation of these narrative descriptions would, as the DEA states, "only provide sporadic words, such as 'the', 'to', etc., and not yield any useful information." Dkt. # 25-1. The DEA is instructed to review its redactions of narrative descriptions throughout its production of documents and disclose all meaningful, reasonably segregable, non-exempt portions. If the DEA contends that it cannot reasonably segregate and redact certain narrative descriptions, it must submit a supplemental *Vaughn* index and supplemental declaration that explains in greater detail, for each document, the DEA's justifications behind those particular redactions. The Court will not accept identical, boilerplate justifications for redacting information throughout the *Vaughn* index. *See Shannahan*, 672 F.3d at 1148 (in justifying redactions, agencies must "provide tailored reasons" and they may not "respond with boilerplate or conclusory statements"); *Transgender Law Ctr.*, 46 F.4th at 786 (agencies must explain redactions for each record with "a

ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT - 28

careful document-by-document review").  The Court thus denies both motions without prejudice as to the DEA's showing on segregability.[7]

F.      Timeliness

Finally, Plaintiff says that the DEA violated FOIA by failing to timely respond to Plaintiff's FOIA request.  Dkt. # 26 at 31–33.  *See* Dkt. # 1 at 6.  Plaintiff contends that the DEA's delayed response constituted an "egregious" FOIA violation.  Dkt. # 26 at 9.  The Court disagrees.

FOIA requires agencies to respond to document requests within 20 business days of receipt.  5 U.S.C. § 552(a)(6)(A)(ii)(I).  Plaintiff submitted its FOIA request on May 20, 2019.  Dkt. # 25-2 at 2.  On June 27, 2019—27 business days later—the DEA responded to Plaintiff's request and provided its initial determination that Plaintiff's request was overly burdensome and invited Plaintiff to narrow its request.  Dkt. # 25-3 at 2–4.  The DEA's first production of documents began on November 23, 2020—over 18 months after Plaintiff first requested the records and six months after Plaintiff filed its complaint.  *See* Dkt. # 25-2 at 2; Dkt. # 28 at 2; Dkt. # 1.

"[I]n the Ninth Circuit, courts sometimes enforce FOIA's timeliness requirements independent of the underlying disclosure issues, at least when the violation is 'egregious.'" *Munger, Tolles & Olson LLP ex rel. Am. Mgmt. Servs. LLC v. U.S. Dep't of Army*, F. Supp. 3d 1050, 1054–55 (C.D. Cal. 2014) (citing cases).  *See Long v. IRS*, 693 F.2d 907, 910 (9th Cir. 1982) (explaining that "unreasonable delays in disclosing non-exempt documents violate the

---

[7] Should the Court remain unsatisfied with the DEA's justifications for its excessive redactions of narrative descriptions of alleged wrongdoing, the Court may order *in camera* review of the redacted documents.  The Court wishes to avoid this route because "[i]n camera review does not permit effective advocacy." *Wiener*, 943 F.2d at 979.  Moreover, *in camera* review is improper when a detailed *Vaughn* index and government affidavits may adequately resolve the issue. *Id.  See NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978) ("[I]n camera review . . . is designed to be invoked when the issue before the District Court could not be otherwise resolved.").

1    intent and purpose" of FOIA).  In arguing that the DEA's delay was egregious, Plaintiff relies on

2    *Prison Legal News v. Department of Homeland Security*, 113 F. Supp. 3d 1077 (W.D. Wash.

3    2015).  *See* Dkt. # 26 at 33.  The court there ruled that the U.S. Immigration and Customs

4    Enforcement's (ICE) delay in responding to the plaintiff's request was egregious because the

5    plaintiff "did not receive ICE's first production of documents (*or any other determination*) until

6    361 days after mailing its first FOIA request letter, seven months after mailing its second request

7    letter, and almost four months after filing [its] lawsuit."  *Prison Legal News*, 113 F. Supp. 3d at

8    1084 (emphasis added).

