1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HUMAN RIGHTS DEFENSE CENTER,

Plaintiff,

v.

UNITED STATES DEPARTMENT OF
JUSTICE et al.,

Defendants.

CASE NO. 2:20-cv-00674-JHC

ORDER

**I**

**INTRODUCTION**

This matter comes before the Court on the second set of cross-motions for summary

judgment submitted by Plaintiff Human Rights Defense Center (HRDC) and Defendants United

States Department of Justice and its law enforcement component the Drug Enforcement

Administration (collectively, Defendants or the DEA).  *See* Dkt. ## 53, 55, 57, 59.  The parties

seek to resolve the remaining issues in this Freedom of Information Act (FOIA) action.  *See* 5

U.S.C. § 552.  Being fully advised, the Court (1) GRANTS in part and DENIES in part

Plaintiff's motion and (2) GRANTS in part and DENIES in part Defendants' cross-motion.  Dkt. ## 53, 55.

## II

### BACKGROUND

The material facts are not in dispute.  *See* Dkt. # 53 at 6; Dkt. # 55 at 4.

A.    Plaintiff's FOIA Request

On May 20, 2019, HRDC submitted a FOIA request seeking disclosure of records of "all litigation against the [DEA] and/or its employees or agents where the [DEA] and/or its insurers paid $1,000 or more to resolve claims."  Dkt # 25-2 at 2.  HRDC requested records of "settlements, damages, attorney fee awards, and sanctions, irrespective of the identity of the plaintiff or claimant."  *Id.*  HRDC sought:

1.  Records, regardless of physical form or characteristics, sufficient to show for all claims or lawsuits brought against DEA and/or any of its agents or employees in which payments totaling $1,000 or more were disbursed from January 1, 2010, to the present:

   - The name of all parties involved;
   - The case or claim number;
   - The jurisdiction in which the case or claim was brought (e.g., U.S. District Court for the District of Columbia, D.C. Superior Court, etc.);
   - The date of resolution;
   - The amount of money involved in the resolution and to whom it was paid[;]

2.  For each case or claim detailed above:

   - The complaint or claim form or any amended versions;
   - The verdict form, final judgment, settlement agreement, consent decree, or other paper that resolved the case.

*Id.*  On June 27, 2019, the DEA notified HRDC that it might have records responsive to the FOIA request, but that (1) the DEA's system was not searchable by the size of a payment, and (2) its "electronic data [was] only available from mid-2012 to the present."  Dkt. # 25-3 at 2–4.

ORDER - 2

The DEA said that answering the FOIA request would involve both an electronic search and a manual search of its archives, requiring around 295 hours of work. *Id.* at 3. The DEA concluded that such a search would be overly burdensome and asked HRDC to narrow the scope of its request. *Id.*

On July 11, 2019, HRDC agreed to a "production of documents from 2012 or later" and waived the $1,000 threshold. Dkt. # 25-4 at 2. Three months later, on October 21, 2019, the DEA informed HRDC that its revised request did not meet FOIA's requirements because "it [did] not reasonably describe records." Dkt. # 25-5 at 3. The DEA estimated that the revised request would still require at least 250 hours to complete. *Id.* The DEA said that HRDC's request was "overly broad and burdensome," and that it would take no further action unless HRDC provided "a reasonable description of records sought." *Id.*

On October 29, 2019, HRDC sent an administrative appeal letter to the DOJ Office of Information Policy (OIP) over the DEA's denials. *See* Dkt. # 25-6. On January 31, 2020, OIP affirmed the DEA's decision, stating that HRDC "did not reasonably describe the subject of [its] request" because HRDC "did not characterize the records sought in such a way that they could be located with a reasonable amount of effort." Dkt. # 25-7 at 3.

B.    Procedural History and Production of Records

On May 5, 2020, HRDC filed its complaint, which alleges a FOIA violation. Dkt. # 1 at 6–7. HRDC seeks declaratory relief that the DEA's failure to disclose responsive records violates FOIA and injunctive relief ordering the DEA to search for and produce records responsive to HRDC's request. *Id.* at 7. In June 2020, in its answer, the DEA denied "that Plaintiff is entitled to the relief requested or any relief whatsoever." Dkt. # 8 at 7. But in July 2020, the DEA informed HRDC that it now could "feasibly search for, process, and produce documents responsive to [HRDC's] FOIA request." Dkt. # 28 at 8–9. In August 2020, HRDC

agreed to narrow its request to exclude "tort claims arising from motor vehicle collisions," "claims that the DEA resolved with payments made before 2012," and "claims that the DEA resolved for less than $2,500." Dkt. # 25 at 4.

In its search for responsive records, the DEA searched two financial databases and its internal case management system for the Office of Chief Counsel. *Id.* Beginning in November 2020, the DEA began releasing records to Plaintiff in monthly batches. *Id.* at 5–6. Upon reviewing these records, HRDC challenged the DEA's withholding of certain information, including the DEA's redaction of (1) names of claimants and tortfeasors, (2) the amount paid under each settlement, (3) details of the misconduct alleged by the claimants, (4) "publicly filed documents," and (5) pronouns. Dkt. # 28 at 2. Since the DEA's initial production of records until August 2021, the parties attempted to resolve several issues raised by HRDC about the DEA's production, with the agency removing certain redactions while insisting on keeping other information withheld. *See id.* at 2–6. In total, the DEA released over 1,700 pages of records to HRDC. Dkt. # 25 at 5–7. The DEA created a *Vaughn* index that describes the contents of the documents subject to Plaintiff's FOIA request, identifies the FOIA exemptions under which the DEA redacted information, and specifies the bases for such exemptions.[1] *Id.; see* Dkt. # 25-1. The DEA invoked two exemptions under 5 U.S.C. §§ 552(b)(6) and 552(b)(7)(C)—exemptions 6 and 7(C)—to justify its redactions. *See* Dkt. # 25-1.

---

[1] Subsection (b) of FOIA lists nine exemptions from disclosure that permit agencies to protect, among other things, personal privacy, national security, and law enforcement interests. *See* 5 U.S.C. § 522(b). Should an agency withhold information, it must submit an affidavit under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973)—commonly called a "*Vaughn* index"—that "identif[ies] the documents withheld, the FOIA exemptions claimed, and [provides] a particularized explanation of why each document falls within the claimed exemption." *Lion Raisins v. U.S. Dep't of Agric.*, 354 F.3d 1072, 1082 (9th Cir. 2004), *overruled on other grounds by Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987 (9th Cir. 2016). The *Vaughn* index "must be detailed enough for the district court to make a de novo assessment of the government's claim of exemption." *Id.* (quoting *Maricopa Audubon Soc'y v. United States Forest Serv.*, 108 F.3d 1089, 1092 (9th Cir. 1997)).