9         Plaintiff argues that because the DEA's delay in producing documents was greater than

10   ICE's delay in *Prison Legal News*—a delay here of 18 months versus a delay there of 361

11   days—the Court should similarly declare that Plaintiff's violation of FOIA's timeliness

12   requirements was egregious.  Dkt. # 26 at 33.  But *Prison Legal News* is distinguishable.  There,

13   the plaintiff did not receive any response from the defendants until ICE produced its first batch

14   of records, almost one year after the plaintiff mailed their FOIA request.  *Prison Legal News*,

15   113 F. Supp. 3d at 1080.  Here, the DEA gave Plaintiff its initial determination 27 business days

16   after receiving the FOIA request.  Dkt. # 25-3 at 2–4.  The DEA's response was 7 business days

17   late.  *See* 5 U.S.C. § 552(a)(6)(A)(ii)(I).  Between June and October 2019, the DEA

18   communicated with Plaintiff about narrowing the scope of its request, until Plaintiff filed an

19   administrative appeal.  Dkt. ## 25-4, 25-5.  *See HRDC v. ICE*, 2021 WL 1264003, at *5

20   (agency's delay was not egregious because "[a]ny delay in issuing [its final] decision was at least

21   in part due to ICE's unsuccessful attempts to narrow the scope and timeline of HRDC's

22   request").  Had the DEA provided no response to the FOIA request before Plaintiff filed its

23   complaint, Plaintiff's argument would be more compelling.  To be clear, the Court does not

24   endorse what happened here, in that the DEA seemingly began to produce responsive documents

only after Plaintiff filed suit.  Even though the parties have now spent four years disputing the scope of Plaintiff's FOIA request and what information may be disclosed, the Court cannot conclude that the DEA's untimely response was "egregious."[8]  *See HRDC v. ICE*, 2021 WL 1264003, a *1–2, 5 (delay was not egregious when the agency acknowledged the FOIA request within two weeks of receipt, issued its final decision within three months of receipt, completed its document production over two years after receipt, and the agency never "altogether fail[ed] to respond to HRDC's FOIA request").

The Court therefore denies Plaintiff's motion as to its timeliness claim.  Although Defendants did not move for summary judgment on this claim, the Court exercises its discretion to sua sponte grant summary judgment in their favor because Plaintiff had an opportunity to fully brief this issue.  *See Arce v. Douglas*, 793 F.3d 968, 976 (9th Cir. 2015) ("While it is within the power of a district court to grant summary judgment sua sponte, the court must first give the parties notice and time to respond, unless the party against which summary judgment is granted has already had a 'full and fair opportunity to ventilate the issues.'") (quoting *United States v. Grayson*, 879 F.2d 620, 625 (9th Cir. 1989) (internal citation omitted)).

G.    Attorney Fees

"To obtain an award of attorney fees under the FOIA, a plaintiff must demonstrate both eligibility and entitlement to the award."  *Oregon Nat. Desert Ass'n v. Locke*, 572 F.3d 610, 614

---

[8] Courts have also refused to grant declaratory relief for violating FOIA's timeliness requirements when a plaintiff has already filed suit.  *See, e.g.*, *Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 189 (D.C. Cir. 2013) ("If the agency does not adhere to FOIA's explicit timelines, the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court."); *Singh v. US Dep't of State*, No. C18-1210 TSZ, 2020 WL 230908, at *2 (W.D. Wash. Jan. 15, 2020) ("Because Plaintiffs have already filed this action, any violation of [FOIA's] time requirement is moot, and no further declaratory relief is appropriate.").  *See also Cnty. Ass'n for Restoration of the Env't, Inc. v. U.S. E.P.A.*, 36 F. Supp. 3d 1039, 1047 (E.D. Wash. 2014) ("A declaration that an agency's initial refusal to disclose requested information was unlawful, after the agency made that information available, would constitute an advisory opinion . . . .") (quoting *Payne Enterprises, Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988)).

(9th Cir. 2009).  Eligibility requires a plaintiff to show that they have "substantially prevailed" by obtaining relief either through (1) a judicial order, or (2) a voluntary or unilateral change in position by the agency.  5 U.S.C. § 552(a)(4)(E)(ii); *First Amend. Coal. v. U.S. Dep't of Justice*, 878 F.3d 1119, 1127 (9th Cir. 2017).  A plaintiff must "present 'convincing evidence' that the filing of the action 'had a substantial causative effect on the delivery of the information.'"  *First Amend. Coal.*, 878 F.3d at 1127 (quoting *Church of Scientology*, 700 F.2d at 489).  Courts must consider three factors in evaluating whether a plaintiff has shown a causative effect: (1) when the documents were released; (2) what triggered the release of the documents; and (3) whether the plaintiff was entitled to the documents at an earlier time.  *Id.* at 1129 (citing *Church of Scientology*, 700 F.2d at 492).