On July 8, 2022, Defendants moved for summary judgment. Dkt. # 24. On August 26, 2022, Plaintiff cross-moved for summary judgment. Dkt. # 26. The Court granted in part and denied in part the motions, and denied portions of Defendant's and Plaintiffs' motions without prejudice. Dkt. # 33 at 1–2, 32–34. The Court ruled that: (1) the DEA's records search was adequate, rejecting HRDC's claim that Defendants violated FOIA in not producing the complaint or claim form for each resolved claim; (2) the DEA properly redacted the names of private tort claimants; (3) the DEA improperly invoked exemption 6 in redacting the names of alleged tortfeasors who are DEA employees and the case numbers, judge and attorney names, and litigant names in publicly filed civil lawsuits; (4) the DEA improperly invoked exemption 7(C) to justify its redactions; and (5) the DEA was not untimely in its response to HRDC's FOIA request. *Id.* at 33–34.

The Court denied HRDC's motion without prejudice on three issues. First, it directed the DEA to submit supplemental briefing on the circumstances of its withholding "sealed files 18 and 19." *Id.* at 33–34. Second, it directed the DEA to review the segregability of its documents and to produce all meaningful, reasonable segregable, non-exempt portions of the narrative descriptions of alleged wrongdoing and submit a supplemental *Vaughn* index and declaration explaining any remaining redactions. *Id.* at 34. Finally, it denied HRDC's request for attorney fees as premature. *Id.*

In response to the Court's order, the DEA removed redactions from certain files and also released files 18 and 19 to HRDC, clarifying that its prior position that these files were "sealed" was incorrect. *See* Dkt. # 44 at 3 ¶¶ 9–11. As to the segregability issue, *see* Dkt. # 33 at 34, the DEA re-processed and produced 229 pages of previously over-redacted records from 20 non-duplicative files, updating its *Vaughn* index accordingly. *See* Dkt. # 46 at 3–4 ¶ 8; Dkt. # 46-1. The DEA also removed the redactions of publicly available information from civil lawsuits and

1    redactions of names and other information from settlement agreements with provisions

2    permitting public disclosure, re-processing and producing 152 pages from 19 files of its previous

3    production.  Dkt. # 53 at 9; Dkt. # 49 at 3–4 ¶¶ 9–10.  Rather than release the names of

4    tortfeasors/wrongdoers who are DEA employees, the DEA moved the Court to stay the release

5    through the conclusion of any appeal, which motion the Court granted.  *See* Dkt. ## 42, 44, 47.

6    　　　HRDC moved for summary judgment again to resolve the remaining issues in this case.

7    Dkt. # 53.  On January 24, 2024, the DEA responded with a cross-motion for summary judgment

8    and opposition to HRDC's motion.  Dkt. # 55.  The parties agree that there are no disputed issues

9    of fact, and that summary judgment is the appropriate method to resolve all remaining issues

10   except attorney fees.  *See* Dkt. ## 53, 55, 57, 59.

### III

### LEGAL STANDARDS

12   A.    Summary Judgment

13   　　　Summary judgment is proper if there is no genuine dispute as to any material fact and the

14   movant shows that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see*

15   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A material fact is one that "might affect the

16   outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

17   248 (1986).  "A genuine issue of material fact exists when the evidence is such that a reasonable

18   jury could return a verdict for the [nonmovant]."  *Fortune Dynamic, Inc. v. Victoria's Secret*

19   *Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1031 (9th Cir. 2010) (citation omitted).  When parties

20   cross-move for summary judgment, each motion "must be considered on its own merits."  *Fair*

21   *Hous. Council of Riverside City, Inc., v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001)

22   (internal quotation omitted).

1

2

B.    FOIA

FOIA's purpose is to inform citizens about "what their government is up to."

*Cameranesi v. U.S. Dep't of Def.*, 856 F.3d 626, 640 (9th Cir. 2017).  The Act "seeks to permit

access to official information long shielded unnecessarily from public view and attempts to

create a judicially enforceable public right to secure such information from possibly unwilling

official hands."  *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151–52 (1989) (quoting

*EPA v. Mink*, 410 U.S. 73, 80 (1973)).  "'[D]isclosure, not secrecy, is [FOIA's] dominant

objective.'"  *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7–8 (2001)

(quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)).

"Summary judgment is the procedural vehicle by which nearly all FOIA cases are

resolved."  *Sea Shepherd Legal v. Nat'l Oceanic & Atmospheric Admin.*, 516 F. Supp. 3d 1217,

1227 (W.D. Wash. 2021) (quoting *L.A. Times Commc'ns, LLC v. Dep't of the Army*, 442 F.

Supp. 2d 880, 893 (C.D. Cal. 2006)).  But in FOIA cases, courts generally "do not ask whether

there is a genuine issue of material fact, because the facts are rarely in dispute."  *Minier v. Cent.*

*Intel. Agency*, 88 F.3d 796, 800 (9th Cir. 1996).  Instead, courts follow a two-step inquiry when

ruling on summary judgment motions in FOIA cases.  *See, e.g.*, *Sea Shepherd Legal*, 516 F.

Supp. 3d at 1227; *Prison Legal News v. U.S Dep't of Homeland Sec.*, 113 F. Supp. 3d 1077,

1081 (W.D. Wash. 2015).

First, the government must show that its search for responsive documents was adequate

"beyond material doubt."  *Transgender L. Ctr. v. Immigr. & Customs Enf't*, 46 F.4th 771, 779

(9th Cir. 2022).  Second, courts must determine "whether the agency has proven that the

information that it did not disclose falls within one of the nine FOIA exemptions."  *L.A. Times*,

442 F. Supp. 3d at 894.  "To justify withholding, the government must provide tailored reasons

in response to a FOIA request. It may not respond with boilerplate or conclusory statements." *Shannahan v. IRS*, 672 F.3d 1142, 1148 (9th Cir. 2012).

Withholding under an exemption is permissible only if "the agency reasonably foresees that disclosure would harm an interest protected by an exemption[,]" only after "consider[ing] whether partial disclosure of information is possible" and taking "reasonable steps necessary to segregate and release nonexempt information[.]" 5 U.S.C. § 552(a)(8)(A). Courts narrowly construe FOIA's nine exemptions in favor of disclosure. *Dep't of Interior*, 532 U.S. at 8. "The burden of proving that withheld documents fit into the exemptions falls on the agencies." *Transgender L. Ctr.*, 46 F.4th at 782. *See Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009) ("FOIA's 'strong presumption in favor of disclosure' means that an agency that invokes one of the statutory exemptions . . . bears the burden of demonstrating that the exemption properly applies to the documents.") (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)); *see also* 5 U.S.C. § 552(a)(4)(B) (explaining that "the burden is on the agency to sustain its action"). Even if an exemption applies to a document, FOIA requires that a "reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b).