As to Plaintiff's eligibility for fees, the Court finds it may be premature to determine whether Plaintiff has substantially prevailed because this order does not resolve all issues for the DEA's production.  The level of success that Plaintiff ultimately achieves will affect Plaintiff's eligibility.  And as to Plaintiff's entitlement to fees, the parties provide no argument on the four factors that district courts must consider, as set forth in *Hiken v. Dep't of Def.*, 836 F.3d 1037, 1043–44 (9th Cir. 2016).  The Court therefore denies without prejudice Plaintiff's request for attorney fees.

# V

## CONCLUSION

Based on the above, the Court ORDERS the following:

1.       The Court GRANTS in part, DENIES in part, and DENIES without prejudice in part Defendants' motion for summary judgment.  Dkt. # 24.  The Court GRANTS in part, DENIES in part, and DENIES without prejudice in part Plaintiff's cross-motion for summary judgment.  Dkt. # 26.

1    2.    As to the adequacy of the DEA's search for responsive records, the Court

2  GRANTS Defendants' motion and DENIES Plaintiff's motion.  The Court DENIES Plaintiff's

3  motion as to its argument that Defendants violated FOIA in not producing the complaint or claim

4  form for each resolved claim.

5    3.    As to the DEA's redactions of the names of claimants, the Court GRANTS

6  Defendants' motion and DENIES Plaintiff's motion.

7    4.    The Court hereby DECLARES that the following information is subject to

8  disclosure under FOIA: (1) the names of alleged tortfeasors who are DEA employees; (2) the

9  case numbers, judge and attorney names, and litigant names only for claims that resulted in a

10  publicly filed civil lawsuit; and (3) the names of DEA employees accused of wrongdoing named

11  in settlement agreements in which the agreement contains a provision permitting public

12  disclosure.  Defendants are hereby enjoined from withholding this information and are

13  ORDERED to produce all responsive files without redaction of such information within 30 days

14  of this order.  *See* 5 U.S.C. § 552(a)(4)(B).

15    5.    As to whether the DEA properly invoked exemption 7(C), the Court GRANTS

16  Plaintiff's motion and DENIES Defendants' motion.

17    6.    As to Plaintiff's claim that Defendants violated FOIA by withholding files 18 and

18  19, the Court DENIES without prejudice Plaintiff's motion.  The Court ORDERS Defendants to

19  submit a supplemental brief and accompanying papers for this Court to consider the totality of

20  the circumstances surrounding the court order that sealed files 18 and 19.  Defendants may

21  include the sealing order, transcripts and papers filed with the sealing court, sealing orders in

22  similar cases, and the issuing court's general rules governing sealing records, among any other

23  records for the Court's consideration.  *See Schoenberg v. FBI*, 2 F.4th 1270, 1277 (9th Cir.

24  2021).  In their supplemental brief, Defendants must answer two questions.  First, does the DEA

have discretion to disclose the information under seal for files 18 and 19?  And second, would disclosing the information show disrespect for the judicial process?  Defendants' brief, which shall not exceed 2,100 words, and any supporting materials, is due no later than 5 p.m. on Friday, July 7, 2023.  Plaintiff's optional response, which shall not exceed 2,100 words, and any supporting materials, is due no later than 5 p.m. on Friday, July 14, 2023.

7.      As to segregability, the Court DENIES both motions without prejudice. Defendants are hereby ORDERED to (1) review segregability and produce all meaningful, reasonably segregable, non-exempt portions of the narrative descriptions of alleged wrongdoing, and (2) submit a supplemental *Vaughn* index and declaration explaining any remaining redactions of those narrative descriptions by no later than 5 p.m. on Friday, July 14, 2023.

8.      As to Plaintiff's claim that Defendants violated FOIA by failing to timely respond, the Court DENIES Plaintiff's motion and sua sponte GRANTS summary judgment in Defendants' favor.

9.      As for attorney fees, the Court DENIES without prejudice Plaintiff's motion.

Dated this 22nd day of June, 2023.

John H. Chun
United States District Judge

ORDER RE: CROSS-MOTIONS FOR SUMMARY
JUDGMENT - 34