The Court reviews de novo the adequacy of an agency's justifications for withholding information. 5 U.S.C. § 552(a)(4)(B).

C.      Exemption 6

Exemption 6 allows agencies to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy[.]" 5 U.S.C. § 552(b)(6). The Court asks two questions in deciding whether the DEA has properly invoked this exemption: (1) "whether the document qualifies under the heading of 'personnel and medical files and similar files'"; and (2) "whether production of the document, or

information contained therein, 'would constitute a clearly unwarranted invasion of personal privacy.'" *See Prudential Locations LLC v. U.S. Dep't of Hous. & Urb. Dev.*, 739 F.3d 424, 429 (9th Cir. 2013).

1.     "Personnel and medical files and similar files"

Exemption 6 was "intended to cover detailed Government records on an individual which can be identified as applying to that individual." *Prudential Locations LLC*, 739 F.3d at 429 (quoting *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982)).  "Information unrelated to any particular person presumably would not satisfy the threshold test." *Wash. Post Co.*, 456 U.S. at 602 n.4.  The term "similar files" has a "broad, rather than a narrow, meaning." *Id.* at 602.

2.     "Clearly unwarranted invasion of personal privacy"

Exemption 6's second requirement is that disclosure of the information "would constitute a clearly unwarranted invasion of personal privacy[.]"  5 U.S.C. § 552(b)(6).  To answer this question, courts "must balance the privacy interest protected by the exemptions against the public interest in government openness that would be served by disclosure." *Prudential Locations LLC*, 739 F.3d at 430 (quoting *Elec. Frontier Found. v. Off. of The Dir. of Nat'l Intel.*, 639 F.3d 876, 886 (9th Cir. 2010)).

The Ninth Circuit employs a two-step test for balancing individual privacy rights against the public's interest in disclosure. *Cameranesi*, 856 F.3d at 637.  Courts must first assess the personal privacy interest at stake to ensure that disclosure "implicates a personal privacy interest that is nontrivial" or "more than [] de minimis." *Id.* (internal citation and quotation marks omitted).  Second, "if the agency succeeds in showing that the privacy interest at stake is nontrivial, the requester 'must show that the public interest sought to be advanced is a significant

one and that the information [sought] is likely to advance that interest.'" *Id.* (quoting *Lane v. Dep't of Interior*, 523 F.3d 1128, 1137 (9th Cir. 2008) (alteration in original)).

For the first step, disclosure implicates a nontrivial personal privacy interest if it affects "the individual's control of information concerning his or her person." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763 (1989). "Disclosures that would subject individuals to possible embarrassment, harassment, or the risk of mistreatment constitute nontrivial intrusions into privacy under Exemption 6." *Cameranesi*, 856 F.3d at 638.

For the second step, courts must examine whether the public interest is significant, meaning one "more specific than having the information for its own sake." *Id.* at 639 (quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004)). "[T]he only relevant public interest . . . is the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Bibles v. Oregon Nat. Desert Ass'n*, 519 U.S. 355, 355–56 (1997) (internal quotation marks and citation omitted). In other words, "the evidence must show some nexus between the specific requested information and unveiling agency misconduct." *Lahr*, 569 F.3d at 978 (citing *Favish*, 541 U.S. at 172–73 (2004)). The information the plaintiff seeks must "contribut[e] significantly to public understanding of the operations or activities of the government." *Forest Serv. Emps. for Env't Ethics v. U.S. Forest Serv.*, 524 F.3d 1021, 1025 (9th Cir. 2008) (alteration in original) (internal citation and quotation marks omitted).

## IV

### DISCUSSION

In its renewed motion for summary judgment, HRDC contends that the DEA has engaged in over-redaction of disclosable information from 16 files, in violation of the Court's first summary judgment order. *See generally* Dkt. # 53. These contested redactions fall into three

categories: (1) information contained in "publicly filed civil lawsuits"; (2) "narrative claim descriptions and non-private agency information such as job titles"; and (3) information that, according to HRDC, does not implicate a privacy interest because it has already been "widely publicized[.]"  *See* Dkt. # 57 at 5–6.  HRDC also says that it is eligible for an award of attorney fees and costs.  Dkt. # 53 at 17–22.  The DEA cross-moves for summary judgment, opposing HRDC's position and seeking summary judgment on all remaining issues.  Dkt. # 55.

A.     First Category: Information contained in publicly filed civil lawsuits

According to HRDC, the DEA has redacted information under exemption 6, "which is related to publicly available court cases, such as court names, case numbers, judge names, attorney information, and litigant names[,]" in four files: Files 99, 106, 117, and 119.  Dkt. # 53 at 16–17; Dkt. # 54-4 at 2–20.  In response, the DEA says that the "redactions are wholly consistent" with the Court's first summary judgment order because it has disclosed the attorneys' names at issue, but still protected their contact information and "also redacted the month and day of certain dates, disclosing only the year."[2]  Dkt. # 55 at 10.  The DEA, however, clarifies as follows:

- File 99: It has re-produced File 99, correcting (1) the "inadvertent" redaction of the court's name in the settlement agreement and removing (2) the redaction of the plaintiff's attorney's name on the first page of the agreement.  Dkt. # 55 at 10; Dkt. # 56-4 at 13–16 (revised File 99).

---

[2]  The parties confirm that there was a lapse in communication on some files at issue.  For example, HRDC states that it never received the DEA's August 2023 production of these partially unredacted files, and its motion refers to certain older versions.  Dkt. # 57 at 8.  After filing its opposition and cross-motion for summary judgment, the DEA reportedly shared the files at issue with HRDC on February 6, 2024.  *See* Dkt. # 55 at 9; Dkt. # 57 at 8–9.  Although this late disclosure made for less efficacious briefing, it does not affect the Court's analysis.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

- File 106: These were redactions of a "[p]laintiff's attorneys' names and two redactions of an abbreviation of those names[,]" but the DEA says that those redactions were harmless because it had disclosed those names "on the signature page of the settlement agreement."  Dkt. # 55 at 10.  It has since produced the file without any redactions or abbreviations of the attorneys' names.  *Id.* at 11; Dkt. # 56-4 at 17–32 (revised File 106).

- File 117: The DEA claims that the only redactions were of months, days, and attorneys' contact information, which the Court's first summary judgment order did not mandate.  So the DEA has not revised its documents.  Dkt. # 55 at 11; Dkt. # 56-4 at 33–35.

- File 119: The DEA says that it "inadvertently redacted the court's name in the copy of the settlement agreement[,]" *see* Dkt. # 56-4 at 43, but that the Court's name was included in a copy of the claimant's complaint.  *See* Dkt. # 56-3 at 36. Otherwise, it has "redacted none of the information" that the previous summary judgment order required it to disclose.  The redactions in this file are "bank account information, months, days, attorneys' contact information," and the plaintiff's social security number.  Dkt. # 55 at 11; Dkt. # 56-4 at 36–49.

HRDC responds that, despite the DEA's correction of certain redactions, there are still outstanding issues with these four files:

- File 99: HRDC says that the DEA has "still has not reproduced page 16—which contains *redacted dates* and *contact information* of the attorneys who were publicly noticed on the docket in that case."  Dkt. # 57 at 9 (emphasis added); Dkt. # 56-4 at 16.

- File 106: According to HRDC, the DEA "still retains redactions on pages 6 through 16—including *names of plaintiffs, dates, and attorney information* that was publicly noted on the case docket." Dkt. # 57 at 9 (emphasis added); Dkt. # 56-4 at 22–32.

- File 117: HRDC contends that the DEA has still redacted "*dates of publicly filed briefs* and *contact information of the attorneys* who were publicly noticed on the docket in that case." Dkt. # 57 at 10 (emphasis added); Dkt. # 56-4 at 33, 35.

- File 119: HRDC asserts that, although the DEA reproduced page 8 of this file and removed certain redactions, "it still redacts *dates of publicly filed briefs* and *contact information of the attorneys* who were publicly noticed on the docket in that case." Dkt. # 57 at 10 (emphasis added); Dkt. # 56-4 at 48–49.

The DEA replies that, because the redactions at issue are not case numbers, judge and attorney names, and litigant names, they do not violate the Court's first summary judgment order and the Court should "reject HRDC's attempt to relitigate the matter." Dkt. # 59 at 4. As for the names redacted in File 106, *see* Dkt. # 56-4 at 23–32, the DEA contends that

> (1) [it] could not confirm that these individuals were plaintiffs in the case; (2) the vast majority of the individuals were not DEA employees; and (3) releasing their names would not further the legitimate public interests the Court identified in its SJ Order, including identifying DEA employees repeatedly accused of wrongdoing and determining how much taxpayer money DEA used to resolve claims against them.

Dkt. # 59 at 4.[3]

---

[3] The DEA also says that the Court should not consider this argument because HRDC did not raise the issue of the redaction of the plaintiffs' names until its combined opposition and reply. Dkt. # 59 at 5. Because the Court has the discretion to consider this issue—and the DEA had the opportunity to respond to HRDC's combined opposition and reply—the Court reaches the merits of HRDC's position. *Cf. Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court *need not* consider arguments raised for the first time in a reply brief.") (emphasis added) (citing *Koerner v. Grigas,* 328 F.3d 1039, 1048 (9th Cir. 2003)).

In its first summary judgment order, the Court considered HRDC's challenges to the DEA's redaction of information "already in the public domain that appears elsewhere in documents[.]"  Dkt. # 33 at 22.  The Court concluded that disclosure of information that had "already been made public cannot reasonably constitute an 'unwarranted' privacy intrusion under exemption 6. . . .  And if there [was] a cognizable privacy interest that [was] being overlooked, the DEA [had] described no privacy interest at stake."  *Id.*  The Court then concluded that "for claims that resulted in a publicly filed civil lawsuit—disclosure of case numbers, judge and attorney names, and litigant names would not constitute a clearly unwarranted invasion of personal privacy."  *Id.* (citing 5 U.S.C. § 552(b)(6)).

The parties do not dispute that the Court has already directed the DEA to remove redactions related to information that appears elsewhere in publicly accessible documents but appear to disagree as to whether this list of items related to publicly disclosed cases was exhaustive.  Although the Court specifically directed the DEA to disclose case numbers, judge and attorney names, and litigant names, in its previous order, it did not specify that this should be an exhaustive list of publicly available items.  In line with the rationale of its previous order, the Court concludes that the DEA improperly invoked exemption 6 in redacting publicly available dates and attorney contact information connected to civil lawsuits in Files 99, 106, 117, and 119. *See* Dkt. # 56-4 at 16, 22, 33, 35, 48–49.

As for the redacted names in file 106, *see* Dkt. # 56-4 at 23–32, the DEA clarifies that the names at issue are several hundred "settlement fund recipients" listed in an attachment to a publicly filed settlement agreement.  Dkt. # 49 at 4–5 ¶¶ 9, 11–13; Dkt. # 59 at 4–5.  The *Vaughn* index associated with this file states:

> A portion of the file was released in full.  However, pages 6-16 were partially redacted to protect third-party information pursuant to Exemption (b)(6).  Pages released in part contained identifying information, including: *third party names*,

1

2

contact information, associated dates, and social security numbers that if released
would identify the third parties involved in this CFC case.

3

Dkt. # 56-1 at 15 (emphasis added).  The DEA claims that these redactions are justified because:

4

(1) it could not confirm that these individuals were plaintiffs in the case associated with the file,

5

(2) the "vast majority" of the claimants were not DEA employees, and (3) "releasing their names

6

would not further legitimate public interest[.]"  Dkt. # 59 at 4.

7

The Court is unpersuaded.  The Court's prior summary judgment order recognized that

8

individuals who have had their names publicly available in a public case docket have diminished

9

privacy interests.  Dkt. # 33 at 21–22 (citing *Hum. Rts. Def. Ctr. v. U.S. Dep't of Homeland Sec.*,

10

No. C18-1141 TSZ, 2021 WL 1264003, at *3 (W.D. Wash. Apr. 6, 2021)).  Although the DEA

11

contends that these redacted names may not belong to DEA employees and it cannot confirm that

12

these names even belong to litigants, the fact that the names already form a part of the public

13

record establishes that the release of this information does not constitute a clearly unwarranted

14

invasion of personal privacy.  *See* Dkt. # 33 at 21–22.

15

Considering the Court must narrowly construe FOIA Exemption (b)(6) in favor of

16

disclosure, *see Dep't of Interior*, 532 U.S. at 8, and for the reasons outlined above, the Court

17

concludes that the DEA improperly invoked exemption 6 when redacting the items at issue in

18

Files 99, 106, 117, and 119.

19

B.     Second Category: Redaction of narrative claim descriptions and non-private agency
       information

20

HRDC challenges the DEA's use of block redactions and other redactions of personal

21

identifiers such as "titles, dates, locations, paygrades, [and] acronyms" in ten files (Files 3, 5, 15,

22

23

24

16, 21, 24, 53, 54, 63, 138).[4]  Dkt. # 57 at 11; *see id.* at 11 n.3.  HRDC says that the DEA's

reliance on exemption 6 to redact blocks of narrative and remove non-private identifiers,

"without any segregation of 'private' information," violates the Court's first summary judgment

order.  Dkt. # 53 at 13.  HRDC says that the DEA's corresponding *Vaughn* index contains

boilerplate descriptions that fail to justify the redactions, and that these redactions "shield

important information on the times, locations, and level of leadership involved in allegedly

tortious conduct, and obscure[] the ability of the public to understand the nature of the

allegations fully or in any detail."  *Id.* at 13–14.  HRDC asks the Court to order the DEA to

release this information or, in the alternative, conduct an in camera review of the files at issue.

*Id.* at 14.

The DEA responds that its redactions align with the Court's previous order.  *See id.* at 13;

Dkt. # 55 at 13–18.  The DEA explains that "most instances" of the redacted "blocks of

narrative" protect "nothing more than lengthy job titles, lists of names, or personal work histories

that are (1) protected under FOIA exemption 6, and/or (2) not part of the claimants' 'narrative

descriptions of wrongdoing.'"  Dkt. # 55 at 13–14; *see* Dkt. # 46 at 5–6 ¶ 10.  The DEA contends

that the redactions of specific details such as "third-party names, position titles, pay grades,

office locations, and specific dates" would permit "any individual (such as family members,

work colleagues, personal friends, or other acquaintances) who was otherwise unaware of the

alleged conduct but familiar with this background and corollary information to easily connect the

dots and deduce which individual filed these actions."  Dkt. # 46 at 6.

---

[4] HRDC also contested redactions in File 103, but the DEA stated in its reply that it would remove the redaction because the "redacted information [was] already disclosed" on other pages of the file.  Dkt. # 59 at 10.

1        This order addresses the files at issue and the parties' arguments on the redactions as

2   follows.

3        1.     File 5

4        This file is "a brief in support of a request for attorney fees in an administrative Merit

5   Systems Protection Board proceeding."  Dkt. # 55 at 14; Dkt. # 46 at 4–5 ¶ 9.

6        HRDC says that this file's redactions go beyond the mere protection of individual names

7   and titles.  According to HRDC, the corresponding *Vaughn* index shows the DEA redacted

8   entries regarding dates of a "Proposal" and the "full internal organizational structure." Dkt. # 57

9   at 13; Dkt. # 56-1 at 1–2; *see* Dkt. # 54-1 at 2.[5]  HRDC also contests "four lines of block

10  redactions on page 8[,]" *see* Dkt. # 54-1 at 3, which the DEA claims to be "solely names, which

11  is highly unlikely given the context."  Dkt. # 57 at 13; *see* Dkt. # 56-1 at 2 (describing the

12  redaction as "Third Party Position Title including full internal organizational structure").

13       According to the DEA, the redactions at issue, *see* Dkt. # 54-1 at 2–3, protect the identity

14  of the claimant by excluding potentially identifying "names of third parties such as coworkers,

15  attorneys, and supervisors, and the claimant's position title" and do not form a part of the

16  "narrative descriptions of wrongdoing."  Dkt. # 55 at 14; Dkt. # 59 at 8.  The DEA concludes

17  that because the redactions ensure that those familiar with the background of the claim cannot

18  discover the identity of the claimant and "do not prevent HRDC from learning that File 5 dealt

19  with a review of the discipline applied to a DEA employee[,]" it has complied with the Court's

20  previous summary judgment order.  Dkt. # 55 at 14; Dkt. # 59 at 7–8.

21       "[W]hat constitutes identifying information regarding a [claimant] must be weighed not

22  only from the viewpoint of the public, but also from the vantage of those who would have been

23

24  _____

     [5] The Court notes that the redacted dates of the "Proposal" are located on page 6 of the File 5, *see* Dkt. # 56-1 at 2, and this page is not in HRDC's exhibits.  *See* Dkt. # 54-1 at 2–3 (absence).

ORDER - 17

familiar" with aspects of the background of the claim.  *Freedom of Press*, 489 U.S. at 768.  An agency may therefore withhold personal references or other identifying information, or redact an entire document, when disclosure could constitute an unwarranted invasion of personal privacy. *Id.* at 769–71.  Still, when a district court and the plaintiff do not have the opportunity to view the documents, the *Vaughn* index must be "detailed enough for the district court to make a *de novo* assessment of the government's claim of exemption."  *Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1089, 1092 (9th Cir. 1997)).

The Court denies HRDC's request regarding the redactions at issue.  The DEA's explanation in the *Vaughn* index, corresponding declaration, and briefing, all show that it redacted these items to protect the identity of the claimant discussed in the files.  The Court observes that the context of the four lines of block redactions on page 8, *see* Dkt. 54-1 at 3, could reasonably implicate the names of a "full internal organizational structure" that threaten to disclose the identity of the anonymous claimant.  Dkt. # 57 at 13.  For these reasons, and in accord with the Court's previous order that recognizes that private citizen claimants "have more than a de minimis privacy interest in preventing the disclosure of their identities[,]" which the public interest in disclosure does not overcome, *see* Dkt. # 33 at 14–16, the DEA properly invoked exemption 6 as to these redactions.

2.      File 16

File 16 is a formal Equal Employment Opportunity (EEO) administrative complaint. Dkt. # 55 at 14–15; Dkt. # 54-2 at 3–20.  HRDC contests the DEA's redaction of certain personal identifiers and narrative block redactions.  Dkt. # 57 at 12–14.  The DEA asserts that removing its redactions of personal identifiers, which "consist of names of supervisors and coworkers, dates of specific events, job titles, office group names and descriptions, and similar information[,]" would "lead to the identity of the claimant."  Dkt. # 55 at 14–15; *see* Dkt. # 54-1

at 4–13.  As for the two block redactions at issue, the DEA claims that the first block "is a list of two third parties' names and job titles" and the second block "is a list of three dates the complainant's supervisor was out sick, and descriptions of events associated [with] those absences."  Dkt. # 55 at 15; Dkt. # 54-1 at 10, 13.  The DEA also says that the redactions do not "mask the narrative description of wrongdoing" in the file.  Dkt. # 55 at 15.

The Court agrees with the DEA.  In its previous order, the Court concluded that private citizen claimants have cognizable privacy interests that outweigh the public interest served by disclosing their identities, allowing the DEA to invoke exemption 6 when redacting their names.  Dkt. # 33 at 16.  The Court stated that "'information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct' is not the type of information to which FOIA permits access."  *Id.* at 16 (citing *Forest Serv. Emps.*, 524 F.3d at 1025 (quoting *U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 495–96 (1994))).

It follows that the disclosure of other identifying information in a claimant's administrative complaint—that could allow those familiar with the claimant's broad circumstances the ability to deduce a claimant's identity—is akin to the disclosure of the claimant's name itself.  *See Freedom of Press*, 489 U.S. at 768–699.  After review of the redacted pages and corresponding *Vaughn* index descriptions, the Court concludes that these redactions do not hinder the reader's ability to comprehend the narrative description of the administrative complaint and help protect the claimant's identity.  *See* Dkt. # 46-1 at 35–49; *Forest Serv. Emps.*, 524 F.3d at 1025.  The Court therefore denies HRDC's request; the DEA properly invoked exemption 6 in redacting this information.

ORDER - 19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

　　3.　　File 54

　　This is a formal EEO administrative complaint.  Dkt. # 54-1 at 14–18.  HRDC contends that the block redactions on pages 4 and 5, *see id.* at 17–18, remove descriptions of "widely disseminated" messages and likely hide information that is "not private at all[.]"  Dkt. # 53 at 16.  The DEA responds that these redactions "avoid a clearly unwarranted invasion of personal privacy under FOIA exemption 6" because they state the reasons for the EEO "claimant's and another DEA employee's absences due to deeply personal family matters unrelated to the substance of the EEO claim."  Dkt. # 55 at 15; Dkt. # 56 at 5 ¶ 13.  HRDC does not contest the veracity of the DEA's explanation but replies that "[w]ithout the name of the party, however, there is no apparent reason why these matters would invade anyone's privacy or why they could not be segregated further."  Dkt. # 57 at 14.

　　Considering the Court's foregoing analysis of the need to protect private claimants' personal identifying information, the DEA correctly redacted information of certain absences related to specific "personal family matters" that do not bear on the narrative of the EEO claim.  For these reasons, the Court denies HRDC's request and concludes that the DEA properly invoked exemption 6.

　　4.　　Files 63 and 138

　　These two files contain contested block redactions.  File 63 is a letter from a whistleblower complainant's attorney to the United States Office of Special Counsel.  Dkt. # 54-1 at 19.  HRDC contests a block redaction under "Summary of Facts[,]" *see id.* at 19, which the DEA says is the claimant's "personal and employment history" and is redacted to protect their identity.  Dkt. # 55 at 16; Dkt. # 59 at 10; Dkt. # 46-1 at 129.  HRDC responds that the DEA "makes no attempt to justify why that information would harm anyone" and relies on a "self-serving conclusion that withholding is always permissible if it does not obscure the narrative of

wrongdoing that describes the types of alleged misconduct[,]" while ignoring "its duties to provide an adequate justification and segregation reasoning[.]"  Dkt. # 57 at 14 (citation omitted).

File 138 is a complaint of prohibited personnel practices.  Dkt. # 54-1 at 21–22.  HRDC says that the DEA wrongly redacted two blocks of text in the file's footnotes.  Dkt. # 53 at 13.  The DEA responds that the first footnote "describes a third-party's source of funding" and includes "numerous agency acronyms" that the DEA has redacted to protect the identity of the claimant and other third-party individuals.  Dkt. # 55 at 17.  The DEA contends that disclosing these portions of the footnotes would not provide meaningful information.  *Id.*   As for the second block redaction, the DEA responds that it "does not interfere with understanding the narrative allegations of wrongdoing" in the complaint and merely "describes a DEA procedure that applies in particular situations[,]" which could "reasonably lead to the identification of an individual mentioned in that file."  *Id.*  HRDC replies that this is a conclusory claim and fails "to establish a particularized harm related to specific information."  Dkt. # 57 at 15.

As discussed above, the DEA may redact private claimant's names and identifying descriptors, however these contested block redactions are different from the previous files.  In both files, the block redactions remove entire paragraphs and do not leave any contextual clues or segregable information.  *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008) ("The burden is on the agency to establish that all reasonably segregable portions of a document have been segregated and disclosed."); *Maricopa*, 108 F.3d at 1092 ("Courts must apply that burden with an awareness that the plaintiff, who does not have access to the withheld materials, 'is at a distinct disadvantage in attempting to controvert the agency's claims.'").  In its briefing, the DEA appears to contend that no portion of these redactions are non-exempt or can be reasonably segregated.  Yet because the briefing and *Vaughn* index descriptions that

correspond to these files do not provide sufficient insight into the context of the redaction or why it does not contain *any* segregable portions, the Court directs the DEA to, within ten court days of this order, submit an unredacted versions of Files 63 and 138 for in camera review.[6]

5.      Files 3, 15, 21, 24, and 53

HRDC also contends that the DEA's redactions of "non-private information, such as position titles, dates, locations, paygrades, and acronyms," in Files 3 (EEOC decision), 15 (attachment to formal EEO Allegations), 21 (Merit Systems Protection Board appeal), 24 (EEOC attachment), and 53 (employment discrimination narrative), *see* Dkt. # 54-2 at 2–48, are impermissible because the DEA's "*Vaughn* index provides the same boilerplate explanation for all of these redactions."  Dkt. # 53 at 13.  The DEA responds that the redactions are acceptable because a "review of those pages and their accompanying *Vaughn* Index reveals that [the] DEA has not obscured the claimants' narrative allegations of wrongdoing.  Rather, [the] DEA has redacted only those personally identifying details necessary to protect the claimants' and other individuals' identities."  Dkt. # 55 at 18.

As discussed, the DEA may redact names and other personal information that threaten to reveal the identity of private claimants.  *See Freedom of Press*, 489 U.S. at 769; *cf.* Dkt. # 33 at 16.  While HRDC contends that the exemption justifications in the *Vaughn* index are "boilerplate," the Court is not persuaded.  Although the DEA has provided the same short justification explanation for each redacted file, stating that these redactions fall under exemption 6 because they concern the claimant's personally identifiable information that could reveal the

---

[6] In camera review is "discretionary and is to be rarely exercised."  *Lane*, 523 F.3d at 136.  In camera review is appropriate where alternatives such as "government testimony and detailed affidavits" fail "to provide a sufficient basis for a decision."  *Pollard v. F.B.I.*, 705 F.2d 1151, 1154 (9th Cir. 1983); *Kinnucan v. N.S.A.*, 2023 WL 4866369, at *3 (W.D. Wash. 2023).  "*In camera* review may supplement an adequate *Vaughn* index, but may not replace it."  *Wiener v. F.B.I.*, 943 F.2d 972, 979 (9th Cir. 1991).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

claimant's or a private third-party's identity, the DEA did so because these redactions all serve the same purpose.   If this were the only information provided in the *Vaughn* index, then it might be considered "boilerplate," but the DEA has also included particularized descriptions of the items redacted.   For example, the DEA specifies that it redacted the "complainant name," "appeal number," and "hearing number" from the files.   *E.g.*, Dkt. # 46-1 at 2.   These particularized items regarding each individual redaction, together with the DEA's explanation, is sufficient for the district court to make a de novo assessment of the DEA's claim of exemption. *See Maricopa*, 108 F.3d at 1092; *see* Dkt. # 46-1 at 2–10, 17–35, 50–64, 89–95, 118–23.   The Court therefore denies HRDC's request; the DEA properly invoked exemption 6 to protect the identities of these private claimants in these files.

C.       Third Category: Redaction of information that HRDC claims implicates no privacy interest

HRDC also says that the DEA has "redacted information regarding public matters to which no privacy interest attaches" in Files 1, 24, 53, and 54, "especially when weighed against the public's right to know about how the DEA operates and addresses misconduct by its employees." Dkt. # 53 at 14.   The DEA disagrees, asserting that HRDC's position misconstrues the Court's previous summary judgment order that required it to disclose "portions of the narrative descriptions of alleged wrongdoing" that are "meaningful," and "non-exempt[.]"  Dkt. # 55 at 18; *see* Dkt. # 33 at 34.

1.       File 1

File 1 is a non-public Merit Systems Protection Board settlement agreement related to the acquittal of a DEA employee in a criminal matter.   Dkt. # 54-3 at 2–15.   HRDC contests the DEA's redactions of the employee's publicly available "date of acquittal" and related information.   Dkt. # 53 at 14–15; Dkt. # 54-3 at 10, 12, 14.   According to HRDC, this

information is not subject to exemption 6 since "criminal prosecutions, even those resulting in acquittal are not matters of personal privacy" and as a result "individuals have diminished privacy interests in information that is already publicly available." Dkt. # 53 at 14–15 (quoting *Hum. Rts. Def. Ctr.*, 2021 WL 1264003, at *3).

The DEA responds that, although criminal prosecutions are matters of public record, "that does not require that details of this claimant's criminal prosecution be disclosed *as they appear in his non-public administrative claim file*." Dkt. # 55 at 19 (emphasis in original). According to the DEA, "[t]he exact date of acquittal is not a 'meaningful' part of the 'narrative description of alleged wrongdoing,' so the DEA need not disclose it[.]" *Id.* The DEA asserts that "revealing the precise acquittal date could reasonably lead" those familiar with the facts of the claimant's situation to identify the claimant. *Id.* (citing *Freedom of Press*, 489 U.S. at 768).

As discussed in the Court's previous order, private citizen claimants have a "cognizable interest" in preventing the disclosure of their identities and these interests are not outweighed by the public interest advanced in disclosing their names. Dkt. # 33 at 14–16. Although the private claimant here had their identity revealed in a criminal case, that does not mean that their identity should be revealed in a private administrative matter. Because the disclosure of the claimant's acquittal date could lead to the disclosure of this private claimant's identity and does not necessarily "shed light on [the DEA's] performance of its statutory duties or otherwise let citizens know what their government is up to[,]" *Bibles*, 519 U.S. at 355–56, the Court denies HRDC's disclosure request.

2.      File 24

According to HRDC, File 24 is a non-public administrative EEO complaint that concerns a former DEA trainee "who failed an unspecified exam," "had some 'progress and proficiency' concerns, and missed training days." Dkt. # 53 at 15; Dkt. # 54-2 at 37–41; Dkt. # 46-1 at 89.

1    HRDC says that the corresponding *Vaughn* index "offers no justification for redactions related to

2    the employee's training and proficiency, or any other portion of the narrative."  Dkt. # 53 at 15.

3    HRDC contends that "[g]iven the absence of any showing of a privacy interest, and the

4    substantial public interest in assuring that DEA agents are qualified and adequately trained," the

5    DEA should be compelled to release "all narrative portions of this file, including information

6    related to the employee's testing, training, and proficiency."  Dkt. # 55 at 15.

7         The DEA responds that the release of this information, particularly "the course of training

8    and dates of attendance in File 24," would make the claimant's identity "readily apparent to all

9    familiar with her situation" because of the "limited" number of trainees at the DEA Academy.

10   Dkt. # 55 at 20; Dkt. # 24 at 4 ¶¶ 10–11.  The DEA says that its "description of the DEA's four

11   distinct training programs, together with the obvious practicality that only a limited number of

12   trainees can enroll in a particular cohort for a particular program, supports the redactions."  Dkt.

13   # 59 at 14.  Because the claimant "has strong privacy interests in protecting her identity and the

14   circumstances surrounding her exam failure and dismissal[,]" the DEA concludes that the

15   exemption 6 redactions were proper.  Dkt. # 55 at 20.

16        In reply, HRDC contends that the "DEA fails to support its claim or suggest the requested

17   disclosure would reveal the claimant's identity" because it has not supplied the Court with

18   specifics regarding the number of trainees enrolled in the Academy.  Dkt. # 57 at 17.

19        The Court agrees with HRDC.  Because the DEA does not supply the Court with specific

20   statistics regarding the number of enrollees in the Academy or its four training programs, the

21   Court does not see how it may be "obvious practicality" to redact this claimant's enrollment

22   information.  Dkt. # 59 at 14.  The DEA's argument that enrollment is "limited" is vague and

23

24

insufficient.  *See id.*[7]  To be sure, as expressed in the Court's previous summary judgment order, *see* Dkt. # 33 at 14–16, this claimant has a cognizable privacy interest; but whether a claimant's identity is compromised in this situation heavily depends on the number of female enrollees in the DEA Academy and its four training programs.  Without specific numbers of enrollees that participate at the DEA Academy, those that participated in the claimant's program, or even how many failed out of the program in that year, the Court does not accept the DEA's position that this information would necessarily identify the claimant to those familiar with her situation.  Because the DEA has not provided a declaration or *Vaughn* index "detailed enough for the district court to make a de novo assessment of the government's claim of exemption[,]" *see Lion Raisins*, 354 F.3d at 1082 (quoting *Maricopa*, 108 F.3d at 1092), the Court directs the DEA to submit a supplemental brief and a supporting declaration, within ten court days of this order, which includes the DEA Academy's comprehensive enrollment numbers and relevant demographic information so the Court may determine whether the Academy's "limited" enrollment precludes HRDC's access to the information at issue.

> 3.      File 53

This file contains a non-public Merit Systems Protection Board claim.  Dkt. # 54-3 at 16. HRDC states that File 53 references a publicly available news article and contests the redaction of its "date, publisher[,] and title" under exemption 6.  Dkt. # 53 at 15; *see* Dkt. # 46-1 at 120–21.  According to HRDC, if the news article "at issue identifies an individual, then his or her

---

[7] The DEA also contends that HRDC's proffered "significant public interest"—that the public should know whether DEA agents are qualified and adequately trained—is insufficient because the claimant never became a DEA agent.  Dkt. # 59 at 15.  The Court disagrees.  "[T]he only relevant public interest . . . is the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to."  *Bibles*, 519 U.S. at 355–56.  Whether the claimant completed her Academy program still relates to what the "government is up to."  *Id.*

identity has already been published, and there is no significant privacy interest in information that is already public."  Dkt. # 53 at 15 (citing *Hum. Rts. Def. Ctr.*, 2021 WL 1264003, at *3).

The DEA responds that it "redacted the source and title of a news story that discussed" the File 53 claim.  Dkt. # 55 at 19.  The DEA states that "the story named two claimants (other than the claimant in File 53) who brought similar claims against [the] DEA" and even though "these claimants were identified in the news story, they retain privacy interest in not being named in connection with a particular, non-public administrative claim."  *Id.* at 19–20; Dkt. # 53 at 3–4 ¶ 9.

As discussed, third-party claimants generally have a privacy interest in maintaining the status quo of not being personally identified in a non-public file.  But "individuals have diminished privacy interests in information that is already publicly available."  *Hum. Rts. Def. Ctr.*, 2021 WL 1264003, at *3 (citing *Union Leader Corp. v. U.S. Dep't of Homeland Sec.*, 749 F.3d 45, 53 (1st Cir. 2014)).

Here, the two claimants named in the news article have diminished privacy interests because their names are already in the public domain.  *Cf. id.*  Still, the Court recognizes a privacy interest in not disclosing the other DEA employee claimants' identities for the simple reason that embarrassment, harassment, or retaliation may result in publicly disclosing that these claimants are linked to this third-party claimant's non-public administrative case.  *See Cameranesi*, 856 F.3d at 638; *Lane*, 523 F.3d at 1137 ("[N]otions of privacy in the FOIA exemption context encompass information already revealed to the public."); *see also Union Leader*, 749 F.3d at 53 ("We therefore conclude that although the arrestees have a cognizable privacy interest in their names, that interest is attenuated both by the status of their underlying convictions and arrests as matters of public record and by the limited nature of the [Plaintiff's] proposed investigation.").

1    Recognizing that the two claimants have cognizable privacy interests, the Court must

2    then consider whether these interests are outweighed by the public interest advanced in

3    disclosing these names.  *Cameranesi*, 856 F.3d at 637.  HRDC contends that this information is

4    crucial to the "public's right to know about how the DEA operates and addresses misconduct by

5    its employees."  Dkt. # 53 at 14.  The DEA does not address this issue.

6           The Court recognizes that the release of the details of a publicly available news article

7    would "shed light on [the DEA's] performance of its statutory duties or otherwise let citizens

8    know what their government is up to."  *Bibles*, 519 U.S. at 355–56.  Here, HRDC does not seek

9    the disclosure of the names of the private claimant associated with this non-public file but asks

10   the DEA to disclose the name of a publication already in the public sphere that identifies two

11   other claimants that have already been publicly identified.  The DEA appears to contend that

12   disclosure of this news article would compromise the privacy interests of the two already-public

13   claimants mentioned in it because their identities would be linked with this File 53's private

14   claimant, but the Court does not view it the same way.  Considering the DEA has protected the

15   private claimant's name and identifying information with redactions throughout the file, it is

16   unclear how the disclosure of the news article, and subsequent disclosure of the identity of two

17   other claimants, could necessarily threaten the private claimant's identity; the Court also notes

18   that the DEA does not contend that this private claimant is named in the article itself.  *See* Dkt. #

19   33 at 14–16.  Because (1) the two other claimants have diminished privacy interests since their

20   names are already public, (2) the still-anonymous private claimant has had all identifying

21   features redacted, and (3) there is a public interest in "knowing what [the DEA] is up to," the

22   Court concludes that the DEA improperly invoked exemption 6 in redacting this information.

23   *Cf. Union Leader*, 749 F.3d at 56 (disclosure of redacted names "will forward the legitimate

24   public interest in "knowing what [the] Government is up to," . . . .  That public interest

outweighs the arrestees' attenuated privacy interests in their underlying arrests and convictions, which are already matters of public record.").

### 4. File 54

This is a formal EEO administrative complaint, which is also discussed above, *see supra* Section IV.B.3.  Dkt. # 54-1 at 17–18.  HRDC contends that the redaction in this file—the description of an email that was "broadly disseminated . . . like a news story or public filing"—is non-private information and should be disclosed.  Dkt. # 53 at 16.

The DEA responds that it has not verified how widely this email was disseminated within the DEA organization and that "[g]iven the personal nature of the information contained in the e-mail, it would be surprising if it were distributed beyond those with a need to know."  Dkt. # 55 at 21; Dkt. # 56 at 5 ¶¶ 12–13.  The DEA contends that, even if the protected information were distributed throughout the DEA organization, "an internal e-mail is not tantamount to public disclosure."  Dkt. # 59 at 16.

The Court agrees with the DEA.  Even assuming, without deciding, that the email correspondence was distributed throughout the DEA, this type of internal agency communication is not equivalent to the public disclosure that accompanies a publicly accessible news article.  Because this email does not qualify as "non-private information," the Court concludes that the DEA correctly invoked exemption 6 in its redaction.

## IV

### CONCLUSION

Based on the above, the Court ORDERS the following:

1.      The Court GRANTS in part and DENIES in part Plaintiff's motion for summary judgment.  Dkt. # 53.  The Court GRANTS in part and DENIES in part Defendants' cross-motion for summary judgment.  Dkt. # 55.  The Court RESERVES ruling in connection with the

1   issues relating to (1) its forthcoming in camera review (discussed below); (2) Defendants'

2   supplemental brief (discussed below); and (3) attorney fees.

3         2.      As for the redactions in publicly filed lawsuits in Files 99, 106, 117, and 119, *see*

4   *supra* Section IV.A, the Court GRANTS Plaintiff's motion and DENIES Defendants' motion;

5   Defendants improperly invoked exemption 6 in redacting this information.

6         3.      As for the redaction of narrative claim descriptions and non-private agency

7   information in Files 3, 5, 15, 16, 21, 24, 53, and 54, *see supra* Section IV.B, the Court DENIES

8   Plaintiff's motion and GRANTS Defendants' motion, determining that Defendants properly

9   invoked exemption 6 in redacting certain information.

10        4.      As for the redaction of narrative claim descriptions and non-private agency

11  information in Files 63 and 138, *see supra* Section IV.B.4, the Court directs Defendants to

12  submit these files to the Court for in camera review within 10 court days of this order.

13        5.      As for the redaction of information in Files 1, 53, 54, *see supra* Section IV.C, that

14  HRDC claims implicate no privacy interest, the Court DENIES Plaintiff's motion and GRANTS

15  Defendants' motion, determining that Defendants properly invoked exemption 6 in redacting

16  certain information.

17        6.      Regarding the redaction of information in File 24, *see supra* Section IV.C.3, that

18  HRDC claims implicate no privacy interest, the Court RESERVES ruling.  The Court ORDERS

19  Defendants to submit a supplemental brief and supporting declaration, within ten (10) court days

20  of this order, which includes the DEA Academy's comprehensive enrollment numbers and

21  relevant demographic information so the Court may determine whether the Academy's "limited"

22  enrollment precludes HRDC's access to the redactions at issue.

23

24

1    Dated this 21st day of May, 2024.

2

3                                               John H. Chun

4                                               _____
                                                John H. Chun
5                                               United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24